JOEL G. SAMUELS (SBN 115264)
ROBERT S. ADDISON, JR. (SBN 188565)
ANTHONY J. NAPOLITANO (SBN 227691)
BUCHALTER, A Professional Corporation
1000 WILSHIRE BLVD, SUITE 1500
LOS ANGELES, CA 90017
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email:  jsamuels@buchalter.com
          raddison@buchalter.com
          anapolitano@buchalter.com

Attorneys for Defendant
ZB, N.A., a national banking association, dba California Bank & Trust

ROBERT S. MCWHORTER (SBN 226186)
JARRETT S. OSBORNE-REVIS (SBN 289193)
BUCHALTER, A Professional Corporation
500 CAPITOL MALL, SUITE 1900
SACRAMENTO, CA 95814
Telephone: (916) 945-5170
Facsimile: (213) 896-0400
Email:  rmchworter@buchalter.com
          josbornerevis@buchalter.com

Attorneys for Defendant
ZB, N.A., a national banking association, dba California Bank & Trust

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| RONALD C. EVANS, an individual; JOAN M. EVANS, an individual; DENNIS TREADAWAY, an individual; and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ZB, N.A., a national banking association, dba California Bank & Trust, <br><br> Defendant. | Case No. 2:17-cv-01123-WBS-DB <br><br> **DEFENDANT ZB, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS ACTION** <br><br> Date:   November 13, 2017 <br> Time:   1:30 p.m. <br> Judge:  Hon. William B. Shubb <br> Courtroom:  5, 14th Floor <br> 501 I Street <br> Sacramento, CA 95814 <br><br> Complaint Filed: May 26, 2017 <br> Trial Date: None set |

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 2

    A.   IMG's Lending And Depository Relationship With CB&T ................................. 2

    B.   Plaintiffs' Investments In IMG And IMG's Plummet Into Bankruptcy ................. 3

III.  LEGAL ANALYSIS ...................................................................................... 4

    A.   The First, Third, Fourth, And Fifth Claims For Aiding And Abetting Fraud, Conspiracy To Commit Fraud, Aiding And Abetting Conversion, And Aiding And Abetting Breach Of Fiduciary Duty, Fail........................................................ 4

        1.   Plaintiffs' Claims Are Time Barred ............................................................ 4

        2.   Plaintiffs' First, Fourth, And Fifth Claims For Aiding And Abetting Fraud, Aiding And Abetting Conversion, And Breach Of Fiduciary Duty Fail To Plead Facts With Particularity ................................... 8

        3.   Plaintiffs' Third Claim For Conspiracy To Commit Fraud Fails............ 11

            a.   Plaintiffs' Fraud Allegations Fail.................................................... 11

            b.   CB&T Did Not Owe A Duty Of Care To Plaintiffs..................... 11

            c.   Plaintiffs Have Not Alleged Facts Sufficient To Establish An Agreement Between CB&T And IMG To Commit Fraud........... 14

    B.   Plaintiffs' Second Cause Of Action For Securities Fraud Is Barred By The Applicable Statute Of Limitations ........................................................... 16

        1.   Corporations Code Sections 25110 And 25504.1 ................................... 16

        2.   Corporations Code Sections 25401 And 25504.1 ................................... 16

    C.   Plaintiffs' Sixth Claim For Intentional Interference With Contract Fails............ 17

        1.   The Sixth Claim Is Time-Barred................................................................ 18

        2.   Plaintiffs Failed To Adequately Plead The Requisite Elements ............... 18

    D.   Plaintiffs' Seventh Claim For Negligence Fails.................................................... 20

    E.   Plaintiffs' Eighth And Ninth Claims For Violation Of, And Conspiracy To Violate, California Penal Code Section 496 Fail ............................................. 22

IV.   CONCLUSION ............................................................................................. 24

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Addison v. California,*
   21 Cal. 3d 313 (1978) .......................................................................................................4

*Allen v. Bank of America Nat'l Trust & Sav. Asso.,*
   58 Cal. App. 2d 127 (1943) ..............................................................................................20

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal. 4th 503 (1994) .......................................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................................19

*Athey Prods. Corp. v. Harris Bank Roselle,*
   89 F.3d 430 (7th Cir. 1996) ..............................................................................................13

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................14, 19

*Bernson v. Browning-Ferris Indust.,*
   7 Cal. 4th 926 (1994) .....................................................................................................7, 8

*Brown v. New York Life Ins. Co.,*
   152 F.2d 246 (9th Cir. 1945) ............................................................................................23

*Casey v. U.S. Bank Nat. Assn.,*
   127 Cal. App. 4th 1138 (2005) ....................................................................................12, 13

*Chazen v. Centennial Bank,*
   61 Cal. App. 4th 532 (1998) .......................................................................................passim

*Chi. Title Ins. Co. v. Sup. Ct.,*
   174 Cal. App. 3d 1142 (1985) ...........................................................................................13

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.,*
   566 F.2d 631 (9th Cir. 1977) ............................................................................................23

*Cunningham v. Merchants' Nat'l Bank,*
   4 F.2d 25 (1st Cir. 1925) ..................................................................................................13

*Das v. Bank of America,*
   186 Cal. App. 4th 727 (2010) ...........................................................................................21

*Deveny v. Entropin, Inc.,*
   139 Cal. App. 4th 408 (2006) ...........................................................................................17

*Dufour v. Be LLC,*
   Case No. C-09-3770 CRB, 2010 U.S. Dist. LEXIS 8440 (N.D. Cal. Feb. 2, 2010)...................15

*Eisenberg v. Wachovia Bank, N.A.,*
   301 F.3d 220 (4th Cir. 2002) ............................................................................................14

*Ferris v. Gatke Corp.,*
   107 Cal. App. 4th 1211 (2003) .....................................................................................7, 11

*Forcier v. Microsoft Corp.,*
   123 F. Supp. 2d 520 (N.D. Cal. 2000) ...............................................................................18

*Ford v. NCUA,*
   448 Fed. Appx. 745 (9th Cir. 2011) ...................................................................................20

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

ii

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION
BN 30806630v9

Case No. 2:17-cv-01123-WBS-DB

## TABLE OF AUTHORITIES, *cont'd*

**Page**

**Cases**, *cont'd*

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ....................................................................................5

*Fuller v. First Franklin Fin. Corp.*,
   216 Cal. App. 4th 955 (2013) ..........................................................................4

*GEC US 1 LLC v. Frontier Renewables*, LLC,
   Case No. 16-CV-1276-YGR, 2016 U.S. Dist. LEXIS 120931
   (N.D. Cal. Sept. 7, 2016)..................................................................................9

*Gil v. Bank of America, N.A.*,
   138 Cal. App. 4th 1371 (2006) ......................................................................12

*Grover v. Bay View Bank*,
   87 Cal. App. 4th 452 (2001) ..........................................................................21

*Hatch v. Collins*,
   225 Cal. 3d 1104 (1990) ..................................................................................4

*In re VeriSign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .........................................................17

*Johnson v. Open Door Community Health Centers*,
   15 Cal. App. 5th 153, 157 (2017) ..................................................................20

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ................................................................................5, 7

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)........................................................................15

*Kramas v. Sec. Gas & Oil Inc.*,
   672 F.2d 766 (9th Cir. 1982)..........................................................................17

*LaMonte v. Sanwa Bank Cal.*,
   45 Cal. App. 4th 509 (1996) ..........................................................................20

*Lingad v. IndyMac Fed. Bank*,
   682 F. Supp. 2d 1142 (E.D. Cal. 2010)..........................................................12

*Lorenz v. East West Bancorp, Inc.*,
   Case No. 2:15-CV-06336-CAS (FFMx), 2016 U.S. Dist. LEXIS 5492
   (C.D. Cal. Jan. 14, 2016)..................................................................................9

*Lubin v. Sybedon Corp.*,
   688 F. Supp. 1425 (S.D. Cal. 1988) ...............................................................16

*McMullen Oil Co. v. Crysen Ref., Inc. (In re McMullen Oil Co.)*,
   251 B.R. 558 (Bankr. C.D. Cal. 2000)........................................................4, 13

*Merrill v. Navegar*,
   26 Cal. 4th 465 (2001) ...................................................................................21

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (2011) .....................................................................................5

Nymark v. Heart Fed. Savings & Loan Assn.,
   231 Cal. App. 3d 1089 (1991)........................................................................21

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

# TABLE OF AUTHORITIES, *cont'd*

**Page**

**Cases**, *cont'd*

*Perlas v. GMAC Mortgage*,
187 Cal. App. 4th 429 (2010) ...................................................................21

*Quelimane Co. v. Stewart Title Guaranty Co.*,
19 Cal. 4th 26 (1998) .............................................................................19

*R Power Biofuels, LLC v. Chemex LLC*,
Case No. 16-CU-00716-LHK, 2016 U.S. Dist. LEXIS 156727
(N.D. Cal. Nov. 11, 2016).........................................................................18

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
177 Cal. App. 3d 1120 (1986) ..................................................................19

*Richard B. LeVine, Inc. v. Higashi*,
131 Cal. App. 4th 566 (2005) ....................................................................9

*River Colony Estates Gen. P'ship. v. Bayview Fin. Trading Grp., Inc.*,
287 F. Supp. 2d 1213 (S.D. Cal. 2003) ........................................4, 5, 11, 24

Rodriguez v. Bank of The West,
162 Cal. App. 4th 454 (2008) ...................................................................12

*Salameh v. Tarsadia Hotels*,
Case No. 09-CU-2739-DMS (CAB), 2010 U.S. Dist. LEXIS 72988
(S.D. Cal. July 20, 2010).......................................................................16, 17

*Santa Maria v. Pac. Bell*,
202 F.3d 1170 (9th Cir. 2000), *disapproved on other grounds*,
*Socop Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001) .................................8

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)....................................................................9

*Short v. Nevada Joint Union High Sch. Dist.*,
163 Cal. App. 3d 1087 (1985) ...................................................................11

*Siegal v. Gamble*,
Case No. 13-CV-03570-RS, 2015 U.S. Dist. LEXIS 104702
(W.D. Cal. Aug. 10, 2015).........................................................................16

*Software Design & Application v. Hoefer & Arnett*,
49 Cal. App. 4th 472 (1996) ................................................................12, 14

*Stalberg v. Western Title Ins. Co.*,
230 Cal. App. 3d 1223 (1991)......................................................................7

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
Case No. CU-F-09-0560-LJO-SMS, 2011 U.S. Dist. LEXIS 72764
(E.D. Cal. July 7, 2011) ............................................................................15

*Strasberg v. Odyssey Grp., Inc.*,
51 Cal. App. 4th 906 (1996) .......................................................................4

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*,
7 F.3d 1434 (9th Cir. 1993)........................................................................19

*Tatung Co. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (C.D. Cal. 2016) .......................................................14

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

# TABLE OF AUTHORITIES, *cont'd*

**Page**

**Cases**, *cont'd*

*Telegraphers v. Railway Express Agency*,
321 U.S. 342 (1944) ................................................................................................ 4

*Van de Kamp v. Bank of America*,
204 Cal. App. 3d 819 (1988) ................................................................................. 23

*Varga v. Wells Fargo Bank, N.A.*,
Case No. CU-16-9650-DMG (KSx), 2017 U.S. Dist. LEXIS 148536
(C.D. Cal. Sept. 12, 2017) ............................................................................. 22, 24

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ................................................................................ 9

*Wagner v. Benson*,
101 Cal. App. 3d 27 (1980) ................................................................................... 21

*Webber v. Inland Empire Investments*,
74 Cal. App. 4th 884 (1999) ................................................................................. 20

**Codes and Statutes**

11 U.S.C.
§ 704(a)(7) ............................................................................................................... 7

12 U.S.C.
§ 3401 et seq. ........................................................................................................ 14

15 U.S.C.
§ 6801 .................................................................................................................... 14
§§ 6801-6809(a) .................................................................................................... 14

18 U.S.C.
§ 1343 ...................................................................................................................... 3

California Commercial Code
§ 3405 .................................................................................................................... 13
§ 4104(a)(5) ........................................................................................................... 12
§ 4215 .................................................................................................................... 20
§ 4302 et seq. ........................................................................................................ 20
§ 4401 .................................................................................................................... 13
§ 4406 .................................................................................................................... 13

California Code of Civil Procedure
§ 335.1 ................................................................................................................... 20
§ 338(c) .................................................................................................................. 22
§ 338(c)(1) ............................................................................................................... 4
§ 338(d) ............................................................................................................. 4, 22
§ 339(1) .................................................................................................................. 18

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

# **TABLE OF AUTHORITIES,** *cont'd*

**Page**

**Codes and Statutes**, *cont'd*

California Corporations Code
    § 25401 ................................................................................................................. 16
    § 25501 ................................................................................................................. 17
    § 25503 ................................................................................................................. 16
    § 25504 ................................................................................................................. 16
    § 25504.1 .............................................................................................................. 16
    § 25506(b) ............................................................................................................ 17
    § 25507(a) ............................................................................................................ 16
    § 25110

California Financial Code
    § 952 .................................................................................................................... 20
    § 953 .................................................................................................................... 20

California Penal Code
    § 496(a), (c) ......................................................................................................... 22
    § 496 ................................................................................................... 22, 23, 24
    § 496(a) ............................................................................................................... 22

**Rules**

Federal Rules of Civil Procedure
    Rule 9(b) ........................................................................................................... 9, 10
    Rule 12(b)(6) ......................................................................................................... 2

Federal Rules of Bankruptcy Procedure
    Rule 2004 .............................................................................................................. 7

**Treatises**

3 Witkin, Cal. Procedure
    (4th ed. 1996) Actions, § 602 ............................................................................... 7

5A Michie on Banks and Banking
    Chp. 9, § 11 (2014) .............................................................................................. 13

9 Cal. Jur.3d,
    Banks, § 219 ......................................................................................................... 13

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

vi

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

## I.     INTRODUCTION

Plaintiffs Ronald C. Evans, Joan M. Evans, and Dennis Treadaway ("Plaintiffs") filed a Complaint against ZB, N.A., a national banking association, d/b/a California Bank & Trust ("CB&T"), alleging a laundry list of time-barred, fatally defective claims.  These claims arise out of an alleged Ponzi scheme committed by International Manufacturing Group, Inc. ("IMG") that collapsed when IMG's Chief Executive Officer, Deepal Wannakuwatte, pled guilty to federal fraud charges on May 8, 2014.  His guilty plea caused IMG to seek bankruptcy protection on May 30, 2014.  (Compl., ¶¶ 1, 4;  Declaration of Robert S. McWhorter ("McWhorter Decl."), Exs. 1, 2.) Plaintiffs' Complaint is premised on investments made by Plaintiffs prior to IMG's collapse.  Even though Plaintiffs knew or should have known that IMG maintained deposit accounts with CB&T given, among other things, IMG's disclosure of those accounts in its bankruptcy proceeding, Plaintiffs slept on their rights and waited until May 26, 2017 to file their Complaint.  With the bulk of the applicable statutes of limitations being three years or less, Plaintiffs' claims are facially time barred.  To justify their undue delay, Plaintiffs allege that they did not discover their claims against CB&T until IMG's bankruptcy trustee filed suit against CB&T on May 6, 2016.  However, the facts pled in the Complaint actually show that Plaintiffs failed to conduct any reasonably diligent investigation to discover the existence of their claims prior to May 6, 2016, despite allegedly losing over $1 million in IMG's purported Ponzi scheme.  "The law helps the vigilant, before those who sleep on their rights."  Cal. Civ. Code § 3526.  Plaintiffs had a duty to be vigilant in discovering their alleged claims against CB&T, but failed to do so.  Plaintiffs' claims are time barred.

Plaintiffs' Complaint suffers from other fatal defects.  Plaintiffs' claims are premised on the misplaced notion that CB&T, as IMG's depository institution, owed them a duty to protect them from IMG's intentional torts even though Plaintiffs are not customers of CB&T and had no relationship with CB&T.  This premise ignores the longstanding rule that, except in very limited inapplicable circumstances, banks owe no duty of care to noncustomers.  *Chazen v. Centennial Bank,* 61 Cal. App. 4th 532, 543-45 (1998).  Further, banks owe no duty to investigate or disclose suspicious activities of an account holder to a noncustomer or to police accounts so as to prevent

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

breaches of fiduciary duty.  *Id*. at 541.  As a result, Plaintiffs' claims fail.  In addition, Plaintiffs'

Complaint is riddled with vague, conclusory, shotgun allegations of aiding and abetting fraud and

other misconduct, without pleading facts with particularity explaining what, when, where, and how

IMG defrauded Plaintiffs, how CB&T actually knew of IMG's allegedly fraudulent conduct

towards Plaintiffs, or how CB&T substantially assisted IMG in defrauding Plaintiffs.  Rather than

pleading these specific facts as required, Plaintiffs' Complaint is cleverly couched in terms of

unspecified "investors" in IMG, giving the false impression of pleading their fraud-based claims

with particularity.  Because of these insurmountable deficiencies, the Court should dismiss

Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     STATEMENT OF FACTS

### A.     IMG'S LENDING AND DEPOSITORY RELATIONSHIP WITH CB&T

IMG is a California corporation that allegedly imported latex surgical gloves and related

medical products manufactured in Asia for resale in the United States.  (Compl., ¶ 17.)  IMG sold

surgical gloves to medical offices, small businesses and other customers, purportedly including the

U.S. Department of Veterans Affairs.  (Compl., ¶¶ 19, 20.)  For an unspecified time period, IMG

deposited funds into account xxxxxx4841 at CB&T (the "Wholesale Account").  (Compl., ¶ 22.)

Before October 2009, CB&T made approximately nine loans and revolving lines of credit

to IMG (collectively, the "Loans") secured by letters of credit issued by various banks naming

CB&T as the beneficiary.  (Compl., ¶¶ 24, 105, 116, 124.)  Plaintiffs were not parties to any of the

Loans.

Out of the nine Loans, this suit focuses primarily on a $9,000,000 revolving line of credit

that CB&T extended to IMG on June 26, 2006 ("Loan 0004").  Loan 0004 was secured by a

standby letter of credit ("SLOC") that Bank of America issued in CB&T's favor as beneficiary.

(Compl., ¶¶ 42-47.)  By April 2008, CB&T had extended $8.3 million in credit to IMG under

Loan 0004 in reliance upon 16 purchase orders provided from IMG's customer, Jamestown Health

and Medical Supply, LLC ("JHMS") totaling $12,687,852.  (Compl., ¶¶ 49, 50, 72.)  The

Jamestown Tribe owned 51% of JHMS.  (Compl., ¶ 34.)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

2

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

In May 2009, Bank of America extended the SLOC's maturity date from May 17, 2009 to August 31, 2009.  (Compl., ¶ 95.)  By August 6, 2009, IMG's debt to CB&T under Loan 0004 had grown to $8,962,756.  (Compl., ¶ 72.)  Based on its contractual and statutory rights, CB&T drew upon the full amount available under the SLOC, in the amount of $9,010,671.68 (inclusive of fees), to fully repay Loan 0004.  (Compl., ¶ 98.)

On October 21, 2010, Bank of America filed suit against JHMS and the Jamestown Tribe in Superior Court for Washington for King County, Case No: 10-2-27091-SEA (the "B of A Action").  (Compl., ¶ 100.)

By February 14, 2011, IMG had repaid all the Loans with CB&T by making its final payment in the amount of $886,565.92 to CB&T on Loan No. 168068-0001.  (Compl., ¶ 112.)

On May 21, 2011, the Jamestown Tribe filed a third-party complaint against IMG and Mr. Wannakuwatte in the B of A Action, alleging that Mr. Wannakuwatte diverted funds from IMG and challenging the validity of the JHMS purchase orders used to support CB&T's drawdown on the SLOC.  (Compl., ¶ 101.)

### B.   PLAINTIFFS' INVESTMENTS IN IMG AND IMG'S PLUMMET INTO BANKRUPTCY

On January 21, 2014, Ronald Evans and his wife, Joan M. Evans, each "invested" $50,000 with IMG.  (Compl., ¶¶ 7, 8.)  Similarly, from 2007 to 2014 (presumably prior to May 30, 2014), Dennis Treadaway "invested" more than $2 million with IMG.  (Compl., ¶ 9.)  Out of this investment, Mr. Treadaway lost approximately $950,000.   (*Id.*)

On May 8, 2014, Mr. Wannakuwatte pled guilty to committing wire fraud in violation of 18 U.S.C. § 1343 in a federal criminal case before this court.  (Compl., ¶ 4; McWhorter Decl., Ex. 1.)

On May 30, 2014 (the "Petition Date"), IMG filed a voluntary petition in the U.S. Bankruptcy Court for the Eastern District of California (the "IMG Bankruptcy Proceeding"). (Compl., ¶ 4; McWhorter Decl., Ex. 2.)

On May 6, 2016, IMG's bankruptcy trustee filed a fraudulent conveyance action in the IMG Bankruptcy Proceeding against CB&T seeking to avoid and recover IMG's loan repayments

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

on the Loans (the "CB&T Adversary Proceeding").  (Compl., ¶ 15.)

On May 26, 2017, Plaintiffs filed this Complaint against CB&T.  For the reasons set forth below, this Court should dismiss the Complaint in its entirety.

III.    **LEGAL ANALYSIS**

A.    **THE FIRST, THIRD, FOURTH, AND FIFTH CLAIMS FOR AIDING AND ABETTING FRAUD, CONSPIRACY TO COMMIT FRAUD, AIDING AND ABETTING CONVERSION, AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, FAIL**

1.    **Plaintiffs' Claims Are Time Barred**

The First, Third, Fourth, and Fifth Claims assert aiding and abetting fraud, conspiracy to commit fraud, aiding and abetting conversion, and aiding and abetting breach of fiduciary duty (premised on fraudulent conduct).  The statute of limitations for actions "for relief on the ground of fraud" and for conversion is three years.  Cal. Code Civ. Proc. §§ 338(c)(1), (d); *Strasberg v. Odyssey Grp., Inc.*, 51 Cal. App. 4th 906, 915 (1996) (conversion); *Hatch v. Collins*, 225 Cal. 3d 1104, 1110 (1990) (fraud, aiding and abetting fraud); *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 963 (2013) (breach of fiduciary duty premised on fraud); *River Colony Estates Gen. P'ship. v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1221 (S.D. Cal. 2003) ("*River Colony*") (conspiracy to commit fraud).

A plaintiff must bring a cause of action within the limitations period after the cause of action accrues.  *River Colony*, 287 F. Supp. 2d at 1221.  The primary purpose of statutes of limitations is to prevent plaintiffs from asserting stale claims, where evidence is no longer fresh and witnesses are no longer available.  *Addison v. California*, 21 Cal. 3d 313, 226 (1978).  The defendant's right to be free from stale claims eventually prevails over the plaintiff's right to prosecute his or her claims.  *Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944).  Such statutes serve a distinct public purpose, by preventing the assertion of demands that, through the unexcused lapse of time, have become difficult or impossible to defend.  *Addison*, 21 Cal. 3d at 226.  The law favors those who act quickly and have not slept on their rights.  *McMullen Oil Co. v. Crysen Ref., Inc. (In re McMullen Oil Co.)*, 251 B.R. 558, 577 (Bankr. C.D. Cal. 2000).

Courts generally define the "accrual" of a claim to occur when the cause of action is

1  complete with all of its elements.  *River Colony*, 287 F. Supp. 2d at 1221.  An exception is the

2  discovery rule, under which courts postpone a cause of action's accrual date until the plaintiff

3  discovers, or has reason to discover, the cause of action.  *Id.*  A plaintiff discovers the cause of

4  action when the plaintiff at least suspects a factual basis – as opposed to a legal theory – for its

5  elements even if the plaintiff lacks knowledge thereof.  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383,

6  398 (2011).  Put differently, a plaintiff discovers a cause of action when he or she at a minimum

7  "suspects … that someone has done something wrong" to him or her, "wrong" being used in its

8  lay understanding.  *Id.* at 397-98.  A plaintiff has reason to discover the cause of action when he or

9  she has reason to suspect a factual basis for its elements.  *Id.* at 393.  This suspicion arises when a

10  plaintiff has notice or information of circumstances to put a reasonable person on inquiry.  *Id.*  A

11  plaintiff, thus, discovers a cause of action "even if he does not suspect, or have reason to suspect,

12  the identity of the defendant" or the specific facts necessary to establish the cause of action.  *Id.*

13  Once suspicion exists, the "plaintiff must go find the facts; she cannot wait for the facts to

14  find her."  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988).  After becoming aware of an

15  injury, a plaintiff must reasonably investigate all potential causes; he or she is charged with

16  knowledge of the information that would have been revealed by such investigation.  *Fox v.*

17  *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  A plaintiff whose complaint facially

18  reveals that his or her claim would be barred without the benefit of the discovery rule must

19  specifically plead facts showing (1) the time and manner of discovery and (2) the inability to have

20  made earlier discovery despite reasonable diligence.  *Id.* at 808.

21  Here, Plaintiffs' claims for aiding and abetting fraud, conspiracy to commit fraud, aiding

22  and abetting conversion, and aiding and abetting breach of fiduciary duty are barred by the three-

23  year statute of limitations.  All the conduct at issue occurred before Mr. Wannakuwatte pled guilty

24  to wire fraud on May 8, 2014.  (Compl., ¶ 4; McWhorter  Decl., Ex. 1.)  Mr. Wannakuwatte's

25  fraudulent conduct and any alleged aiding and abetting or conspiracy to commit fraud must have

26  occurred before this date.  Plaintiffs did not file their Complaint until May 26, 2017, more than

27  three years after Mr. Wannakuwatte's guilty plea.  Thus, Plaintiffs' claims are time-barred.

28  Plaintiffs cannot rely upon the discovery rule to resurrect their claims.  Their Complaint

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

5

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

demonstrates that they failed to conduct any due diligence to discover the existence of their claims against CB&T prior to May 6, 2016.  Instead, Plaintiffs feebly try to excuse their lack of diligence by claiming that they could not have discovered their claims before the CB&T Adversary Proceeding was filed on May 6, 2016, because they did not possess CB&T's unspecified "confidential banking documents" with IMG purportedly revealing IMG's and CB&T's "ongoing financial relationship."  (Compl., ¶ 15.)  This excuse is nonsense.

Plaintiffs certainly knew of IMG's alleged fraudulent scheme when Mr. Wannakuwatte pled guilty to committing criminal wire fraud in federal court on May 8, 2014.  (Compl., ¶ 4; McWhorter Decl., Ex. 1.)  As part of his plea agreement, Mr. Wannakuwatte admitted to the specifics of his wrongful conduct:  (i) he represented to victims that his companies, IMG and Relyaid, were involved in the international manufacture, shipment and distribution of latex gloves; (ii) he had falsely claimed IMG and Relyaid did tens of millions of dollars in business with federal agencies every year, most notably the Department of Veterans Affairs; (iii) he defrauded over 100 victims, ultimately obtaining over $150,000,000 by making a variety of false representations to them; and (iv) that, contrary to his representations, he used much of the money he obtained to pay himself and his family, to make lulling payments to participants in his fraudulent investment schemes, and to pay outstanding debts unrelated to his false representations.  (McWhorter Decl., Ex. 1, pgs.19-21.)  The plea agreement also required IMG to file a bankruptcy petition on May 30, 2014.  (Compl., ¶ 4; McWhorter Decl., Exs. 1 and 2.)  Thus, by May 8, 2014 at the latest, Plaintiffs had inquiry notice of IMG's purported fraudulent conduct with respect to them.  As such, they were obligated to exercise reasonable diligence to investigate and to discover the existence of any claims arising from that fraudulent conduct, including, but not limited to, whether IMG conspired or aided and abetted with any third party to defraud them.  The Complaint demonstrates that Plaintiffs failed to exercise due diligence.  Specifically, it shows that Plaintiffs did nothing to discover the existence of any conspiracy or aiding and abetting claims and thus, the discovery rule does not resurrect their time barred claims.

Plaintiffs could have exercised reasonable due diligence by conducting discovery in the IMG Bankruptcy Proceeding or obtaining documents from IMG's bankruptcy trustee.  As a

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

1   creditor of IMG, Plaintiffs had an absolute right to obtain information and documentation of

2   IMG's bank accounts and loans with CB&T in the IMG Bankruptcy Proceeding.  *See* 11 U.S.C.

3   § 704(a)(7) (trustee must "furnish such information concerning the estate and the estate's

4   administration as is requested by a party in interest); Fed. R. Bankr. P. 2004 (permits production

5   and examination of debtor's or other parties' documents, as well as an oral examination akin to a

6   deposition).  Alternatively, Plaintiffs could have filed a lawsuit against IMG and

7   Mr. Wannakuwatte, named CB&T as a "Doe" defendant, and conducted discovery in that lawsuit.

8   If Plaintiffs exercised reasonable diligence, Plaintiffs could have obtained CB&T's "confidential

9   banking documents" with IMG that purportedly revealed the "financial" relationship undergirding

10  this suit.  However, Plaintiffs did nothing to obtain these documents, or to otherwise discover the

11  information contained in CB&T's "confidential banking documents."  This Court may impute

12  constructive knowledge of the claims based upon Plaintiffs' failure to exercise reasonable

13  diligence upon attaining inquiry notice of their claims.  It is well settled that "when the plaintiff

14  has notice or information of circumstances to put a reasonable person on inquiry, or has the

15  opportunity to obtain knowledge from sources open to his investigation (such as public records . .

16  .), the statute commences to run."  3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 602, p. 773;

17  *see Stalberg v. Western Title Ins. Co*., 230 Cal. App. 3d 1223, 1231(1991) (explaining that under

18  certain circumstances, knowledge may be "imputed" to a plaintiff).

19      Plaintiffs knew or should have known about IMG's banking relationship with CB&T.  For

20  example, on July 14, 2014, IMG filed a monthly operating report disclosing that it had two

21  "Frozen" checking accounts with CB&T that held $563,551 as of June 30, 2014.  (McWhorter

22  Decl., Ex. 3.)  That Plaintiffs later learned of CB&T's alleged role in IMG's Ponzi scheme did not

23  delay the statute of limitations.  "[I]gnorance of the legal significance of known facts or the

24  identity of the defendant would not delay the running of the statute."  *Jolly*, 44 Cal. 3d at 1110.

25  "Aggrieved parties generally need not know the exact manner in which their injuries were

26  'effected, nor the identities of all parties who may have played a role therein.'"  *Bernson v.*

27  *Browning-Ferris Indust.*, 7 Cal. 4th 926, 932 (1994).  The rationale for this rule is that "once the

28  plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the

filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers." *Benson*, 7 Cal. 4th at 932.

In their Complaint, Plaintiffs allege that CB&T is estopped from attacking their claims on statute of limitations grounds because CB&T purportedly concealed that "IMG was defrauding them and its role in the fraud." (Compl., ¶ 16.)  Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.  *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1176 (9th Cir. 2000), *disapproved on other grounds*, *Socop Gonzalez v. INS*, 272 F.3d 1176, 1194-95 (9th Cir. 2001).  Courts will toll the statute of limitations based on equitable estoppel when the plaintiff is prevented from asserting his claim due to the defendants' wrongful conduct.  *Id*. at 1178. Factors which the court should consider when deciding whether equitable estoppel should be applied include:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Santa Maria,* 2020 F.3d at 1178.  Equitable estoppel, then, may come into play "if the defendant takes active steps to prevent the plaintiff from suing in time."  *Id.* at 1176-77.

Here, the equitable estoppel doctrine does not rescue Plaintiffs' otherwise time-barred claims.  Plaintiffs fail to plead specific facts showing CB&T's active concealment of its role in IMG's fraudulent scheme.  Plaintiffs do not allege that CB&T took active steps to prevent them from suing before the applicable statute of limitations expired.  Nor do Plaintiffs allege CB&T misled or made misrepresentations to them to induce them to wait for the applicable statute of limitations to run before suing.  In fact, Plaintiffs do not plead <u>any</u> facts regarding CB&T after February 14, 2011, other than that CB&T acted as a depository bank.  (Compl., ¶¶ 5, 7, 9, 21, 22, 25, 89, 90, 134, 142, 148, 153, 159.)  This Court should reject Plaintiffs' equitable estoppel argument, and dismiss all of these claims as being time-barred.

**2.      Plaintiffs' First, Fourth, And Fifth Claims For Aiding And Abetting Fraud, Aiding And Abetting Conversion, And Breach Of Fiduciary Duty Fail To Plead Facts With Particularity**

Plaintiffs' First Claim alleges CB&T aided and abetted Mr. Wannakuwatte's alleged fraud.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

1  (Compl., ¶¶ 134-135.)  Plaintiffs' Fourth and Fifth Claims for aiding and abetting conversion and

2  breach of fiduciary duty against CB&T sound in fraud because they allege that IMG stole

3  Plaintiffs' money based upon "misrepresentations" and "fabricated transactions."  (Compl.,

4  ¶¶ 149-156.)  Aiding and abetting liability depends upon the actual commission of a tort.  *Richard*

5  *B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005).  Unless the underlying tort is

6  established, a defendant cannot be held liable as an aider and abettor.  *Id.*

7  　　　Because the First, Fourth, and Fifth Claims involve fraud, the underlying tort claims must

8  be pled with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure ("Rule

9  9(b)").  *Lorenz v. East West Bancorp, Inc*., Case No. 2:15-CV-06336-CAS (FFMx), 2016 U.S.

10  Dist. LEXIS 5492, *16 (C.D. Cal. Jan. 14, 2016); *GEC US 1 LLC v. Frontier Renewables*, LLC,

11  Case No. 16-CV-1276-YGR, 2016 U.S. Dist. LEXIS 120931, *20 (N.D. Cal. Sept. 7, 2016)

12  (conversion based on fraud must satisfy heightened pleading standard).  In addition, Plaintiffs

13  must plead with particularity that CB&T substantially assisted Mr. Wannakuwatte's underlying

14  fraud; they may generally aver to CB&T's knowledge of this fraud.  *Lorenz,* 2016 U.S. Dist.

15  LEXIS at *20.

16  　　　To satisfy the particularity requirement, a plaintiff must plead the time, place, and specific

17  content of the fraudulent representations as well as the identities of the parties to the

18  misrepresentation.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th

19  Cir. 1986).  Averments of fraud must be accompanied by "the who, what, when, where, and how"

20  of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

21  A "plaintiff must set forth more than the neutral facts necessary to identify the transaction. The

22  plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.*

23  　　　Despite its length, Plaintiffs' Complaint hinges on general, vague, and conclusory allegations

24  that fail to allege fraud with particularity as required under Rule 9(b).  The Complaint is cleverly

25  drafted to create the impression of a thorough narrative while, in actuality, avoiding the specific

26  "who, what, where, and how" information that Rule 9(b) requires.  The crux of the

27  allegations in the Complaint relates to unidentified "investors" in IMG or to transactions not

28  involving Plaintiffs.  (Compl., ¶¶ 20-124.)  Most telling, the primary allegation in the First Claim

BUCHALTER
A PROFESSIONAL CORPORATION
Sacramento

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

references "investors" and does not specifically refer to Plaintiffs.  (Compl., ¶ 134.)

The only specific facts pled regarding Plaintiffs consists of three paragraphs (7, 8, 9), which do not plead fraud with particularity or CB&T's aiding and abetting of that fraud towards Plaintiffs.  Plaintiffs do not allege the time or place of any specific misrepresentations that IMG made *to Plaintiffs*.  The Complaint references the dates when Plaintiffs invested money, but not dates or places of any misrepresentations by IMG.  It merely states that Mr. and Mrs. Evans each invested $50,000 on January 21, 2014 and that Mr. Treadaway invested $2 million from 2007 to 2014.  (Compl., ¶¶ 7, 8, 9.)  However, these dates do not specifically identify what specific misrepresentations IMG allegedly made to them, or when.

Also, Plaintiffs fail to plead with particularity the content of IMG's alleged misrepresentations and how IMG's alleged misrepresentations were false.  The First Claim merely alleges that IMG made unspecified "misrepresentations/omissions" regarding the purchase of overseas inventory.  (Compl., ¶ 134.)  The Fourth Claim for aiding and abetting conversion alleges that "Plaintiffs' and other class members' money" was converted based upon indefinite misrepresentations that the funds would be used for IMG's wholesale import business.  (Compl., ¶ 150.)  The Fifth Claim alleges that payments were made based upon "fabricated transactions." (Compl., ¶ 154.)  Also, the Complaint generally alleges IMG represented to Plaintiffs that their investments would be used to purchase actual product overseas and promised to "describe" these representations "in more detail below."  (*Id*.)  However, Plaintiffs failed to abide by this promise and did not in fact provide more factual detail.

All the foregoing alleged "misrepresentations" do not identify with particularity (i) the specific content of IMG's alleged misrepresentations, (ii) the manner in which IMG made the representations (oral or in writing), or (iii) the identity of the person(s) from IMG who made the representations to Plaintiffs.  Similarly, IMG does not plead specific facts establishing how CB&T substantially assisted IMG's alleged fraudulent representations *regarding Plaintiffs*, rather than unidentified "investors" in general.  This is fatally defective under Rule 9(b).

Equally glaringly, Plaintiffs do not state that CB&T had actual knowledge that IMG was defrauding *Plaintiffs,* rather than unidentified "investors" in general.  For instance, paragraph 134

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

of the Complaint relates to CB&T's actual knowledge of "misrepresentations / omissions *regarding whether investors' funds* were used to purchase overseas inventory."  (Compl., ¶ 134) (emphasis added).  Such a bare conclusion does not specifically relate to Plaintiffs.  The lack of specificity is particularly disturbing given that Mr. and Mrs. Evans did not invest any money with IMG until January 21, 2014 – *three years after* CB&T's Loans were repaid in full, and after virtually all of the conduct pled in the Complaint.  (Compl., ¶¶ 7-124.)

### 3.   Plaintiffs' Third Claim For Conspiracy To Commit Fraud Fails

#### a.   Plaintiffs' Fraud Allegations Fail

California law does not recognize a separate tort of civil conspiracy:  it also does not recognize a tort claim for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results therefrom.  *Short v. Nevada Joint Union High Sch. Dist.*, 163 Cal. App. 3d 1087, 1101 (1985).  Thus, a claim for civil conspiracy requires that all the elements of the underlying tort must be pled.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 511 (1994).  Thus, as applicable here, Plaintiffs must plead the elements of the underlying tort (in this case fraud) to state a claim for conspiracy to commit fraud.  Because Plaintiffs fail to plead fraud with particularity as discussed above, Plaintiffs' conspiracy claim necessarily fails as a matter of law.  *See* Section III.A.2, above.

#### b.   CB&T Did Not Owe A Duty Of Care To Plaintiffs

Even if Plaintiffs could satisfy the heightened pleading requirements to establish fraud, they cannot sustain a cause of action for conspiracy because CB&T did not owe Plaintiffs a duty of care.  Tort liability for conspiracy cannot exist unless the alleged co-conspirator is legally capable of committing the tort; in other words, the co-conspirator must owe a duty to the plaintiff. *River Colony,* 287 F. Supp. 2d at 1224.  As a matter of law, a civil conspiracy to commit tortious acts can be formed only by parties who owe a legal duty of care to the plaintiff, the breach of which will support tort liability against the parties individually.  *Ferris v. Gatke Corp.*, 107 Cal. App. 4th 1211, 1225 (2003) ("Put another way, where a plaintiff asserts the existence of a civil conspiracy among the defendants to commit tortious acts, the source of any substantive liability arises out of an independent duty running to the plaintiff and its breach; tort liability cannot arise

11

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

1   vicariously out of participation in the conspiracy itself."); *Lingad v. IndyMac Fed. Bank*, 682 F.

2   Supp. 2d 1142, 1150 (E.D. Cal. 2010) (a conspirator cannot be liable unless he personally owed a

3   duty of care to the plaintiff that was breached).

4          Plaintiffs do not, and cannot, allege facts establishing that CB&T owed them any duty of

5   care. Plaintiffs were investors in IMG. They were neither CB&T customers nor persons in whose

6   name bank accounts were opened at CB&T. They had no relationship at all with CB&T. A bank

7   does not owe a duty of care to noncustomers absent extraordinary and specific facts. *Software*

8   *Design & Application v. Hoefer & Arnett*, 49 Cal. App. 4th 472, 479 (1996); *Gil v. Bank of*

9   *America, N.A.*, 138 Cal. App. 4th 1371, 1380 (2006); *Rodriguez v. Bank of The West*, 162 Cal.

10  App. 4th 454, 460 (2008). "A bank's duty of care—to act with reasonable care in its transactions

11  with its customers—arises out of the bank's contract with its customer," and thus banks generally

12  do not owe a duty of care to others. *Rodriguez*, 162 Cal. App. 4th at 460; *see also* Cal. Com. Code

13  § 4104(a)(5) (a bank's customer is "a person having an account with the a bank or for whom a

14  bank has agreed to collect items"). "[U]nder California law, a bank owes no duty to nondepositors

15  to investigate or disclose suspicious activities on the part of an account holder." *Casey v. U.S.*

16  *Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1149 (2005). A bank's alleged knowledge of a

17  depositor's suspicious account activities—even money laundering—without more, does not give

18  rise to tort liability for the bank. *Id.* at 1151. The relationship of bank and depositor is founded on

19  contract, which does not involve any implied duty "to supervise account activity" or to inquire into

20  the purpose for which the funds are being used. *Chazen*, 61 Cal. App. 4th at 537. This

21  relationship entails no contractual obligation to persons other than the account holder. *Id.* "Under

22  governing principles of banking law, the bank has no such duty [to police fiduciary accounts so as

23  to prevent breaches of fiduciary duty]." *Id.* at 541. "Specifically, it has no duty to prevent

24  commingling of assets in fiduciary accounts, to monitor fiduciary accounts for irregular

25  transactions, to prevent improper disbursements from the accounts, or to conduct an investigation

26  of possible misappropriation of funds." *Id.*

27         Consistent with the lack of any duty to noncustomers, "[b]anks are under no legal duty to

28  warn the investing public as to the financial condition of their depositors." 5A Michie on Banks

12

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

and Banking, Chp. 9, § 11, p. 69 (2014); *see, e.g.*, *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 435 (7th Cir. 1996) (lending money under loan agreement did not create a duty to warn creditors of borrower that it was "financially shaky").  In *Cunningham v. Merchants' Nat'l Bank*, 4 F.2d 25, 30 (1st Cir. 1925), the First Circuit noted:  "Banks are under no duty at law to warn the investing public as to the financial condition of their depositors.  Investors may be assumed to keep themselves reasonably informed as to the financial capacity of persons with whom they are dealing in their investments."

"Banks . . . [owe] a duty of care to nondepositors only in very narrow factual circumstances involving the bank's liability for allowing a person to deposit a check, payable to someone else, in a personal account, under circumstances that should have alerted the bank to the possibility of fraud."  9 Cal. Jur.3d, Banks, § 219, p. 544 (fns. omitted); *see e.g.*, *Chazen*, 61 Cal. App. 4th at 543-545.  Further, the California Commercial Code provides a comprehensive statutory scheme for allocating losses resulting from fraudulent financial instruments such as checks or for fraudulent bank account holder signatures and liability for unauthorized withdrawals. *See, e.g.*, Cal. Com. Code §§ 3405, 4401, 4406; *In re McMullen Oil Co.*, 251 B.R. at 565.  None of these circumstances apply to this case.

Courts have justified the no-duty rule based on privacy and confidentiality reasons.  Bank account holders or depositors are afforded reasonable expectations of privacy, which establishes that absent compulsion by legal process, the matters the account holder reveals to the bank will be utilized by the bank only for internal banking purposes.  *Chi. Title Ins. Co. v. Sup. Ct.*, 174 Cal. App. 3d 1142, 1159 (1985).  As such, a bank has no duty to disclose any suspicions about its depositors/customers because doing so would violate its customers' right to privacy and force the bank to act as guarantor for certain transactions.  *Id.*  The *Casey* court noted that if banks had such a duty to disclose suspicions about their customers to noncustomers, this would violate their customers' right to privacy.  *Casey*, 127 Cal. App. 4th at 1149.

Consistent with this decision, federal law expressly prohibits financial institutions from directly or indirectly disclosing, and requires affirmative protection from disclosure of, nonpublic personal information to nonaffiliated third parties, absent specific circumstances not applicable

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

13

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

1    here.  *See* 12 U.S.C. § 3401 et seq. (prevents disclosure of personal information to governmental

2    agencies); 15 U.S.C. §§ 6801-6809(a) (protects against disclosure of nonpublic personal

3    information).  As stated in 15 U.S.C. § 6801, "[i]t is the policy of the Congress that each financial

4    institution has an affirmative and continuing obligation to respect the privacy of its customers and

5    to protect the security and confidentiality of those customers' nonpublic personal information."

6          In addition to privacy reasons, other policy considerations underlie a bank's lack of any duty

7    to noncustomers.  In *Software Design*, 49 Cal. App. 4th at 483, the court held that the bank owed no

8    duty to a nondepositor/noncustomer to investigate and monitor a depositor's embezzlement of funds.

9    *Software Design* rooted its rationale on the fact that "[s]crutiny into the financial and business affairs

10   of prospective customers for the express purpose of ferreting out the faithless fiduciary and divining

11   illegal conduits for embezzled funds would be intrusive for the citizenry and add to the cost of

12   financial transactions, both in terms of time and money."  *Software Design*, 49 Cal. App. 4th at 483.

13   Other courts have justified the no-duty rule based upon the concern that imposing a duty on banks to

14   protect non-customers from the torts of others "would expose banks to unlimited liability for

15   unforeseeable frauds."  *See Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002).

16   Without any duty of care owed to Plaintiffs, Plaintiffs' conspiracy claims fail.

                    **c.     Plaintiffs Have Not Alleged Facts Sufficient To Establish An
                             Agreement Between CB&T And IMG To Commit Fraud**

18         "The elements of an action for civil conspiracy are (1) the formation and operation of the

19   conspiracy and (2) damage resulting to plaintiff from an act or acts done in furtherance of the

20   common design from (3) an act or acts done in furtherance of the common design."  *Tatung Co. v.*

21   *Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1183 (C.D. Cal. 2016).   To allege a conspiracy, the plaintiff

22   must allege, at a minimum, an agreement to commit the wrongful acts.  *Id.*  To be liable, an

23   alleged conspirator must have knowledge of the planned tort and intent to aid in its commission.

24   *Id.*  To state a facially plausible claim as required under *Bell Atlantic Corp. v. Twombly*, 550 U.S.

25   544, 558 (2007), a plaintiff must "include sufficient facts supporting the existence of a conspiracy,

26   beyond the conclusory allegation that a conspiracy did exist."  *Stanislaus Food Prods. Co. v. USS-*

27   *POSCO Indus.*, Case No. CU-F-09-0560-LJO-SMS, 2011 U.S. Dist. LEXIS 72764, *13 (E.D. Cal.

28

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:17-cv-01123-WBS-DB
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

1  July 7, 2011).  "A civil conspiracy requires agreement to commit or assist in committing a

2  violation, and an overt act in furtherance of the conspiracy."  *Dufour v. Be LLC*, Case No. C-09-

3  3770 CRB, 2010 U.S. Dist. LEXIS 8440, *11 (N.D. Cal. Feb. 2, 2010).

4       In *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008), the plaintiffs alleged

5  that the defendants had conspired to fix the defendant bank's fees charged to retailers for

6  processing credit card sales.  Like this case, the plaintiffs in *Kendall* merely alleged that the

7  defendant bank "knowingly, intentionally, and actively participated" in the alleged scheme.  *Id.*

8  The court found this vague pleading was insufficient, stating that such an "allegation is nothing

9  more than a conclusory statement."  *Id.*  The court ruled that a complaint alleging a conspiracy

10 must plead facts supporting the existence of an agreement to commit the wrongful act, and must

11 allege "facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give

12 a defendant seeking to respond to allegations of a conspiracy an idea of where to begin,"

13 particularly when the defendant is a "large [bank] with hundreds of employees entering into

14 contracts and agreements daily."  *Kendall*, 518 F.3d at 1047-1048.  The court held the complaint

15 was properly dismissed because plaintiffs did not allege factual specifics that would "answer

16 [such] basic questions [as]: who, did what, to whom (or with whom), where, and when?"  *Id.* at

17 1049.

18       Here, Plaintiffs do not allege the existence of an agreement between IMG and CB&T to

19 commit wrongful acts.  Plaintiffs do not allege that CB&T agreed with IMG or Mr. Wannakuwatte

20 to make any misrepresentation, to conceal anything from Plaintiffs, or to engage in any

21 wrongdoing against Plaintiffs.  Plaintiffs plead no facts articulating any agreement to commit a

22 wrongful act or the "who, did what, to whom (or with whom), where, and when" necessary to

23 establish the existence of such an agreement between CB&T and IMG.  Plaintiffs do not identify

24 any representative(s) from CB&T who allegedly entered into any agreement to commit a

25 conspiracy – all necessary factual allegations so as to permit CB&T to properly respond to

26 Plaintiffs' allegations.  Without alleging any facts establishing the existence of an agreement,

27 Plaintiffs' conspiracy claim fails.

28

**B.**     **PLAINTIFFS' SECOND CAUSE OF ACTION FOR SECURITIES FRAUD IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

**1.**     **Corporations Code Sections 25110 And 25504.1**

An action based on a violation of Corporations Code sections 25110 and 25504.1 alleging material assistance in the sale of unqualified/unregistered securities must be commenced within *one year* after discovery of the facts constituting the violation, and in no event later than *two years* after such violation.  Corp. Code §§ 25503, 25507(a).  The two-year statute of limitations codified in section 25507 is absolute and *not subject to equitable tolling*.  *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1452-53 (S.D. Cal. 1988).  Because the alleged violation is the sale of an unqualified security, the statute of limitations is triggered either upon the date of purchase or the date on which the securities should have been registered.  *Salameh v. Tarsadia Hotels*, Case No. 09-CU-2739-DMS (CAB), 2010 U.S. Dist. LEXIS 72988, *22 (S.D. Cal. July 20, 2010).  Thus, the longest possible limitations period for Plaintiffs' claim is two years from the date of the alleged violation.  *Id.*

Here, Mr. and Mrs. Evans invested $50,000 on January 21, 2014.  (Compl., ¶¶ 7, 8.) Mr. Treadaway invested over $2 million with IMG in a series of transactions from 2007 to 2014, presumably before Mr. Wannakuwatte's guilty plea on May 8, 2014 and IMG's subsequent bankruptcy filing on May 31, 2014.  (Comp., ¶¶ 9, 123.)  Plaintiffs filed their Complaint on May 26, 2017, more than three years after their investment into alleged "securities" of IMG.  With the longest possible statute of limitations being only two years, Plaintiffs' claims based on Corporations Code sections 25110 and 25504.1 are time-barred and must be dismissed.

**2.**     **Corporations Code Sections 25401 And 25504.1**

Section 25401 makes it unlawful "for any person to offer or sell a security in this state" by means of untrue statements or omissions of material fact.  Cal. Corp. Code § 25401.  Anyone who materially assists in a violation of section 25401 with intent to deceive or defraud is jointly and severally liable with the person who violates section 25401.  Cal. Corp. Code § 25504.1.  "Section 25504.1 imposes what is sometimes referred to as aider and abettor liability."  *Siegal v. Gamble*, Case No. 13-CV-03570-RS, 2015 U.S. Dist. LEXIS 104702, *13 (W.D. Cal. Aug. 10, 2015). Plaintiffs' claim for material assistance by CB&T in the sale of securities based on alleged

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

1  misrepresentations or omissions of material fact must have been commenced "before the
2  expiration of five years after the act or transaction constituting the violation or the expiration of
3  two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall
4  first expire."  Cal. Corp. Code §§ 25501, 25506(b); *Salameh*, 2011 U.S. Dist. LEXIS at *35.  The
5  five-year bar *is a strict limit that may not be tolled.  In re VeriSign, Inc., Derivative Litig.*, 531 F.
6  Supp. 2d 1173, 1221 (N.D. Cal. 2007).

7      This five-year absolute bar applies here.  The Complaint alleges that Mr. Treadaway
8  invested over $2 million in IMG from 2007 to 2014.  The Complaint was filed on May 26, 2017.
9  At a minimum, Mr. Treadaway's claims that arose before May 26, 2012 are time-barred based
10  upon section 25506(b)'s strict five (5) year limitation period.  As for Plaintiffs' remaining claims,
11  they do not adequately plead that they filed their claim within two (2) years after they discovered
12  or should have discovered, through the exercise of reasonable diligence, CB&T's alleged material
13  assistance.  Regarding the two-year discovery limitation, the statute of limitations begins to run
14  when plaintiff either discovers the facts constituting the violation, or in the exercise of reasonable
15  diligence should have discovered them.  *Kramas v. Sec. Gas & Oil Inc*., 672 F.2d 766, 770 (9th
16  Cir. 1982).  Inquiry notice is sufficient to trigger the running of the limitations period under
17  section 25506.  *Deveny v. Entropin, Inc*., 139 Cal. App. 4th 408, 423 (2006).  As discussed above,
18  Plaintiffs failed to plead any facts specifically showing what reasonable due diligence, if any, they
19  conducted to discover the existence of their claims against CB&T.  *See* Section III.A.1, above.  As
20  such, Plaintiffs' claims in their Second Cause of Action are time-barred.

21      **C.    PLAINTIFFS' SIXTH CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT
22            FAILS**

23      In their Sixth Claim, Plaintiffs allege CB&T intentionally interfered with their contract
24  with IMG.  (Compl., ¶¶ 158-161.)  Specifically, they allege that CB&T "induced, promoted,
25  facilitated, and assisted IMG" in breaching its contract with Plaintiffs by knowingly using money
26  deposited for the specific purpose "of funding the acquisition and sale of product to pay other
27  investors."  (*Id*. at ¶ 159.)  These allegations lack merit.

28

### 1.      The Sixth Claim Is Time-Barred

Under California law, the statute of limitations for intentional interference with contractual relations is two years.  *See* Cal. Code Civ. Proc. § 339(1); *Forcier v. Microsoft Corp.,* 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000).  The statute of limitations begins to run at the latest when the contract is actually breached.  *Forcier*, 123 F. Supp. 2d at 530.  According to the Complaint, IMG breached its contract with Plaintiffs, with CB&T's alleged assistance, prior to its filing of bankruptcy on May 30, 2014.[1]  (Compl., ¶ 160.)  Thus, the statute of limitations expired on May 30, 2016.  Because Plaintiffs did not file their Complaint until May 26, 2017, approximately one year after that date, the Sixth Claim is time-barred.  If Plaintiffs seek to avoid this result by arguing that the "discovery rule" applies and that the statute of limitations did not accrue until they discovered or had reason to discover the cause of action, such arguments are unavailing as explained above.  *See* Section III.A.1, above.

### 2.      Plaintiffs Failed To Adequately Plead The Requisite Elements

Even if this Court finds that Plaintiffs' Sixth Claim is not time-barred, this Court should still dismiss it because Plaintiffs failed to plead plausibly a valid claim for intentional interference with contractual relations.  To plead a valid intentional interference with contract claim, a plaintiff must plead the existence of "a valid contract between plaintiff and a third party."  *R Power Biofuels, LLC v. Chemex LLC*, Case No. 16-CU-00716-LHK, 2016 U.S. Dist. LEXIS 156727, *50 (N.D. Cal. Nov. 11, 2016).  Here, Plaintiffs conveniently omit specific details about their unspecified contracts with IMG.  At best, Plaintiffs state elsewhere in the Complaint that they made investments with IMG, but do not plead any specific facts setting forth the nature, terms or extent of those contracts.  (Compl., ¶¶ 7, 8, 9.) Plaintiffs do not even allege whether the contracts between Plaintiffs and IMG were oral or in writing or how CB&T purportedly knew of the existence of those purported contracts.  At best, Plaintiffs plead barebone conclusions.

Even more fatal, Plaintiffs fail to plead the requisite intent to establish their interference claim.  Intentional interference with a contract is an intentional tort.  *Ramona Manor Convalescent*

---

[1] The Complaint inaccurately alleges that IMG filed bankruptcy on May 31, 2014, when in fact it filed bankruptcy on May 30, 2014.  (Compl.,¶¶ 4, 160; McWhorter Decl., Ex. 2.)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

*Hosp. v. Care Enters.,* 177 Cal. App. 3d 1120, 1131 (1986) ("*Ramona*").  To state a valid claim, a plaintiff must specifically plead that the defendant intended to induce breach or disrupt the contract.  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).  Intent is an essential element of an intentional interference claim.  *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1442 (9th Cir. 1993).  A plaintiff must plead and prove intentional acts on the part of the defendant designed to disrupt the contractual relationship.  *Ramona*, 177 Cal. App. 3d at 1131.  Here, while Plaintiffs conclusorily plead that CB&T knew of the existence of IMG's purported contracts with Plaintiffs, Plaintiffs do not allege that CB&T *intended* to induce IMG to breach those specific contracts.  No intentional act is pled.  (Compl., ¶¶ 158-161.)

To complicate matters, Plaintiffs do not allege plausible facts suggesting how CB&T purportedly induced IMG to breach its contracts with Plaintiffs.  Instead of pleading facts, Plaintiffs' baldly and conclusorily assert that "CB&T induced, promoted, facilitated and assisted IMG in breaching each contract with each Plaintiff by knowingly using the investors' money deposited for the specific purpose of funding the acquisition and sale of product to pay other investors in breach of each contract."  (Compl., ¶ 159.)  While making this conclusion, Plaintiffs do not plead any facts to support it.  Plaintiffs do not plead specific facts showing how CB&T "induced, promoted, facilitated and assisted" IMG in breaching its contract *with Plaintiffs*.  For instance, Mr. and Mrs. Evans invested funds on January 21, 2014.  Plaintiffs do not plead facts establishing how CB&T induced IMG to breach its contract with Mr. and Mrs. Evans by merely acting as a depository bank.  The same analysis and lack of specificity applies to Mr. Treadaway.  "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Bell Atlantic Corp.*, 550 U.S. at 555.  Here, Plaintiffs do not meet this standard.

To the extent Plaintiffs rely upon CB&T's role as a depository institution or as a lender, such conduct did not constitute tortious interference with Plaintiffs' contracts with IMG as a

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

matter of law.[2]  As a depository institution, CB&T owed no duty of care to Plaintiffs, as noncustomers of the bank, as discussed above.  *See* Section III.A.3.b, above.  "A bank is authorized to honor withdrawals from an account on the signatures authorized by the signature card, which serves as a contract between the depositor and the bank for the handling of the account."  *LaMonte v. Sanwa Bank Cal*., 45 Cal. App. 4th 509, 521 (1996); *Ford v. NCUA*, 448 Fed. Appx. 745, 746-747 (9th Cir. 2011).  A bank is required to honor withdrawals by authorized persons who draw on the account and is required to disregard notice of adverse claims to the account, unless made through an appropriate affidavit or court order.  *Chazen*, 61 Cal. App. 4th at 541, citing Cal. Fin. Code §§ 952, 953.  The essence of a bank's obligation to its depositor is to honor a check or demand for payment if there are sufficient funds on deposit.  *Allen v. Bank of America Nat'l Trust & Sav. Asso*., 58 Cal. App. 2d 124, 127 (1943); *see also* Cal. Com. Code §§ 4215, 4302 *et seq.* (defining obligations of payor banks).  Accordingly, CB&T had an affirmative obligation to honor checks or other payment demands from IMG's deposit accounts consistent with its obligation under the depository contract with IMG and its obligations as a payor bank under the California Commercial Code.  Plaintiffs' intentional interference claim fails.

## D.  PLAINTIFFS' SEVENTH CLAIM FOR NEGLIGENCE FAILS

In the Seventh Claim, Plaintiffs allege that CB&T negligently failed to terminate its banking relationship with IMG when it obtained actual knowledge that IMG was defrauding investors.  (Compl., ¶ 165.)  Plaintiffs' negligence claims are time barred.  The statute of limitations for "ordinary negligence" claims is two years.  Cal. Code Civ. Proc. § 335.1; *Johnson v. Open Door Community Health Centers*, 15 Cal. App. 5th 153, 157 (2017).  Any alleged failure to terminate IMG's depository accounts must have arisen prior to its bankruptcy filing on May 30, 2014.  Given that the Complaint was not filed until three years later on May 26, 2017, Plaintiffs' negligence claims are time barred.

---

[2] As a lender, CB&T was entitled to take all legal steps to obtain payment of a debt owed to it, and such conduct constitutes legal justification for any interference with Plaintiffs' alleged contract with IMG.  *See Webber v. Inland Empire Investments*, 74 Cal. App. 4th 884, 902 (1999) (creditor entitled to take all legal steps to obtain payment of debt owed to it and constitute justification for interference with contract).

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

Even if this Court disregards the stale nature of Plaintiffs' negligence claims, this Court should still dismiss these claims.  In order to assert a negligence claim, Plaintiffs must establish the existence of CB&T's legal duty of care to them, as well as breach of that duty.  *Merrill v. Navegar*, 26 Cal. 4th 465, 500 (2001).  Plaintiffs cannot satisfy these requirements.

Plaintiffs were not customers of CB&T.  Plaintiffs were not borrowers or guarantors under any of the Loans.  Plaintiffs were merely "investors" in IMG, who were not in privity with CB&T.  As stated above, a bank does not owe a duty of care to noncustomers.  CB&T incorporates by reference the arguments raised above with respect to the bank's lack of any duty of care to noncustomers.  *See* Section III.A.3.b, above.

In addition, Plaintiffs' negligence claims fail because CB&T owed no duty to Plaintiffs to terminate IMG's deposit accounts.  As the court recognized in *Chazen*, 61 Cal. App. 4th at 541, although a bank may be free to terminate a deposit account, it incurs no liability by failing to do so even after it receives notice of adverse claims or improper disbursements from a trust account.  The relationship of bank and depositor is that of debtor and creditor, and it is founded on contract.  *Grover v. Bay View Bank*, 87 Cal. App. 4th 452, 456 (2001).  This relationship entails no contractual obligations to persons other than the account holder.  *Id.*  Any duty or right to terminate is subject to the contract between the bank and the depositor.

Further, CB&T's relationship as a lender to IMG did not obligate it to terminate IMG's deposit accounts.  "The relationship between a lending institution and its borrower-client is not fiduciary in nature . . . A commercial lender is entitled to pursue its own economic interests in a loan transaction."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093, n.1 (1991).  A lender is under no duty "to determine the borrower's ability to repay the loan.  The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's."  *Perlas v. GMAC Mortgage*, 187 Cal. App. 4th 429, 436 (2010).  Banks owe no duty of care to a borrower in approving a loan.  *Wagner v. Benson*, 101 Cal. App. 3d 27 (1980).  A commercial lender is not the guarantor of a borrower's success and is not liable for the hardships that may befall a borrower.  *Das v. Bank of America*, 186 Cal. App. 4th 727, 740 (2010).  Given the lack of any duty of care to IMG as its borrower, it follows that CB&T did

21

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

not owe any duties to any non-borrower or non-guarantor, such as Plaintiffs, so as to create an

obligation to terminate its banking relationship with IMG.  As a result, Plaintiffs' negligence claim

fails.

### E.     PLAINTIFFS' EIGHTH AND NINTH CLAIMS FOR VIOLATION OF, AND CONSPIRACY TO VIOLATE, CALIFORNIA PENAL CODE SECTION 496 FAIL

In the Eighth and Ninth Claims, Plaintiffs charge Defendants with violating, and

conspiracy to violate, California Penal Code section 496.  Section 496 outlaws the receiving of

stolen property and provides for treble damages to anyone injured by a statutory violation.  *See*

Cal. Penal Code § 496(a)-(c). The statute provides, in pertinent part:

> (a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, . . . shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.
> . . . .
> (c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

Cal. Penal Code § 496(a), (c).  Three elements must be established to assert a claim for violation

of California Penal Code section 496(a):  "(1) The property must have been obtained by theft; (2)

The defendant must have bought or received such property, or the defendant must have concealed

or withheld such property from the owner; and (3) The defendant must have known at the time he

committed one of the acts specified above that the property had been obtained by theft."  *Varga v.*

*Wells Fargo Bank, N.A.*, Case No. CU-16-9650-DMG (KSx), 2017 U.S. Dist. LEXIS 148536, *21

(C.D. Cal. Sept. 12, 2017).  Plaintiffs' claims fail for multiple reasons.

**First**, the statute of limitations applicable to these claims is three years.  Cal. Code Civ.

Proc. §§ 338(c), (d).  As explained above, all of the allegedly unlawful conduct occurred before

Mr. Wannakuwatte pled guilty to wire fraud on May 8, 2014.  (Compl., ¶ 4; McWhorter  Decl.,

¶ 1.)  Plaintiffs filed their Complaint on May 26, 2017, after the three-year statute of limitations

expired.

**Second**, Plaintiffs cannot rely upon the existence of CB&T's role as a depository bank to

establish that CB&T allegedly received funds obtained through IMG's fraudulent conduct or to

22

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

object to CB&T's honoring of IMG's payment directives on its accounts at CB&T. (Compl., ¶ 169.) "It is axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor. Such a deposit is in effect a loan to the bank." *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 858 (1988). The relationship between a bank and its depositor is created by an express or implied agreement between them. *Id.* When funds are deposited, title to those funds passes immediately to the bank, which may use the funds for its own business purposes. *Id.*; *Crocker-Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977). Since the money thus becomes the bank's property, the bank cannot commit tortious conversion. *Van de Kamp*, 204 Cal. App. 3d at 858. However, a bank is obligated to pay the debt reflected by the balance of the deposited funds upon its depositor's demand. *Id.* As the Ninth Circuit has long recognized,

> [t]he bank acquires ownership of the deposited money and becomes obligated to account to the depositor. A credit entry is made on its books against which it will honor drafts and checks. The bank pays out its own money on these checks and drafts but is entitled by the implied contract of deposit to charge to the account of the customer the amount thereof.

*Brown v. New York Life Ins. Co.*, 152 F.2d 246, 249 (9th Cir. 1945). As stated above, the bank is required to honor withdrawals by authorized persons who draw on the account and is required to disregard notice of adverse claims to the account, unless made through an appropriate affidavit or court order. *Chazen*, 61 Cal. App. 4th at 541. Accordingly, CB&T had an affirmative obligation to honor checks or other payment demands from IMG's deposit account consistent with its obligation under the depository contract with IMG and its obligations as a payor bank under the California Commercial Code.

**Third**, as with Plaintiffs' fraud-based claims, Plaintiffs do not identify any false representations or plead fraud with particularity as to any misrepresentations made to them. As stated above, Plaintiffs failed to establish that Plaintiffs' particular investments were procured by false pretenses, therefore violating California Penal Code section 496.

**Fourth**, to the extent that Plaintiffs claim that their funds were used to repay IMG's Loans to CB&T, CB&T could not have received stolen property belonging to Mr. and Mrs. Evans, given

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZB, N.A.'S MOTION TO DISMISS ACTION

Case No. 2:17-cv-01123-WBS-DB

1   that they did not invest money in IMG until January 21, 2014, approximately three years <u>after</u>

2   IMG repaid the Loans to CB&T on February 14, 2011.  (Compl., ¶¶ 7, 112.)

3   **Fifth**, to the extent that Plaintiffs claim that their funds were used to repay IMG's Loans to

4   CB&T, Plaintiffs do not plead specific facts establishing that the specific funds Mr. Treadaway

5   invested in IMG from 2007 to 2014 were used to repay IMG's Loans with CB&T as alleged in the

6   Complaint.  Without establishing this critical fact, Plaintiffs cannot establish that CB&T received

7   property belonging to Plaintiffs, which is a critical element of their claims.  *Varga*, 2017 U.S. Dist.

8   LEXIS at *21.

9   **Sixth**, Plaintiffs cannot establish the existence of a conspiracy to violate Penal Code

10   section 496.  Plaintiffs do not, and cannot, allege the existence of an agreement between IMG and

11   CB&T to receive or withhold stolen property in violation of California Penal Code section 496.

12   Plaintiffs do not allege that CB&T agreed with IMG or Mr. Wannakuwatte to make any

13   misrepresentation to Plaintiffs, to conceal anything from Plaintiffs, or to engage in any

14   wrongdoing against Plaintiffs.

15   **Finally**, Plaintiffs cannot establish that CB&T owed any duty to them.  *See e.g.*, *River*

16   *Colony,* 287 F. Supp. 2d at 1224 (co-conspirator must owe a duty to the plaintiff).  CB&T had no

17   obligation to supervise the Wholesale Account (or any other account in the name of IMG) and

18   owed no duty of care to Plaintiffs, who were not signatories to IMG's depository accounts, as

19   discussed above.  *Chazen*, 61 Cal. App. 4th at 537; *see* Section III.A.3.b, above.  Accordingly, the

20   Court should dismiss Plaintiffs' claims for violation of, and conspiracy to violate, California Penal

21   Code section 496.

22   **IV.   CONCLUSION**

23   For the reasons set forth above, this Court should enter an order dismissing Plaintiffs'

24   Complaint, and each claim therein, and granting other relief as is just and equitable.

25   Dated:  October 5, 2017                    BUCHALTER, A Professional Corporation

26                                             By:  *Robert S. McWhorter /s/*
                                                  ROBERT S. MCWHORTER
27                                                Attorneys for Defendant,
                                                  ZB, N.A., a national banking association, dba
28                                                California Bank & Trust