1   Robert L. Brace, State Bar No. 122240
    rlbrace@rusty.lawyer
2   1807 Santa Barbara Street
    Santa Barbara, CA 93101
3   Telephone: 805-845-8211

4   Michael P. Denver, State Bar No. 199279
    mpdenver@hbsb.com
5   HOLLISTER & BRACE
    A Professional Corporation
6   1126 Santa Barbara Street
7   Santa Barbara, CA 93102
    Telephone: 805-963-6711
8   Facsimile: 805-965-0329

    Robert A. Curtis, State Bar No. 203870
    rcurtis@foleybezek.com
    Aaron L. Arndt, State Bar No. 290748
    aarndt@foleybezek.com
    FOLEY BEZEK BEHLE & CURTIS, LLP
    15 West Carrillo Street
    Santa Barbara, CA 93101
    Telephone: 805-962-9495
    Facsimile: 805-962-0722

9   Attorneys for Plaintiffs and all others similarly situated

10

11                      UNITED STATED DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13  RONALD C. EVANS, an individual; JOAN       CASE NO.: 2:17-cv-01123-WBS-DB
    M. EVANS, an individual; DENNIS
14  TREADAWAY, an individual; an all others    PLAINTIFFS' OPPOSITION TO
    similarly situated,                        MOTION TO DISMISS;
15                                             MEMORANDUM OF POINTS &
                        Plaintiffs,            AUTHORITIES
16
17  vs.                                        Date:       November 27, 2017
                                               Time:       1:30 p.m.
18  ZB, N.A., a national banking association, dba   Judge:  Hon. William B. Shubb
    California Bank & Trust,                    Courtroom:  5, 14th Floor
19                                                          501 I Street
                        Defendant.                         Sacramento, CA 95814
20
                                               Complaint Filed:  May 26, 2017
21                                             Trial Date:       None set

22

23

24      Plaintiffs, Ronald C. Evans, Joan M. Evans, Dennis Treadaway, and all other similarly

25  situated ("Plaintiffs"), hereby submit the following Opposition to the Motion to Dismiss filed

26  by Defendant ZB, N.A., dba California Bank & Trust ("CB&T").

27  ///

28

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................................1

II.    RELEVANT FACTS SHOWING THE PONZI SCHEME AND
       CB&T's KNOWLEDGE ...................................................................................5

       A.    IMG Defrauded Plaintiffs and the Class Investors ............................................5

       B.    CB&T Knew That IMG Promised  Investors Depositing Funds
             at CB&T That Their Money Would Be Used to Buy Gloves in Asia ..............5

       C.    CB&T Discovered IMG was Defrauding Investors no later than
             October 2009 ...........................................................................................6

       D.    After CB&T Disengaged from the Lending Relationship with
             IMG it Still Accepted Funds From Defrauded Investors in Order to
             Get Repaid .................................................................................................8

III.   ARGUMENT ....................................................................................................9

       A.    None of the Plaintiffs' Claims are Barred by any Applicable Statute
             of Limitations ...........................................................................................9

             1.    Plaintiffs Aiding and Abetting Cause of Action Accrued the
                   Minute they Discovered or Should have Discovered CB&T
                   was Aiding and Abetting IMG's Fraud  ...........................................9

             2.    The Claims Against CB&T Were Reasonably Discovered on
                   May 6, 2016 ...........................................................................13

             3.    The Statute of Limitation for The Conspiracy and Aiding and
                   Abetting Claims Does Not Begin to Run Until the Last-Overt Act ....16

             4.  Plaintiffs' Claims For Securities Fraud Are Timely ....................17

       B.    Plaintiffs have Plead Viable Claims For Aiding and Abetting Fraud &
             Conspiracy to Commit Fraud....................................................................17

             1.    Plaintiffs have Pled facts supporting IMG's fraud with sufficient
                   specificity ..............................................................................17

             2.    Plaintiffs have Pled sufficient facts supporting CB&T's aiding and
                   abetting of IMG's fraud and its conspiring with IMG to defraud .......18

       C.    Plaintiffs Voluntarily Dismiss The Claim for Aiding and Abetting
             Conversion ...............................................................................................19

i

D.   Plaintiffs have Plead Viable Claims For Aiding and Abetting Breach of Fiduciary Duty .................................................................................19

E.   Plaintiffs have Plead Viable Claims For Intentional Interference With Contract ...........................................................................................19

F.   Plaintiffs Have Sufficiently Alleged Negligence ...........................................20

G.   Plaintiffs' Claims Based on P.C. 496 Are Viable...........................................20

IV.   CONCLUSION.........................................................................................................21

OPPOSITION TO MOTION TO DISMISS ACTION                                    Case No. 2:17-cv-01123-WBS-DB

## TABLE OF CONTENTS

*Federal Cases*

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*
145 F. sup. 3d 1000 (S.D. Cal. 2015) ................................................................. 9-10

*Neilson v. Union Bank of California, NA*
290 F.Supp.2d 1101 (C.D. 2003) ........................................................................3, 18

*California Cases*

*Aaroe v. First American Title Insurance*
222 Cal.App.3d 124 (1990) ......................................................................................4

*Alexander v. Exxon Mobil,*
219 Cal.App.4th 1236 (2013) ..............................................................................9, 14

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
7 Cal.4th 503 (1994) ..............................................................................................19

*Bell v. Bayly Bros., Inc.*
53 Cal.App.2d 149 (1942) ......................................................................................12

*Bell v. Feibush*
212 Cal.App.4th 1041 (2013) ................................................................................21

*Bernson v. Browning-Ferris Industries*
7 Cal.4th 926 (1994) ..............................................................................................12

*Broberg v. The Guardian Life Ins. Co. of America*
171 Cal.App.4th 912, 921 (2009) ..........................................................................14

*Calcor Space Facility, Inc. v. Sup. Ct. (Thiem Industries, Inc.)*
53 Cal. App. 4th 216 ..............................................................................................11

*Calvert v. County of Yuba*
145 Cal.App.4th 613 (2006) ..................................................................................16

*Casey v. U.S. Bank, N.A*
127 Cal.App.4th 1138 (2005) ..............................................................................3, 18

*Czajkowski v. Haskell & White, LLP*
208 Cal.App.4th 166 (2008) ..................................................................................13

*Fox v. Ethicon Endo-Surgery, Inc.*
35 Cal.4th at 797 (2005) ......................................................................................10, 14

*Jolly v. Eli Lilly & Co.*
44 Cal.3d 1103 ...................................................................................................10

*Livett v. F.C. Financial Associates*
124 Cal.App.3d 413 (1981) ..............................................................................16

*Norgart v. Upjohn Co.*
21 Cal.4th 383 (1999) .......................................................................................14

*People v. Crosby*
58 Cal.2d 713 (1962) ........................................................................................16

*Stalberg v. Western Title Ins. Co.*
 230 Cal.App.3d 1223 (1991) ....................................................................14, 15

*Vaca v. Wachovia Mortgage Corp*
198 Cal.App.4th 737 (2011) .................................................................11, 13, 16

*Weirum v. R.K.O. General, Inc.*
15 Cal.3d 40 (1975) ..........................................................................................20

*Wolf v. Superior Court*
107 Cal.App.4th 25 (2003) ...............................................................................19

*Wyatt v. Union Mortgage Company*
24 Cal.3d 773 (1979) ....................................................................................2, 16

**_Codes & Statutes_**

11 U.S.C. §108(c) .............................................................................................11

California Civil Code §1598 .............................................................................15

California Civil Code §1698 .............................................................................15

California Code of Civil Procedure §338(d) ............................................4, 9, 11

California Code of Civil Procedure §356 .........................................................11

California Corporation Code §25506 ...............................................................17

California Corporation Code §25506(b) ..........................................................17

Restatement of the Law, Torts, Section 876 ..............................................3, 14

**_Rules_**

Federal Rules of Civil Procedure §9(b) .............................................................4

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

CB&T made over $2.5 million by loaning $24 million to International Manufacturing Group, Inc. ("IMG") and providing banking services to IMG which was operating a Ponzi scheme at the direction of its stockholder and officer Deepal Wannakuwatte ("Wannakuwatte").

IMG defrauded the Plaintiffs and other investors out of over $100 million and filed for bankruptcy on May 30, 2014 in the Eastern District of California, Case No. 14-25820-D-11, Judge Bardwil presiding.  Wannakuwatte also filed for bankruptcy on May 30, 2014 and he is currently incarcerated for his crimes. Plaintiffs filed the civil complaint in this court against CB&T for aiding and abetting the torts of IMG on May 26, 2017, within three years from the date IMG filed for bankruptcy.

IMG solicited investors, such as Plaintiffs, to invest money with IMG for the purpose of buying latex surgical gloves and other medical supplies from Asian manufacturers for re-sale by IMG in the United States.   The IMG business was fraudulent because IMG never purchased and imported the surgical gloves or medical supplies from Asian manufacturers or any manufacturer.  Instead, IMG simply took investors' money and transferred stolen funds to, among others, Wannakuwatte, CB&T and back to earlier investors as lulling payments.

No later than October 2009, CB&T discovered that IMG was a Ponzi scheme because its loans to IMG were not being repaid. The IMG default required CB&T to resort to its security whereby CB&T learned the security issued in its favor was procured by the fraud of IMG.  After this discovery, CB&T stopped any and all additional secured lending to IMG. The bank decided, however, to maintain its depositor relationship with IMG. The only business purpose to maintain any relationship with a known fraudster would be to recoup the millions CB&T had previously loaned to IMG. CB&T did recover this money based on its plan and agreement with IMG which triggers the liability in this case. CB&T's efforts to keep the money confirms the plan and CB&T's motive to enter into it.

///

1

1    From October 2009 to early 2014, CB&T knowingly assisted in the perpetuation of the

2   IMG Ponzi scheme by accepting the deposit of money stolen from Plaintiffs into IMG's

3   accounts at CB&T and then dispersing that same stolen money to, among others, itself and

4   Wannakuwatte. After the October 2009 discovery of the fraud, CB&T paid itself over $11

5   million in stolen funds out of IMG's accounts to recoup the unpaid loans it had previously

6   made to IMG and make its $2.5 million profit on the scheme. Currently, CB&T is a net winner

7   in the relationship with IMG and the Plaintiffs are net losers.

8    CB&T's active, knowing and ongoing participation in the IMG conspiracy did not end

9   on the May 30, 2014 bankruptcy of IMG. On May 6, 2016, the Trustee for IMG ("McFarland')

10   filed an adversary action against CB&T seeking to recover, for all creditors of IMG, the $11

11   plus million paid to CB&T by IMG after CB&T had knowledge of the scheme as set out above.

12   See Exhibit A to Plaintiffs' Request for Judicial Notice ("RFJN").

13    On August 4, 2016, CB&T filed a motion to dismiss McFarland's fraudulent

14   conveyance case claiming that the bank gets to keep the stolen money by enforcing (instead of

15   repudiating) its agreements with IMG. CB&T claims it has valid and binding agreements with

16   IMG which converted the victims investment proceeds into secured collateral as soon as their

17   money was deposited into IMG's accounts at CB&T. Plaintiffs allege these facts in paragraph 3

18   of the Complaint ("C.¶3"). Plaintiffs submit CB&T's motion to dismiss McFarland's complaint

19   as Exhibit B to Plaintiffs' RFJN, as evidence that CB&T has not repudiated IMG's fraud or

20   renounced its participation in it. To the contrary, CB&T is still committing acts intended to

21   retain the fruits of the fraud derived from its substantial assistance in accord with its

22   agreements with IMG.

23    As a technical bankruptcy matter concerning the term "transfer", CB&T's argument

24   may work against IMG, which was CB&T's co-conspirator. But against innocent investors,

25   CB&T's current position provides unequivocal proof of the motive to retain IMG as a depositor

26   after October 2009. CB&T's motive was to get repaid IMG's outstanding debt with hoped for

27   impunity. CB&T's motion to dismiss McFarland's complaint is one last act in furtherance of

28   the conspiracy which tolls the start of the applicable 3 year statute of limitations to today. See

2

1  *Wyatt v. Union Mortgage Company* 24 Cal.3d 773 (1979) where the fraud statute of limitations

2  was extended by an affirmative act of the defendant in furtherance of the conspiracy which

3  took place just weeks before the start of the actual trial.

4      CB&T seeks to dismiss Plaintiffs' Complaint, contending primarily that: (1) it did not

5  owe any duty to Plaintiffs because they were not customers of CB&T; (2) Plaintiffs' claims are

6  time-barred; and (3) Plaintiffs have not alleged sufficient facts supporting the claims alleged.

7  These arguments should fail against the innocent investors.

8      First, Plaintiffs specifically and repeatedly pled that a bank owes no duty to police a

9  depositor for the benefit of non-depositors (C.¶ ¶ 5 and 90). There is no dispute on this

10  reasonable and necessary rule of commercial law. However, CB&T ignores the rule's well

11  recognized exception. When a bank discovers that a depositor is defrauding non-depositors

12  using the bank to facilitate the crime, the bank must terminate the depository relationship. The

13  bank does not have to warn the non-depositors. The bank owes no duty to the non-depositors to

14  notify the police or banking authorities.  Once CB&T discovered that IMG was a Ponzi scheme

15  its only obligation to society was to terminate the depository relationship with IMG – which it

16  did not do for the obvious reason that it wanted its money back.

17      The law is clear that after a bank discovers a client is committing fraud against non-

18  depositors using the bank to facilitate the crime, ordinary banking activities like receiving and

19  dispersing stolen money through the bank triggers civil liability for aiding and abetting the

20  intentional torts of IMG. *Casey v. U.S. Bank, N.A.* 127 Cal.App.4th 1138 (2005)*; Neilson v.*

21  *Union Bank of California, NA,* 290 F.Supp.2d 1101 (C.D. 2003); and Restatement of the Law,

22  Torts, section 876.

23      Second, CB&T contends that Plaintiffs' complaint filed on May 26, 2017 is untimely

24  by eighteen days. According to CB&T, Wannakuwatte (IMG's owner and agent) pled guilty to

25  wire fraud on May 8, 2014 so Plaintiffs must have read the terms of the federal court plea

26  agreement and thereby concluded and "discovered" on May 8, 2014 that CB&T had aided and

27  abetted IMG's fraud.  The argument assumes unrealistic facts which are directly controverted

28  by the allegations in the Complaint – the Plea Agreement does not implicate CB&T and

3

1  Plaintiffs' allege they discovered CB&T's role as an aider and abettor in the IMG Ponzi

2  scheme when McFarland filed her adversary complaint against CB&T on May 6, 2016 (C. ¶

3  15).

4        Plaintiffs filed their complaint against CB&T one year and 20 days after their discovery

5  which is timely on the 2 year and 3 year statutes of limitations applicable to the causes of

6  action asserted by Plaintiffs. Cal. Code Civ. Proc. section 338(d) specifically states that the

7  causes of action predicated on fraud against CB&T are "not deemed to have accrued until

8  discovery, by the aggrieved party, of facts constituting the fraud."

9        CB&T contends further that Plaintiffs should have discovered CB&T's role in the IMG

10  Ponzi scheme at some undefined moment in time between May 8, 2014 and May 6, 2016.

11  Because Plaintiffs date of discovery was "untimely," CB&T argues that the Plaintiffs lost any

12  and all time needed to investigate who and what caused their financial injury. According to

13  CB&T, the Plaintiffs' "imputed" discovery date relates back to May 8, 2014 as the start date

14  for the running of the statute of limitations against CB&T. In short, CB&T claims the Plaintiffs

15  could have sued CB&T on May 8, 2014 without knowing any facts about the role played by

16  CB&T. This is not the law. See *Aaroe v. First American Title Insurance* 222 Cal.App.3d 124

17  (1990); Cal. Code Civ. Proc. section 338(d); *Bell v. Bayly Bros., Inc.* 53 Cal.App.2d 149

18  (1942).

19        CB&T claims that by May 8, 2017 the Plaintiffs could have sued Wannakuwatte and

20  IMG for fraud with Doe allegations to toll the statute against CB&T. This argument fails to

21  consider the automatic stay imposed on such hypothetical litigation when these two criminals

22  filed for bankruptcy on May 30, 2014. CB&T also contends that Plaintiffs could have worked

23  harder within the IMG bankruptcy proceeding to ferret out the facts about CB&T's relationship

24  with IMG. This argument concedes that Plaintiffs have satisfied the 3 year statute of limitations

25  because they filed before the 3 year anniversary of IMG's petition date which started the IMG

26  bankruptcy proceeding.

27        Third and last, as set out below the Plaintiffs have alleged more than enough facts to

28  satisfy FRCP 9(b) and to support the claims alleged in the Complaint. CB&T was loaning large

4

1   sums of money to IMG secured by letters of credit issued by other banks naming CB&T as the

2   beneficiary. In October of 2009, CB&T discovered that IMG was a Ponzi scheme. CB&T

3   stopped making the secured loans because it knew it was the beneficiary of security obtained

4   by fraud. But, as Plaintiffs alleged:

> "Instead of terminating the banking relationship and taking an underwriting loss
> on the debt owed to CB&T by IMG, CB&T conspired with IMG, and
> substantially assisted IMG, taking affirmative actions to ensure that the scheme to
> lull additional investors based on the fraud survived long enough for CB&T to be
> repaid its principal, and to make over $2.5 million in profit." (C. ¶ 2)

## II.   RELEVANT FACTS SHOWING THE PONZI AND CB&T's KNOWLEDGE

### A.   IMG Defrauded Plaintiffs and the Class of Investors

Plaintiffs contracted with IMG and have a fraud case against IMG. IMG lied about the

use of the loan proceeds and it never intended to legally perform the promise to repay contained

in each promissory note issued to Plaintiffs. IMG is the primary tortfeasor. IMG's business

allegedly consisted of the importation of latex surgical gloves from Asia for domestic re-sale to

IMG's customers, primarily the U.S. Department of Veterans Affairs (the "VA"). (C.¶¶17 and

22). IMG said it would use Plaintiffs' money to fund its overseas purchases of surgical gloves.

The money to re-pay Plaintiffs would come from IMG re-selling the gloves in the U.S. to the

VA (C.¶20). However, investor funds were not used to purchase latex gloves. There were no

latex gloves. (C.¶21). Investors were repaid with new investors' funds because IMG had no

domestic sales of gloves. Investor funds were used to fuel a Ponzi scheme. (C.¶21).

### B.   CB&T Knew That IMG Promised  Investors Depositing Funds at CB&T That Their Money Would Be Used to Buy Gloves in Asia

CB&T had a close business-banking relationship with IMG. (C.¶24). IMG had dozens

of accounts, lines of credit and loans with CB&T. (C.¶24). CB&T loaned over $20 million to

IMG. (C.¶116) In order to protect the money CB&T loaned to IMG, CB&T investigated: (i)

IMG's use of the loan proceeds; (ii) IMG's ability to repay the loans; and (iii) the source of funds

IMG would use to repay CB&T the money. (C.¶¶25, 27, 56 & 64). As a consequence, CB&T

was familiar with IMG's business. CB&T knew that all the investors in IMG believed they were

1   financing purchases of overseas glove inventory for domestic re-sale. (C.¶¶ 24, 25, 26 & 102).

2   CB&T participated with IMG in the solicitation of at least two clients of the bank to invest with

3   IMG. Based on that transaction, CB&T knew what facts Plaintiffs were being told by IMG prior

4   to the deposit of their money in IMG accounts at CB&T (C.¶¶103-104).

5          CB&T also knew that IMG had investors in IMG (like Treadaway) obtain standby letters

6   of credit ("SLOCs") from their banks in favor of CB&T. CB&T would loan money to IMG

7   secured by the SLOC. The SLOC would be issued by an investor's bank in favor of CB&T. The

8   investor in IMG would pledge his or her assets on deposit with the issuing bank as collateral for

9   the issuance of the SLOC in favor of CB&T. All of the documents and the intent of the

10  transactions was to use the money to facilitate IMG's purchase of wholesale glove shipments

11  overseas for domestic re-sale.  (C.¶¶23, 28, 105 & 106).  The source of the loan proceeds from

12  CB&T had to go to purchase latex gloves in Asia, but no latex gloves in Asia were ever

13  purchased. (C.¶21)  IMG was a total fraud.

14         CB&T knew that IMG was convincing investors to obtain SLOCs to facilitate overseas

15  purchases because the SLOCs were issued in favor of CB&T.  (C.¶¶33, 105-112).  CB&T

16  insisted upon the SLOCs so it knew about the business purpose for the SLOCs. (C.¶¶42-44).

17  CB&T was provided investor SLOC-related documentation, which CB&T required to ensure it

18  was protected from risk, and which left no doubt that CB&T knew and understood the intent of

19  the investors (both cash and SLOC) was to fund IMG's import business.  (C.¶¶28, 32, 42, 51).

20  **C.    CB&T Discovered IMG was Defrauding Investors no later than October**
    **2009**
21

22         Once the SLOCs in favor of CB&T were in place, including the largest for $9 million,

23  CB&T loaned large amounts of money to IMG.  (C.¶¶45-50).  To ensure CB&T would be

24  repaid,   IMG set up an account for CB&T's benefit, and executed documents whereby money

25  derived from IMG's domestic re-sales were to be deposited with CB&T and CB&T could repay

26  itself directly. (C.¶74) However, the special account remained dormant demonstrating to CB&T

27  that there were no domestic re-sales.  (C.¶¶75-77).

28         Additional knowledge that IMG was a fraud came from the ballooning balances on the

6

1   lines of credit CB&T provided to IMG to buy gloves in Asia. IMG was unable to make any

2   meaningful loan repayments to CB&T because there were no domestic re-sales. (C.¶65).

3   Instead of buying and selling gloves, IMG continually requested and CB&T continually

4   advanced larger and larger loan amounts to IMG secured by the SLOCs. (C.¶¶65-66).  IMG

5   used a majority of each new larger loan to repay CB&T its prior smaller loan. (¶¶65-66).   CB&T

6   turned a blind eye to IMG's ever worsening financial condition because CB&T was protected by

7   at least 9 separate investor SLOCs issued in CB&Ts favor. (C.¶¶64, 105-112).

8           Further knowledge that IMG was a fraud is apparent in the bogus financial statements

9   CB&T possessed, which directly contradicted the IMG account activity and balances which

10   CB&T monitored.  For example, CB&T was provided an IMG income statement showing $3.5

11   million in profits from glove importation, a 10% profit margin, and no interest expense, when

12   CB&T knew there were no glove profits and IMG was paying CB&T handsomely to continually

13   borrow funds. (C.¶¶ 87-89)  Another bogus financial statement in CB&T's possession showed

14   glove sales resulting in a 17% profit margin, with $5.3 million in profits that, if real, would have

15   resulted in millions being deposited into the dormant account for CB&T to repay itself the loans

16   to IMG. (C.¶¶ 119-120)

17           In the summer of 2008, the largest SLOC in CB&T's favor (capped at $9 million) had a

18   balance of roughly $8 million and it was approaching expiration. (C.¶¶77-82).  CB&T warned

19   IMG that CB&T would not loan additional money to buy gloves unless CB&T continued to be

20   protected by SLOCs. (C.¶¶90-93).  CB&T and IMG obtained a temporary extension of the $9

21   million SLOC and CB&T continued to loan money to buy gloves. (C.¶¶94-95).

22           In the summer of 2009, CB&T knew the $9 million SLOC in favor of CB&T would not

23   be re-extended and it would expire making CB&T unsecured on $9 million loaned to IMG to buy

24   gloves. (C.¶¶96-97) CB&T needed immediate repayment because it knew IMG was not

25   creditworthy. (C.¶96).  To get repaid, CB&T agreed with IMG to use bogus "sales invoices"

26   fabricated by IMG to draw down on the $9 million SLOC in CB&T's favor. (C.¶98)  CB&T

27   was repaid the $9 million it loaned to IMG by using facially bogus "sales invoices" for gloves

28   CB&T knew did not exist. (C.¶99)

OPPOSITION TO MOTION TO DISMISS ACTION                    Case No. 2:17-cv-01123-WBS-DB

1    CB&T's knowledge that IMG was operating a fraud can be seen in the communications

2    exchanged between CB&T and IMG while CB&T was monitoring IMG's accounts. (C.¶¶67-

3    70).  CB&T's communications demonstrated CB&T's knowledge that IMG was not making

4    money from VA contracts to buy gloves as investors were told. (C.¶¶70 & 83).  IMG repeatedly

5    triggered non-sufficient fund issues which the bank covered to assist IMG.  (C.¶25).  CB&T

6    understood that IMG had to repeatedly scrape together small amounts of money to supplement

7    the CB&T advances to make partial payments back to CB&T.  (C.¶¶70 & 83).

8        CB&T's monitoring of IMGs accounts revealed to CB&T that neither the cash investors'

9    deposits, nor CB&T's loan advances were being sent overseas to purchase latex gloves, or

10   anything else. (C.¶¶87-89). CB&T knew that there were no overseas purchases, and there were

11   no domestic re-sales to the VA, or anyone else.  (C. ¶¶77 & 99) CB&T knew this because IMG's

12   accounts were at CB&T. (C.¶¶106-112).

13       CB&T's diligence and monitoring of IMG accounts gave the bank actual knowledge that

14   IMG was insolvent, was taking millions of dollars from investors to purportedly facilitate its

15   "lucrative import contract with the VA," and was not actually importing anything, selling

16   anything, or otherwise generating profits.  This knowledge is more than indicative of CB&T's

17   knowledge that IMG was a fraud.  (C.¶¶ 81 & 84-89).  In October 2009, CB&T informed IMG it

18   would not loan it any more money- "We are providing this notice of our intent to disengage from

19   the Lending relationship..." (C. ¶117).

20   **D.    After CB&T Disengaged from the Lending Relationship with IMG it Still
21          Accepted Funds From Defrauded Investors in Order to Get Repaid**

22       After CB&T recovered the $9 million with bogus invoices, it informed IMG that it would

23   no longer lend money but it would continue to accept deposits from defrauded investors.

24   (C.¶123). CB&T maintained the depositor relationship with IMG after October 2009 so it could

25   recover the additional $11 million that IMG still owed it (C.¶124) and claim in bankruptcy that

26   the payments made by IMG to CB&T were not "transfers" because CB&T had a security interest

27   in all funds deposited by IMG at CB&T which were used to pay CB&T. (RFJN, Exh. B).  The

28   motive for CB&T's substantial assistance to IMG after October 2009 was to get repaid all the

8

1   money it had loaned IMG and defeat the trustee's claw back claim which CB&T knew would be

2   made when the Ponzi scheme collapsed. (C.¶124).

3   **III.   ARGUMENT**

4        **A.   None of the Plaintiffs' Claims are Barred by any Applicable Statute of
5             Limitations.**

6             **1.   Plaintiffs Aiding and Abetting Cause of Action Accrued the Minute
                  they Discovered or Should have Discovered CB&T was Aiding and
7                 Abetting IMG's Fraud**

8        Cal. Code Civ. Proc. section 338(d) specifically states that Plaintiffs' causes of action

9   predicated on IMG's fraud against CB&T are "not deemed to have accrued until discovery, by

10  the aggrieved party, of facts constituting the fraud." Plaintiffs filed their complaint against

11  CB&T on May 26, 2017, one year and 20 days after their May 6, 2016 discovery of CB&T's

12  role in the IMG Ponzi scheme; which is timely on the 3 year statute of limitations.

13       CB&T contends that Plaintiffs should have discovered CB&T's role in the IMG Ponzi

14  scheme on May 8, 2014 when Wannakuwatte admitted his guilt in a Plea Agreement filed in

15  court which said he used IMG to help commit his fraud. The existence of the Plea Agreement,

16  which does not mention or refer to CB&T, does not impute knowledge of facts contained in it

17  to Plaintiffs on the date it was filed.

18       First, Plaintiffs are not deemed to have notice of that document for purposes of the

19  discovery rule until they have actual knowledge of information, which then triggers the duty to

20  inquire.  As part of its discovery rule analysis, CB&T skips an important step. "The initial step

21  [of determining whether a claim has accrued under the discovery rule] focuses on whether the

22  plaintiff possessed information that would cause a reasonable person to inquire into the cause

23  of his injuries." *Alexander v. Exxon Mobil*, 219 Cal. App. 4th 1236, 1251 (2013).  Put

24  differently, Plaintiffs are not charged with inquiry notice until they first obtain knowledge that

25  triggers the duty of inquiry. *Id.*, at 1251 ("The limitations period begins once the plaintiff has

26  notice or information of circumstances to put a reasonable person on inquiry"); see

27  also *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. sup. 3d 1000 (S.D. Cal. 2015) ("the

28

OPPOSITION TO MOTION TO DISMISS ACTION                    Case No. 2:17-cv-01123-WBS-DB

1   statute of limitation was not triggered "under California's approach to the delayed discovery

2   rule, it is only once a plaintiff possesses information that would cause a reasonable person to

3   inquire into the cause of their injuries that they are under an obligation to investigate the

4   pertinent facts …").

5         But, even if Plaintiffs were aware of the plea agreement by May 8, 2014, such plea

6   agreement did not put Plaintiffs on reasonable notice that they had in fact been injured—i.e.,

7   that they will not recoup any or some of their investment.  Knowledge of the injury could not

8   have arisen at any time before the bankruptcy action was filed.  And, because no information of

9   Plaintiffs' injury was available to them at any time before IMG filed for bankruptcy, the statute

10  of limitation did not begin to run under the discovery rule. *Vaca v. Wachovia Mortgage Corp.*,

11  198 Cal.App.4th 737, 745 (2011) ("The time bar starts running when the plaintiff first learns of

12  actionable injury…"); *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103 (1988) ("[u]nder the discovery

13  rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that

14  her *injury* was caused by wrongdoing…").

15        Even if Plaintiffs had been suspicious prior to May 30, 2014 that an injury may

16  arise, CB&T has not shown that prior to May 30, 2014, an investigation would have brought to

17  light that Plaintiffs did in fact suffer an injury.  The statute does not begin to run until sufficient

18  facts exist where a reasonable investigation would have revealed that there is in fact an

19  injury. As explained by the California Supreme Court in *Fox v. Ethicon Endo-Surgery, Inc.*, 35

20  Cal. 4th 797 (2005):

21

22        Simply put, in order to employ the discovery rule to delay accrual of a cause of
          action, a potential plaintiff who suspects that an injury has been
23        wrongfully caused must conduct a reasonable investigation of all potential causes
          of that injury. If such an investigation would have disclosed a factual basis for a
24        cause of action, the statute of limitations begins to run on that cause of
          action **when the investigation would have brought such information to**
25        **light**. *Id.* at 808-809 (emphasis added).[1]

26

27  _____

28  [1] CB&T suggests that information about CB&T could have been discovered had Plaintiffs filed a
    lawsuit against IMG, naming Doe defendants.  That is not what is contemplated as part of a

10

OPPOSITION TO MOTION TO DISMISS ACTION          Case No. 2:17-cv-01123-WBS-DB

1      CB&T claims that by May 8, 2017 the Plaintiffs could have sued Wannakuwatte and

2 IMG for fraud and used Doe allegations to toll the statute against CB&T. This argument fails for

3 at least two reasons. First, after IMG's bankruptcy filing and up until May 2016, Plaintiffs had

4 no information to indicate that anyone, much less the apparently reputable CB&T had aided and

5 abetted IMG's fraud. CB&T's suggestion that Plaintiffs should have filed an action and initiated

6 discovery, without any indication that a concealed aider and abettor may be in hiding, runs afoul

7 of established paw prohibiting "fishing expeditions", especially when non-parties (in this case

8 non-debtors) are the targets of discovery. *Calcor Space Facility, Inc. v. Sup. Ct.* (*Thiem*

9 *Industries, Inc.*), 53 Cal. App. 4th 216, 225. Second, because of the automatic stay imposed

10 when these two criminals filed for bankruptcy on May 30, 2014. After May 30, 2014 the

11 Plaintiffs were enjoined from suing Wannakuwatte or IMG. See 11 U.S.C. Section 362(d).

12      The law does not allow creditors to sue debtors during the automatic stay and the law

13 does not require, or even encourage creditors, who have no reason to believe that they may have

14 been harmed by a non-debtor tortfeasor, especially one that is concealing itself, to seek to set

15 aside the automatic stay to initiate random acts of discovery. *In re Cowen*, 207 B.R. 207, 210

16 (1997).

17      Bankruptcy law extended the Plaintiffs statutes of limitations against Wannakuwatte and

18 IMG while the stays remained in effect and for 30 days after notice of termination or expiration

19 of the stays. 11 U.S.C. section 108(c). Code of Civil Procedure Section 356 also extended the

20 Plaintiffs' applicable limitation periods for the same time period the two bankruptcy stays were

21 in effect. In short, Plaintiffs were legally inhibited from commencing civil litigation against IMG

22 for fraud, including a Doe allegation in the hypothetical complaint, conducting discovery to

23 ferret out CB&T's involvement as an aider and abettor, and amending the complaint to substitute

24 CB&T as one of the Doe defendants. Plaintiffs were procedurally proscribed to participate

25 exclusively in the IMG bankruptcy proceeding which commenced on May 30, 2014. Plaintiffs

26

27

28 reasonable investigation. The law does not require—and instead precludes—Plaintiffs from
filing actions solely to engage on fishing expeditions.

OPPOSITION TO MOTION TO DISMISS ACTION      Case No. 2:17-cv-01123-WBS-DB

1    discovered CB&T's role as an aider and abettor on May 6, 2016 and filed suit within the time

2    frame set out in Cal. Code Civ. Proc. section 338(d).

3         In determining whether the Plaintiffs did exercise reasonable diligence, the court must

4    consider whether the filing of a timely Doe complaint would, as a practical matter, have

5    facilitated the discovery of CB&T's identity and the facts to support a cause of action for

6    aiding and abetting IMG's fraud. *Bernson v. Browning-Ferris Industries* 7 Cal.4th 926, 936-

7    937 (1994). Here, Plaintiffs were precluded by the bankruptcy stay from suing IMG.

8         Moreover, the Court will recall that CB&T moved to refer this action to the IMG

9    bankruptcy Court before Judge Robert S. Bardwil. But, in light of the fact that Judge Bardwil

10   remanded an action to the Sacramento Superior Court, finding that the bankruptcy court did not

11   have jurisdiction over that case (RFJN Exh. D) and that the exact analysis would have applied

12   to Plaintiffs' claims alleged herein, CB&T withdrew its motion to refer to the bankruptcy court.

13   See Docket Entry Nos. 15 and 18 in the case at hand. Through its withdrawal, CB&T

14   acknowledged that the bankruptcy court lacked jurisdiction to hear Plaintiffs' claims against

15   CB&T. Yet, CB&T now contends that the very same claims should have been pursued against

16   CB&T in bankruptcy Court through the vehicle of pleading doe defendants. If the bankruptcy

17   court lacked jurisdiction over Plaintiffs' claims against CB&T, the bankruptcy court also

18   lacked jurisdiction over the same claims pleaded against doe defendants.

19        CB&T's further contention, that the Plaintiffs' "imputed" discovery date relates back to

20   May 8, 2014 which serves as the start date for the running of the statute of limitations against

21   CB&T, is inconsistent with the law. A party having knowledge of facts which put him on

22   enquiry notice must pursue an enquiry. The Plaintiffs will be charged with having discovered

23   that CB&T was aiding and abetting IMG's fraud as of the date and time when they would have

24   discovered it with reasonable diligence. *Bell v. Bayly Bros., Inc.* 53 Ca. App. 2d 149, 157

25   (1942). There is no relation back to the date the Plaintiffs learned of the facts putting them on

26   enquiry notice. The statute of limitations starts to run on the date they should have discovered

27   that CB&T was aiding and abetting IMG's fraud based on their initial enquiry notice. The

28   Plaintiffs get time to investigate.

1    CB&T's  contention that Plaintiffs could have worked harder within the IMG

2    bankruptcy proceeding to ferret out the facts about CB&T's relationship with IMG concedes

3    that Plaintiffs satisfied the 3 year statute of limitations because they filed before the 3 year

4    anniversary of IMG's petition date which started the IMG bankruptcy proceeding. Even if

5    Plaintiffs had been more diligent inside IMG's bankruptcy proceeding, any date of discovery

6    between May 30, 2014 and May 6, 2016 would have been satisfied by the filing on May 26,

7    2017.[2]

8            **2.**        **The Claims Against CB&T Were Reasonably Discovered on May 6, 2016.**

9    Plaintiffs have alleged the time and manner of their discovery and the inability to have

10   made an earlier discovery despite reasonable diligence. *Czajkowski v. Haskell & White, LLP,*

11   208 Cal.App.4th 166, 175 (2008).  Plaintiffs alleged the Bankruptcy Trustee of IMG had

12   access to the IMG banking records and only disclosed the facts to Plaintiffs about CB&T's

13   participation in the IMG Ponzi scheme on May 6, 2016; and not sooner. (C. ¶ 15).

14   CB&T submits evidence from outside of the scope of the pleadings to argue it was

15   reasonable for Plaintiffs to know of their aiding and abetting claims against CB&T by May 8,

16   2014.  Even if CB&T were allowed to point to facts outside of the Complaint, when a plaintiff

17   reasonably should have discovered facts for purposes of the accrual of a cause of action or

18   application of the delayed discovery rule is generally a question of fact.  The date of discovery

19   can be properly decided as a matter of law CB&T submits evidence from outside of the scope

20   of the pleadings to argue it was reasonable for Plaintiffs to know of their aiding and abetting

21   claims against CB&T by May 8, 2014.  Even if CB&T were allowed to point to facts outside of

22   the Complaint, when a plaintiff reasonably should have discovered facts for purposes of the

23

24

25       [2] Nonetheless, the discovery rule only comes into effect after the claim has accrued. As

26   CB&T admits, "'accrual' of a claim [occurs] when the cause of action is complete with all of
     its elements." MTD 4:17-18; see also *Vaca v. Wachovia Mortgage Corp.,* 198 Cal.App.4th

27   737, 743 (2011).  Here, Plaintiffs were not injured until the filing of the bankruptcy on May 30,
     2014. See Complaint, ¶¶4, 150, 155, and 160.  Thus, no claim could have accrued before then.

28

OPPOSITION TO MOTION TO DISMISS ACTION         Case No. 2:17-cv-01123-WBS-DB

1  accrual of a cause of action or application of the delayed discovery rule is generally a question

2  of fact. *Broberg v. The Guardian Life Ins. Co. of America,* 171 Cal.App.4th 912, 921 (2009).

3      The date of discovery can be properly decided as a matter of law only if the

4  allegations in the complaint and facts properly subject to judicial notice can support only one

5  reasonable conclusion about the timing of discovery. See *Alexander v. Exxon Mobil,* 219

6  Cal.App.4th 1236, 1250-1252, 1260 (2013) where the appellate court refused to uphold a

7  decision sustaining a demurrer where defendants argued that the plaintiffs' factual allegations,

8  together with additional judicially noticed facts, established that a reasonable person would

9  have suspected causation and wrongdoing much earlier. Here, today, it cannot be said that

10  Plaintiffs must have known by May 8, 2014 that CB&T aided and abetted IMG in stealing their

11  money.

12      Even if Plaintiffs had sufficient notice on May 8, 2014 that IMG committed fraud

13  against them, insufficient facts existed to support the conclusion that some third party bank

14  substantially assisted IMG's fraud with knowledge of the fraud.  While it is true that one need

15  not be aware of the defendant's identity in order for the statute to begin to run under the

16  discovery rule, the Plaintiffs still need to have access to information disclosing the factual basis

17  for the independent cause of action of aiding and abetting IMG's fraud.  Aiding and abetting

18  requires proof of substantial assistance with knowledge of the primary wrong. Restatement of

19  the Law, Torts, section 876. Aiding and abetting is its own standalone tort.

20      Prior to May 6, 2016, Plaintiffs had no reasonable access to information sufficient to

21  put them on notice that a third party bank had knowledge of IMG's fraud, and with such

22  knowledge, substantially assisted IMG's fraud. See *Norgart v. Upjohn Co.,*  21 Cal.4th 383,

23  398 (1999) ("a cause of action accrues when a plaintiff has reason to discover "a factual basis"

24  for the claim");  *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal.4th at 797, 814-815 (2005)

25  (concluding that when a plaintiff may only reasonably suspect one type of wrongdoing, the

26  statute of limitations does not begin to run on a different cause of action based on a different

27  wrongdoing, the facts as to which the plaintiff may not yet be aware). CB&T's own case,

28  *Stalberg v. Western Title Ins. Co.,* 230 Cal.App.3d 1223 (1991), is in accord. *Id.* at 1230

14

1    (finding that a duty to inquire commenced *after* plaintiffs' lawyers discovered a wild deed and

2    a notice of bankruptcy).[3]

3         Plaintiffs also allege that CB&T has concealed its role as an aider and abettor in IMG's

4    Ponzi scheme. (C.¶¶ 15-16). CB&T states that it has never made an affirmative

5    misrepresentation or any representation to prevent Plaintiffs from identifying it as a potential

6    defendant. Plaintiffs disagree.

7         CB&T made $2.5 million from IMG and filed no claim in the IMG bankruptcy. CB&T

8    filed several early claims in June of 2014 in the Wannakuwatte bankruptcy to recover money

9    loaned directly to Wannakuwatte. See Exhibit C to RFJN. CB&T affirmatively separates

10   Wannakuwatte from IMG when it benefits itself, but combines the two as alter egos of each

11   other when arguing that Wannakuwatte' s personal plea agreement is a dispositive notice from

12   IMG to investors who invested only in IMG. Plaintiffs did not make alter ego allegations.

13   CB&T contracted with IMG as if it were a legal entity depositing its own money with CB&T.

14   CB&T should be estopped to deny that IMG was a real entity or admit it always knew and

15   treated Wannakuwatte and IMG as the same for all purposes, including bankruptcy. The only

16   dispositive notice received from IMG by Plaintiffs was its notice of bankruptcy on May 30,

17   2014 which informed them that they had been injured by IMG.

18        As Plaintiffs alleged in paragraph 3 of the Complaint, CB&T contends today that it

19   obtained perfected security interests in the money stolen by IMG from the Plaintiffs. CB&T

20   claims it has valid and legally enforceable loan agreements it entered into with IMG. These

21   representations were made by CB&T on August 8, 2016 as set out in Exhibit B to Plaintiffs'

22   RFJN. Contracts between co-conspirators intended to facilitate the ongoing success of a

23   criminal enterprise are not enforceable as a matter of law. Cal. Civ. Code §§ 1598 & 1698.

24   CB&T's efforts to enforce the loan agreements against IMG's bankruptcy trustee are

25   —————————————————

26   [3] CB&T cites to *Stalberg* for the proposition that knowledge may be "imputed" to a plaintiff.
     *Stalberg* found that an attorney's discovery of wild deeds imputed knowledge of the dispute to
27   the plaintiffs. Here, CB&T has not pointed to any evidence in Plaintiffs' attorneys' possession
     that should have been imputed to Plaintiffs.
28

OPPOSITION TO MOTION TO DISMISS ACTION          Case No. 2:17-cv-01123-WBS-DB

1    representations by CB&T to the court and the public that are intended to conceal CB&T's role

2    in the scheme thereby extending the limitation period.

3         CB&T cannot have it both ways at the same time. CB&T cannot represent that it has

4    "legally enforceable security interests" in Plaintiffs money deposited at IMG and in the same

5    breath argue that Plaintiffs should have discovered CB&T's role as a conspirator and aider and

6    abettor of IMG's fraud on Plaintiffs. The two positions are irreconcilable and an estoppel is

7    warranted. *Vaca v. Wachovia Mortgage Corp* 198 Cal.App.4th 737, 745-746 (2011)

8    (equitable estoppel applies in concealment cases); *Calvert v. County of Yuba* 145 Cal.App.4th

9    613, 621 (2006) (judicial estoppel).

10

11        3.     **The Statute of Limitation for The Conspiracy and Aiding and
               Abetting Claims Does Not Begin to Run Until the Last-Overt Act.**

12        Where a conspiracy (or any secondary liability such as aiding-and-abetting) is

13   established, the period of the statute does not commence until the last "overt act" pursuant to

14   the conspiracy or scheme has been completed. *Livett v. F.C. Financial Associates* 124

15   Cal.App.3d 413, 418 (1981) citing *Wyatt v. Union Mortgage Co.* 24 Cal.3d 773 (1979).

16        The last overt act that CB&T took in furtherance IMG's Ponzi scheme was to argue

17   that the trustee cannot claw-back CB&T's loan payments and wrongful profits received from

18   IMG. (RFJN Exh. B). CB&T's claim that it holds a legally enforceable security interest in the

19   money stolen from investors has been made and is based on the historical agreement it made

20   with IMG in October 2009. The agreement was to maintain IMG's depository relationship with

21   CB&T notwithstanding CB&T's knowledge that IMG was stealing money from the Plaintiffs.

22        Plaintiffs were not injured by CB&Ts filing of RFJN Exhibit B. Plaintiffs present

23   Exhibit B as evidence of CB&T's plan to participate in the Ponzi scheme and the conspiracy

24   from which CB&T has yet to withdraw: "[a] defendant's mere failure to continue previously

25   active participation in a conspiracy…is not enough to constitute withdrawal; there must be an

26   affirmative and bona fide rejection or repudiation of the conspiracy..." *People v. Crosby*, 58

27   Cal.2d 713, 730 (1962). In order to divest itself from the conspiracy, CB&T is required to

28

OPPOSITION TO MOTION TO DISMISS ACTION                    Case No. 2:17-cv-01123-WBS-DB

1   unequivocally renounce its involvement and not fight to retain the fruits of its misconduct.

2            **4.**     **Plaintiffs' Claims For Securities Fraud Are Timely**

3        Plaintiffs' claims against CB&T are based upon CB&T and IMG's mutual "intent to

4   deceive or defraud" IMG's investors after CB&T obtained knowledge IMG was a Ponzi scheme

5   in October 2009. The applicable statute of limitations for intentional misrepresentations in the

6   sale of securities is established by Section 25506.  Section 25506 establishes a statute of

7   limitations "of five years after the act or transaction constituting the violation or the expiration of

8   two years after the discovery by the plaintiff of the facts constituting the violation, whichever

9   shall first expire." Cal. Corp. Code 25506(b).

10        Any claim against IMG was tolled by its bankruptcy. The securities claim against CB&T

11   was filed on May 26, 2017 - one year and 20 days after Plaintiffs' discovery which is timely on

12   the 2 year statutes of limitations applicable to the securities cause of action asserted by Plaintiffs.

13   Plaintiffs may recover against CB&T on all investments made by Plaintiffs with IMG five years

14   prior to May 26, 2017; from May 26, 2012 to the collapse of IMG in 2014.

15       **B.**     **Plaintiffs have Plead Viable Claims For Aiding and Abetting Fraud &**

16              **Conspiracy to Commit Fraud.**

17           **1.**     **Plaintiffs have Pled facts supporting IMG's fraud with sufficient**

18                   **specificity.**

19        Plaintiffs have set forth with specificity the who, what, where, when, and how,

20   surrounding IMG's fraud.  CB&T submitted Wannakuwatte's Plea Agreement to argue

21   Plaintiffs knew they were defrauded by IMG by May 8, 2014.  Now CB&T claims Plaintiffs

22   have not alleged sufficient facts to give CB&T adequate notice about IMG's fraud to defend

23   itself:  Plaintiffs alleged:

24       (i)      <u>knowing misrepresentation intended to induce reliance</u> - - the misrepresentations

25               by IMG to Plaintiffs that investor funds would be used to purchase inventory

26               overseas for domestic re-sale, when in reality the funds were used in a Ponzi

27               scheme. (C.¶¶7-9);

28

17

    (ii)    <u>reasonable reliance</u> - - the Plaintiffs' reliance is evidenced by their payment of money to IMG to fund purchases of inventory overseas.  (C.¶¶7-9); and

    (iii)    <u>damages</u> - - the net losses suffered by the Plaintiffs.  (C.¶¶7-9).

> **2.    Plaintiffs have Pled sufficient facts supporting CB&T's aiding and abetting of IMG's fraud and its conspiring with IMG to defraud.**

In order to sufficiently plead aiding and abetting a fraud against a bank, one must plead that the bank had actual knowledge of the fraud and provided substantial assistance to the fraudster. *Casey v. U.S. Bank, N.A.* 127 Cal.App.4th 1138, 1144-1145 (2005).  Here, Plaintiffs alleged CB&T obtained actual knowledge of IMG's fraud by October 2009 when it terminated its profitable lending relationship with IMG.  CB&T terminated its lending relationship because it knew IMG was misleading investors to invest with it based on the misrepresentation that their money would be used to purchase inventory overseas for domestic re-sale (C.¶¶45-66; 75-77 and 113).

Plaintiffs have also pled that CB&T substantially assisted IMG by, among other things, maintaining its depository relationship with IMG to receive and disburse stolen funds.  The motive to keep IMG as a depositor was to get repaid and be able to claim in IMG's bankruptcy that the bank gets to keep the stolen money.   Even "ordinary business transactions" a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. *Id.*, at 1145.

CB&T's actions continued to fuel IMG's fraud.  Had such fraud not been fueled, Plaintiffs would not have invested in the fraudulent scheme.  See e.g., *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1129 (C.D. Cal. 2003) (stating that the substantial assistance prong was satisfied and that the defendant bank was a substantial factor in causing the plaintiff's injuries when plaintiff alleged that the bank, by giving the fraudster access to large sums of money, kept the fraudulent scheme afloat).

The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the

OPPOSITION TO MOTION TO DISMISS ACTION        Case No. 2:17-cv-01123-WBS-DB

common design. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal.4th 503, 511 (1994). Plaintiffs have pled sufficient allegations that CB&T formed and operated a conspiracy with IMG. The agreement was, among other things, to keep IMG's depository accounts open and operational long enough for CB&T to get repaid. The motive for the agreement was for CB&T to get repaid and argue it gets to keep stolen money (C.¶¶123-134).

### C.    Plaintiffs Voluntarily Dismiss The Claim for Aiding and Abetting Conversion

Plaintiffs presently believe they did not have an immediate right to possession of their money because they voluntarily transferred their money to IMG based on its fraud. The aiding and abetting conversion claim should be dismissed.

### D.    Plaintiffs have Pled Viable Claims For Aiding and Abetting Breach of Fiduciary Duty

The IMG Ponzi scheme victimized a small number of investors because IMG's business model was rooted in intimacy, trust and confidence. Plaintiffs agreed to fund IMG's overseas purchases because they trusted IMG to use their funds for that purpose. (C.¶153)  The relationship of trust and confidence between IMG and the investors gave rise to a fiduciary duty. *Wolf v. Superior* Court 107 Cal.App.4th 25, 29-30 (2003). IMG breached its fiduciary duties and violated the investors' trust when it did not use investor funds as promised, but instead defrauded Plaintiffs in a scheme. Armed with actual knowledge of IMG's misconduct and the intimate relationship it had with investors (C.¶¶103-104) CB&T provided IMG with substantial assistance as alleged herein.

### E.    Plaintiffs have Pled Viable Claims For Intentional Interference With Contract

The requisite elements for a claim of intentional interference with contract, as set out in CACI 2201, and examples of facts satisfying each element include:

(i)    Knowledge of contract:  CB&T knew investors contracted to provide cash earmarked specifically for funding overseas inventory purchases for domestic re-sale, and no other purpose (C.¶¶26; 103-104);

19

1   (ii)   _Intentional disruption of contractual performance:_ CB&T accepted the deposits

2   knowing that, instead of being used to purchase overseas inventory, the money would be used in

3   a Ponzi scheme (C.¶¶123-134); and

4   (iii)   _Substantial factor is damages:_ CB&T's acceptance of investor funds was a

5   substantial factor in Plaintiffs'' net losses because, but for CB&T's acceptance, there would be

6   no net losses (C.¶¶7-9; 120-124).

7   **F.   Plaintiffs Have Sufficiently Alleged Negligence**

8   As a general matter, banks owe no duties to non-depositors.  However, after a bank

9   discovers that a depositor is defrauding non-depositors, the bank must terminate the depository

10  relationship with the defalcating depositor, or be potentially liable for aiding and abetting.

11  A reasonably prudent bank under the same or similar circumstances as the case at bar would not

12  terminate its lending relationship with IMG but maintain its depository relationship with IMG

13  for the purpose of getting repaid.  A reasonable bank would terminate any and all contracts and

14  relationships with IMG and seek to obtain repayment in parity with all of the creditors of IMG

15  with similar claims.  Maintaining a depository relationship with IMG after October 2009 created

16  a forseeable risk of harm to investors depositing their money with IMG at CB&T after October

17  2009.  There are no known cases on this specific point other than general tort law in California.

18  _Weirum v. R.K.O. General, Inc._ 15 Cal.3d 40, 46-49 (1975).  It is unreasonable for CB&T to

19  advance its financial interests by foreseeably injuring the investors.

20  **G.   Plaintiffs' Claims Based on P.C. 496 Are Viable**

21  The requisite elements of Penal Code Section 496 include:

22  (i)   receipt of stolen property while;

23  (ii)   knowing it was stolen.

24  Plaintiffs' claims under Penal Code Section 496(c) are properly supported by the facts

25  that:  (i) after October 2009, CB&T received the class members' funds, which CB&T knew

26  were stolen through the deceitful investment contracts used by IMG (C.¶¶120-124); (ii) CB&T

27  concealed, withheld, or aided in concealing or withholding the stolen funds by disbursing

28  payments to itself, to Wannakuwatte and for lulling payments to the earlier investors. (C.¶123-

20

124).  Likewise, the claim of conspiracy to violate P.C. 496 is proper as Plaintiffs have pled the agreement between IMG and CB&T to take and conceal stolen property.  Authority for the viability of this cause of action is found in *Bell v. Feibush* 212 Cal.App.4th 1041, 1044-1047(2013).

**IV.    CONCLUSION**

Based on the foregoing, Plaintiffs request the Court to deny CB&T's Motion.  To the extent the Court is inclined to grant it, in any part, leave to amend is requested.


DATED:  November 6, 2017                    HOLLISTER & BRACE

                                            By:    _*/s/ Michael P. Denver*_
                                                   MICHAEL P. DENVER
                                                   Attorneys for Plaintiffs
                                                   and all others similarly situated

OPPOSITION TO MOTION TO DISMISS ACTION                    Case No. 2:17-cv-01123-WBS-DB