1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD C. EVANS, an                NO. 2:17-cv-01123 WBS DB
     individual; JOAN M. EVANS, an
12   individual; DENNIS TREADAWAY,
     an individual; and all others
13   similarly situated,               MEMORANDUM AND ORDER RE: MOTION
                                       TO DISMISS
14                Plaintiffs,

15        v.

16   ZB, N.A., a national banking
     association, dba California
17   Bank & Trust,

18                Defendant.

19

20             Ronald C. Evans, Joan M. Evans, and Dennis Treadaway

21   (collectively "plaintiffs") initiated this action on behalf of

22   over fifty people against defendant ZB, N.A., a national banking

23   association, doing business as California Bank & Trust ("CB&T"),

24   for allegedly knowingly providing substantial assistance to a

25   fraudulent scheme initiated by International Manufacturing Group,

26   Inc. ("IMG").  Presently before the court is defendant's Motion

27   to Dismiss plaintiffs' First Amended Complaint.  (Docket No. 44).

28   I.   Relevant Allegations and Procedural Background

IMG is a California corporation allegedly created to import latex surgical gloves and related medical products manufactured in Asia for resale in the United States. (Compl. ¶ 1 (Docket No. 42).) As has since been determined, IMG was operating a Ponzi scheme directed by its Chief Executive Officer, Deepal Wannakuwatte ("Wannakuwatte"), who has pled guilty to federal fraud charges and is serving twenty years in prison. (Compl. ¶¶ 78, 85.) IMG solicited investors by telling them their money would be used to purchase latex gloves from Asian manufacturers that would then be sold to IMG's purported customers. (Compl. ¶ 1.) In exchange for the money, IMG issued promissory notes. (Compl. ¶ 91.) The investors' funds were not, however, used for the intended purpose. (Compl. ¶ 6.) Instead, the funds were deposited at CB&T and used to pay back prior investors. (Compl. ¶ 24.)

Before October 2009, CB&T made nine loans to IMG. (Compl. ¶ 95.) CB&T monitored, on a daily basis, the deposits of investor money into IMG's accounts. (Compl. ¶ 24.) At the inception of the loans, the monthly interest was to be paid out of the IMG General Account #7631 with automatic debits. (Compl. ¶ 25.) However, the automatic debit process did not work because there were insufficient funds. (Id.) IMG accrued millions of dollars in overdraft fees at CB&T. (Id.)

Despite being aware of IMG's insufficient cashflow, over the course of their lending relationship, CB&T ignored IMG's defaults and waived late charges and interest penalties, granted 20 maturity date extensions and 21 collateral swaps, adjusted loan rates of interest over 20 times, and accepted personal

guarantees from Wannakuwatte at least 7 times. (Compl. ¶¶ 58, 62, 100.)

IMG had both cash investors as well as investors who provided Standby Letters of Credit ("SLOC's") in favor of CB&T. (Compl. ¶ 16). The purpose of each SLOC was for CB&T to finance and thereby monitor the manufacturing of medical gloves in Asia being purchased by IMG as part of IMG's business. (Compl. ¶ 19.) SLOCs were not intended to be direct loan payments to IMG. (Id.) After continued defaults by IMG, CB&T foreclosed on the SLOC pledged by a non-local investor. (Id.) CB&T, however, refused to foreclose on the security pledged by eight local Sacramento area SLOC investors. (Id.)

Sometime in 2009, but prior to October 2009, CB&T submitted "bogus" sales invoices to draw upon a $9 million SLOC obtained by applicant Jamestown Health & Medical Supply, LLC from Bank of America for CB&T. (Compl. ¶¶ 63, 121.) In October 2009, CB&T gave notice to IMG that it was terminating further secured lending but would still allow IMG to deposit new investors' money into IMG's Wholesale Account #4841. (Compl. ¶ 29.) CB&T was repaid in full by February 2011. (Compl. ¶ 30.)

On January 21, 2014, one day after IMG filed for bankruptcy protection, Ronald Evans and his wife, Joan Evans, each invested $50,000 with IMG. (Compl. ¶¶ 40, 48.) Between 2007 and 2014, and presumably before IMG filed for bankruptcy on May 30, 2014, Dennis Treadaway invested more than $2 million with IMG. (Compl. ¶ 49.) On May 8, 2014, Wannakuwatte pled guilty to

federal fraud charges.[1]  On May 30, 2014, IMG and Wannakuwatte

both declared bankruptcy.  (Compl. ¶ 78.)  On May 6, 2016, IMG's

bankruptcy trustee filed a fraudulent conveyance action in the

IMG Bankruptcy Proceeding against CB&T seeking to avoid and

recover IMG's loan repayments on the loans.  (Compl. ¶ 77, 84.)

The trustee's complaint revealed facts about CB&T's confidential

relationship with IMG.  (Compl. ¶ 84.)

On May 26, 2017, plaintiffs filed this action against

CB&T for allegedly aiding and abetting the torts of IMG.  This

court dismissed plaintiffs' complaint because it found that CB&T

did not owe a duty to plaintiffs that would give rise to tort

liability.  (Mem. & Order at 2-3 (Docket No. 28).)  Further, this

court found that plaintiffs did not plead sufficient facts to

give rise to a plausible inference that defendant knew IMG was

misappropriating funds.  (Id. at 3-4.)

The Ninth Circuit reversed.  The court first found

that, under California law, if a bank knowingly takes part in a

fraud, it has a duty to "make good the loss that results from the

misappropriation."  (Mem., No. 18-15094, at 3 (Docket No. 37).)

The court then found plausible plaintiffs' allegations that CB&T

---

[1]    The court takes judicial notice of Wannakuwatte's Plea
Agreement.  (Def.'s Req. for Judicial Notice in Supp. of Mot. to
Dismiss, Ex. 1 (Docket No. 44-2).)  District courts may take
judicial notice of their own records, and documents that are
public records and capable of accurate and ready confirmation by
sources that cannot be reasonably questioned.  United States v.
Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  Wannakuwatte's Plea
Agreement was entered in United States v. Deepal Wannakuwatte,
Case No. 14-CR-00067 TLN (E.D.C.A.).  Accordingly, because the
Plea Agreement is part of a court record, this court may take
judicial notice of it.

4

knew IMG's business "was a sham" because through its monitoring

of the account, CB&T knew that IMG had "virtually no income from

its latex glove import business." (Id. at 4.)  It is also

plausible, the court continued, that CB&T knew it IMG was

misappropriating funds because CB&T knew it was being repaid with

investor funds and not revenue.  (Id. at 5.)  Plaintiffs'

allegations of CB&T's "atypical banking procedures" while IMG was

in default were sufficient to allege that CB&T helped facilitate

IMG's solicitation of cash.  (Id. at 6.)  The court thus found

that plaintiffs plausibly stated three claims for relief: (1)

aiding and abetting fraud; (2) breach of fiduciary duty; (3)

conspiracy to commit fraud.  (Id. at 8-9.)  Because the question

of whether the statute of limitations bars these claims

"involve[s] factual determinations," the Ninth Circuit left it

for this court to consider on remand.  (Id. at 11.)

Plaintiffs filed a First Amended Complaint alleging six

claims: (1) Aiding and Abetting Fraud; (2) Securities Fraud

pursuant to California Corporations Code §§ 25110, 25401,

25504.1; (3) Conspiracy to Commit Fraud; (4) Aiding and Abetting

Breach of Fiduciary Duty; (5) Intentional Interference with

Contract; and (6) violation of California Penal Code § 496.

(Docket No. 42.)  Defendant moves to dismiss all claims.  (Docket

No. 44.)

II.  Request to Seal

As a preliminary matter, the court considers

defendant's Request to Seal Ronald Evans and Treadaway's Victim

Impact Statements (Ex. H), submitted on November 15, 2019.

Pursuant to Local Rule 141(a), "[d]ocuments may be sealed only by

written order of the Court, upon the showing required by applicable law." E.D. Cal. L.R. 141(a).

The documents at issue here appear to contain information which is sensitive and confidential. (See Declaration of Jarrett Osborne-Revis, Req. to Seal, Ex. H, at ¶ 8.) This information was designated "Confidential" in the accompanying criminal action. (Id. ¶ 6.) The information is not publicly available. (Id. ¶ 7.) Further, his information would invade the privacy of the individuals if this request to seal were not granted. (Req. to Seal at 4.) Accordingly, the court concludes that CB&T has presented "good cause" to rebut the presumption in favor of public access. See Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1189 (9th Cir. 2006).

III.     Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court, however, is "not required to accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

IV.   Statute of Limitations

A.   Fraud Claims

6

The statute of limitations for actions "for relief on the ground of fraud" is three years. Cal Code. Civ. Proc. §§ 338(c)(1), (d); <u>Hatch v. Collins</u>, 225 Cal. 3d 1104, 1100 (1990). Thus, a plaintiff must bring a cause of action for aiding and abetting fraud, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty rooted in fraud, within three years after the cause of action accrues. Courts generally determine that accrual occurs when the cause of action is complete with all of its elements. <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 384 (1999). However, under the "discovery rule," courts will postpone a cause of action's accrual date until the plaintiff discovers, or has reason to discover, the cause of action. <u>Id.</u> In other words, the limitations period does not begin until "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry" that the cause of action exists. <u>Alexander v. Exxon Mobil</u>, 219 Cal. App. 4th 1236, 1251 (2d Dist. 2013).

Here, defendant argues that the statute of limitations began when Wannakuwatte pled guilty to wire fraud on May 8, 2014, or, at the latest, when Ronald Evans and Treadaway submitted their Victim Impact Statements on May 24, 2014. (Defs.' Mot. to Dismiss at 22-23.) Because plaintiffs did not file their Complaint until May 26, 2017, defendant argues their claim for aiding and abetting fraud, as well as all other claims related to fraud, is time-barred. Plaintiffs contend that the plea agreement did not impute knowledge of the facts contained in it to plaintiffs on the date it was filed, and that even if plaintiffs had been aware of the plea agreement on May 8, 2014,

the plea agreement did not put plaintiffs on reasonable notice that they had in fact been injured <u>by CB&T</u>.

Claims against different defendants may accrue at different times. <u>E-Fab, Inc. v. Accountants, Inc. Servs.</u>, 153 Cal. App. 4th 1308, 1322 (6th Dist. 2007). "If a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 813 (2005). In this case, the question is whether "a reasonable investigation at the time would . . . have revealed a factual basis for that particular cause of action" against CB&T. <u>Id.</u> at 803. The court therefore evaluates when plaintiff was first put on notice "of [CB&T's] independent wrongdoing." <u>E-Fab</u>, 153 Cal. App. 4th at 1323.

It is clear that plaintiffs knew of IMG's alleged fraudulent scheme by May 8, 2014, when Wannakuwatte pled guilty to committing wire fraud. In his guilty plea, Wannakuwatte admitted that he lied to his investors, and that he used investment money to pay himself, to make lulling payments, and to pay outstanding debts. (Osborne-Revis. Decl. ¶ 6, Ex. B, at 19-20.) Thus, by this date, at the latest, plaintiffs had at least inquiry notice of IMG's fraudulent conduct with respect to them, and therefore discovered, or at least had reason to discover, that a cause of action for fraud against IMG existed.

Wannakuwatte's admissions, however, describe only his and IMG's fraud, not CB&T's involvement in the fraud. The court

finds that plaintiffs were not on notice of CB&T's alleged
involvement in the fraud until May 6, 2016, when the bankruptcy
trustee disclosed previously unknown confidential information
about IMG and CB&T's lending relationship in her fraudulent
transfer complaint against CB&T.  (See Compl. ¶ 84.)  Indeed,
even if plaintiffs wanted to inquire into IMG's relationship with
CB&T, they could not because IMG and Wannakuwatte were subject to
bankruptcy proceedings starting May 30, 2014.  Further, upon
review of the Victims' Impact Statements filed under seal, the
court finds no suggestion in those statements that CB&T could be
a willful participant in IMG's fraudulent scheme.

Defendants contend, however, that in a separate action
between Bank of America (BofA) and Jamestown Health & Medical
Supply (JHMS) in Washington State court, a publicly filed
pleading put plaintiffs on notice of CB&T's role in the fraud.
(See Supp. of Mot. to Dismiss, Ex. J (Docket No. 47-3).)[2]  On May
12, 2011, JHMS filed a third-party complaint against IMG and
Wannakuwatte.  (See id., Ex. K.)  Defendants argue that the
pleading noted (1) that CB&T was IMG's lender, (2) that CB&T
extended credit to IMG, (3) that BofA informed JHMS that it would
not renew the SLOC, and (4) that CB&T drew upon the $9 million
SLOC after BofA accepted the JHMS purchase orders to IMG that
CB&T submitted to BofA.  Notably, BofA did not allege fraud.
(See Defs.' Reply in Supp. of Mot. to Dismiss at 7-8 (Docket No.

[2]     The court takes judicial notice of Complaint, Bank of
America v. Jamestown Health and Medical Supply Company, LLC, No.
10-2-37091-9 SEA (Super. Ct. Wash. Oct. 10, 2011).  Because the
pleading is part of a court record, this court may take judicial
notice of it.  See supra at 3-4 n.1.

47).)  Defendants argue that these facts give plaintiffs a reason to know CB&T was involved in IMG's fraud.

Those allegations did not put plaintiffs on notice that CB&T could be involved in IMG's multimillion-dollar Ponzi scheme. Those allegations involve ordinary business transactions and would not have been sufficient to plead a plausible cause of action for fraud with particularity against CB&T back in 2014. See Fed. R. Civ. P. 9(b).  Further, the Ninth Circuit found that plaintiffs pled actual knowledge of fraudulent activity because CB&T allegedly monitored deposits, ignored IMG's multiple defaults, and conducted "atypical banking procedures."  (Mem., No. 18-15094, at 3-6).  The information required for plaintiffs to make these allegations did not come to light until May 6, 2016.  (Compl. at ¶ 84.)  Accordingly, plaintiffs had until May 6, 2019, three years after plaintiff was first put on notice "of [CB&T's] independent wrongdoing," to file suit.  See E-Fab, 153 Cal. App. 4th at 1323.  The fraud claims therefore are not time-barred.

    B. Securities Fraud

Plaintiffs allege that defendant violated California Corporations Code § 25504.1.  Section 25504.1 states that any person who materially assists in any violation of Corporations Code section 25401 or 25110, with the intent to deceive or defraud, is jointly and severally liable with any other person liable for a violation of those sections.  Cal. Corp. Code. § 25504.1.  Plaintiffs concede that their claim under Section 25110 is not timely.  (Pls.' Opp. to Mot. to Dismiss at 18 (Docket No. 46).)  The court therefore evaluates only the claim under Section

25401.

Section 25401 makes it unlawful for any person, in connection with the offer or sale of a security, to directly or indirectly employ a scheme to defraud by making untrue statements of material fact or to omit a material fact necessary to make the statements made not misleading. Cal. Corp. Code. § 25401. Plaintiffs claim that CB&T materially assisted IMG in its violation of section 25401. (Compl. ¶ 146.) This claim must have been initiated "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." Cal. Corp. Code §§ 25501, 25506(b).

The Complaint was filed on May 26, 2017. Any of the claims stemming from acts that occurred before May 26, 2012 are time-barred based upon section 25506(b)'s five-year limitation period.[3] Plaintiffs specifically allege five ways in which CB&T assisted IMG's violation of Section 25401. (Compl. ¶ 146(a)-(e).) Some of those actions clearly occurred before May 26, 2012 and some did not. For example, Ronald and Joan Evans invested in IMG in 2014, while Treadaway invested in IMG in a series of transactions from 2007 to 2014. (Compl. ¶ 40, 48, 49.)

---

[3] The May 26, 2012 cutoff governs. As discussed above, plaintiff was unaware of CB&T's role in the scheme until May 6, 2016, which would render an expiration date of May 6, 2018 under the statute's two-year limit. However, Section 25506(b) requires the court to observe the earliest date. Because the complaint was filed before May 6, 2018, any act within the five years prior to the filing of the complaint may sustain this action.

The court does not dismiss this claim insofar as it relies on deposits, check clearings, and investor referrals that occurred after May 26, 2012.

C. Intentional Interference with Contract

"California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract." Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 997 (2d Dist. 2018). Here, plaintiffs allege CB&T intentionally interfered with plaintiff's contracts with IMG by assisting IMG's use of the investors' money to pay other investors. (Compl. ¶ 160.) "The elements of a cause of action for intentional interference with contractual relations are '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" Id. (quoting Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004)). The statute of limitations for intentional interference with contractual relations is two years. See Cal. Code Civ. P. § 339(1); Trembath v. Digardi, 43 Cal. App. 3d 834, 836 (1st Dist. 1974).

Plaintiff could not have pled this claim in 2014 because information about CB&T's alleged "intentional acts" to disrupt IMG and plaintiffs' contractual relationship was not available to plaintiffs then. As discussed above, facts and allegations about CB&T's close monitoring of IMG's deposits and CB&T's atypical banking behavior to accommodate IMG's lack of

12

cash flow did not come to light until 2016.  Even the Washington
State Court pleading does not include allegations that CB&T did
anything other than extend credit to IMG.  Plaintiffs could not
infer from the fact that CB&T, a bank, lent money to IMG that
CB&T intended to disrupt the contracts between IMG and the
investors.  Because plaintiffs filed their complaint before May
6, 2018, the claim is not time-barred.

D. Penal Code Violation

California Penal Code Section 496 prohibits the
receiving of stolen property or any property "that has been
obtained in any manner constituting theft."  Cal. Penal Code §
496(a).  The fraudulent appropriation of property constitutes
theft.  Cal. Penal Code § 484.  Any person who has been injured
by a violation of the statute may bring an action for treble
damages, costs of suit, and attorney's fees.  Cal. Penal Code §
496(c).  To establish a claim for receipt of stolen property
under Penal Code § 496(a), plaintiff must allege "(1) that the
particular property was stolen, (2) that the accused received,
concealed or withheld it from the owner thereof, and (3) that the
accused knew that the property was stolen."  Finton Constr., Inc.
v. Bidna & Keys, APLC, 238 Cal. App. 4th 200, 213 (4th Dist.
2015).  The statute of limitations applicable to a Section 496
claim is three years.  Cal. Code Civ. Proc. §§ 338(c), (d); see
Von Saher v. Norton Simon Museum of Art at Pasadena, 578 F.3d
1016, 1029-30 (9th Cir. 2009).

Plaintiffs could not have filed a claim before May 6,
2016 because plaintiffs did not have enough information to
suspect that CB&T knew the money IMG deposited was stolen.  The

13

Ninth Circuit found that plaintiffs' allegations that CB&T was aware of IMG's fraudulent scheme by 2009 were sufficient. However, the information that led plaintiffs to infer CB&T's awareness of the fraud, namely CB&T's close monitoring of deposits, ignorance of IMG's multiple defaults, and "atypical banking procedures" (Mem., No. 18-15094, at 3-6), did not come to light until the bankruptcy trustee filed the complaint against CB&T in 2016. Absent this information, plaintiffs had no information available that would lead them to conclude that, when IMG was depositing money into CB&T, CB&T knew that money had been fraudulently misappropriated. Plaintiffs needed further details on IMG's banking relationship with CB&T and CB&T's banking behavior. Accordingly, because plaintiffs filed their complaint within three years of May 6, 2016, this claim is timely.

In conclusion, all six of plaintiffs' claims are timely.

V. <u>Sufficiency of the Pleadings</u>

In addition to the statute-of-limitations challenges discussed above, defendants contest the sufficiency of the pleadings for plaintiffs' claims for aiding and abetting breach of fiduciary duty and intentional interference with contract.

A. <u>Aiding and Abetting Breach of Fiduciary Duty</u>

Plaintiffs allege defendant aided and abetted the breach of the fiduciary duty that Wannakuwatte owed to plaintiffs.[4] (Compl. ¶¶ 154-157.) Defendant argues that

---

[4] The Ninth Circuit concluded that CB&T owed plaintiffs a fiduciary duty but did not evaluate the relationship between IMG and plaintiffs.

Wannakuwatte owed plaintiffs no such duty.

A fiduciary duty is either "imposed by law" or "undertaken by agreement." Maglica v. Maglica, 66 Cal. App. 4th 442, 447 (4th Dist. 1998). Plaintiffs do not allege that Wannakuwatte owed plaintiffs a fiduciary duty by law. Instead, plaintiffs rely on Wannakuwatte's closeness to the community from which he solicited funds to establish a fiduciary duty undertaken by agreement. (Compl. ¶ 156.)

"A fiduciary duty is undertaken by agreement, when one party enters into a 'confidential relationship' with another." Maglica, 66 Cal. App. 4th at 447. "A 'confidential relationship' imposing fiduciary duties does not arise every time two parties share confidences with one another." City Sols., Inc. v. Clear Channel Commc'ns, Inc., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002). "The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty." Id. (quoting Worldvision Enter., Inc. v. Am. Broad. Cos., Inc., 142 Cal. App. 3d 589, 595 (2d Dist. 1983)). A "confidential relationship" arises only "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence." Id. (quoting GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417 (4th Dist. 2000)).

Plaintiffs allegations are insufficient to establish that Wannakuwatte undertook a fiduciary duty to IMG investors by agreement. Plaintiffs allegations about Wannakuwatte's

relationship with IMG investors describe only what the community in general thought of Wannakuwatte. (E.g., Compl. ¶ 156 (noting "the community's clear substantive belief that Deepal" is trustworthy); id. (alleging that "people . . . looked up to Deepal as a respected 'elder'").) The complaint does not describe the relationship between Wannakuwatte and the IMG investors as one of "trust and confidence." See Worldvision, 142 Cal. App. 3d at 595. There are no allegations, for example, of plaintiffs entrusting Wannakuwatte with confidential information. Indeed, the complaint does not describe the specific relationships between actual investors and Wannakuwatte at all. Accordingly, the court finds that the complaint does not sufficiently allege a fiduciary duty and dismisses this claim with leave to amend.

B.    Intentional Interference with Contract

As discussed above, to plead a claim for intentional interference with contract, plaintiff must plead facts plausibly showing that defendant CB&T actually knew about the contractual relationships between IMG and plaintiffs. Redfearn, 20 Cal. App. 5th at 997.

The court finds that plaintiffs fails to plead sufficient facts to sustain this claim. Plaintiffs allegations do not satisfy the pleading standard because they are conclusory. See Seven Arts, 733 F.3d at 1254. Although the complaint asserts that "CB&T knew the specific terms, conditions and obligations articulated in each contract," plaintiff alleges no fact that supports such a conclusion. (See Compl. ¶ 159.) The complaint does not establish how, when, or why CB&T acquired this

information.  While plaintiffs do allege that plaintiffs deposited their investment money at CB&T (Compl. ¶¶ 33, 34, 50), such allegations do not give rise to the inference that CB&T knew the details of the contracts or that CB&T knew that a contract existed at all.  The court will therefore dismiss this claim with leave to amend.

IT IS THEREFORE ORDERED that CB&T's Request to Seal Victim Impact Statements (Ex. H) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's Motion to Dismiss (Docket No. 44) be, and the same hereby is, GRANTED IN PART as to the following claims: (1) intentional interference with contract; and (2) aiding and abetting breach of fiduciary duty.

IT IS FURTHER ORDERED that defendant's Motion to Dismiss be, and the same hereby is, DENIED IN PART as to the following claims: (1) aiding and abetting fraud; (2) conspiracy to commit fraud; (3) securities fraud based on transactions or acts after May 26, 2012; and (4) violation of Penal Code § 496.

Plaintiff is given 14 days from the date this Order is filed to file a Second Amended Complaint if it can do so consistent with this Order, and the court can go through the tedious process of hearing another motion to dismiss that complaint.

Dated:  December 18, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE