Robert L. Brace, Bar No. 122240
rlbrace@rusty.lawyer
1807 Santa Barbara Street
Santa Barbara, CA 93101
Office: 805-845-8211
Cell: 805-886-8458

Michael P. Denver, Bar No. 199279
mpdenver@denverlawgroup.law
514 W. Pueblo St., Ground Floor
Santa Barbara, CA 93105
805-896-4967

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA — SACRAMENTO DIVISION

| | |
|---|---|
| RONALD C. EVANS, JOAN M. EVANS, DENNIS TREADAWAY, and all others similarly situated, Plaintiffs, <br><br> vs. <br><br> ZIONS BANCORPORATION, N.A., dba California Bank and Trust, Defendant <br> _____ <br><br> ZIONS BANCORPORATION, N.A., Third Party Claimant <br><br> vs. <br><br> JTS, LARRY CARTER, JACK SWEIGART AND BRISTOL INSURANCE, Third Party Defendants | 2:17-cv-01123-WBS-DB <br><br><br> NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

**PLEASE TAKE NOTICE** that on July 25, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard by the Honorable William B. Shubb of the Federal District Court, Eastern District of California, located at 501 I Street Sacramento, California, Plaintiffs will and hereby do move the Court for an order substantially in the form of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice filed with this motion, conditionally certifying a provisional Settlement Class for purposes of the proposed settlement only, preliminarily approving the settlement of $14 million as fair and adequate, and approving the notice plan provided for in the [Proposed] Order.

The motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the Declarations of Robert L. Brace, Michael P. Denver, Ronald Evans and Joan Evans which are filed concurrently herewith, as well as the records and files in this action, and any other further evidence or argument that the Court may receive at, before or after the hearing.

Dated: June 24, 2022                                        Respectfully submitted,

By ___/s/ Robert L. Brace_____        By ____/s/ Michael P. Denver_____
    Robert L. Brace                                   Michael P. Denver
    Attorneys for Plaintiff                           Attorneys for Plaintiff

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   DISCUSSION ............................................................................................................ 4

III.  CLASS CERTIFICATION ........................................................................................ 5

    A.    Rule 23(a) ...................................................................................................... 5

        1.    Numerosity ........................................................................................ 5

        2.    Commonality ..................................................................................... 5

        3.    Typicality .......................................................................................... 6

        4.    Adequacy of Representation .............................................................. 7

        5.    No Conflicts of Interest ..................................................................... 7

        6.    Vigorous Prosecution ........................................................................ 9

    B.    Rule 23(b) ...................................................................................................... 9

        1.    Predominance .................................................................................. 10

        2.    Superiority ....................................................................................... 10

    C.    Rule 23(c)(2) Notice Requirements ........................................................... 12

    D.    Rule 23(e): Fairness, Adequacy, and Reasonableness of the Proposed Settlement ................................................................................................... 14

        1.    Adequate Representation ................................................................. 14

        2.    Negotiations of the Settlement Agreement ..................................... 15

        3.    Adequate Relief ............................................................................... 16

        4.    Attorney's Fees of 30% ................................................................... 17

        5.    Remaining Staton Factors ............................................................... 18

    E.    Rule 23(e) Notice Requirements ................................................................ 19

IV.   CONCLUSION ........................................................................................................ 19

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Amchem Prods., Inc. v. Windsor,
    521 U.S. 591 (1997) .................................................................................. 7, 11

Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,
    568 U.S. 455 (2013) ...................................................................................... 10

Churchill Vill., LLC v. Gen. Elec.,
    361 F.3d 566 (9th Cir. 2004) .......................................................................... 13

Fraley v. Facebook, Inc.,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ........................................................... 15

In re GSE Bonds 10 Antitrust Litig.,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................... 14

Hanlon v. Chrysler 19 Corp.,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................... 9, 10

re Hyundai and Kia Fuel Econ. Litig.,
    926 F.3d 539 (9th Cir. 2019) ........................................................................... 7

Jenson v. Fiserv Trust Co,
    256 Fed Appx 924 (9th Cir. 2007) ................................................................... 7

Leyva v. Medline Indus. Inc.,
    716 F.3d 510 (9th Cir. 2013) ..................................................................... 5, 6, 9

McCurley v. Royal Seas Cruises, Inc.,
    331 F.R.D. 142 (S.D. Cal. 2019) ...................................................................... 5

Mullane v. Cent. Hanover Bank & Tr. Co.,
    339 U.S. 306 (1950) ........................................................................................ 19

Officers for Justice 24 v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) .......................................................................... 17

Ontiveros v. Zamora,
    No. 2:08-567 WBS DAD, 2014 WL3057506
    (E.D. Cal. July 7, 2014) .................................................................................... 4

Radcliffe v. Experian Info. Sys., Inc.,
    715 F.3d 1157 (9th Cir. 2013) .......................................................................... 8

ii

Rodriguez v. 23 West Publ'g Corp.,
    563 F.3d 948 (9th Cir. 2009)....................................................................... 8, 9

Roes, 1-2 v. SFBSC Mgmt., LLC,
    944 F.3d 1035,1048 (9th Cir. 2019)................................................................. 4

Sali v. Corona 24 Reg'l Med. Ctr.,
    909 F.3d 996 (9th Cir. 2018)........................................................................... 6

Silber v. Mabon,
    18 F.3d 1449 (9th Cir. 1994)..................................................................... 12, 19

Staton v. 12 Boeing Co.,
    327 F.3d 938 (9th Cir. 2003)................................................................ *passim*

Syed v. M-I LLC,
    No.1:14-cv-00742 WBS BAM,
    2019 WL 1130469 (E.D. Cal. Mar. 12, 2019) ..................................... 11

Villalpando v. Exel Direct Inc.,
    No. 3:12-cv- 1 4137-JCS,
    2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) ...................................... 9

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
    396 F.3d 96 (2d Cir. 2005)......................................................................... 5, 19

Wang v. Chinese Daily News, Inc.,
    737 F.3d 538 (9th Cir. 2013)...................................................................... 5, 10

**California Cases**

Occidental Land, Inc. v. Superior Court,
    18 Cal.3d 355 (1976) ................................................................................... 6

Vasquez v. Superior Court,
    4 Cal.3d 800 (1971) .................................................................................... 6

**Other State Cases**

Baker v. SeaWorld Entm't, Inc.,
    No. 14-cv- 02129-MMA; 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020)................... 16

**Federal Statutes**

Class Action Fairness Act ............................................................................ 18

**California Statutes**

California Penal Code
    § 496........................................................................................................ 1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 20

Fed. R. Civ. P. 23(a) ...................................................................................... 5, 6, 7, 9

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 5

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 5

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 6

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 7, 14

Fed. R. Civ. P. 23(b) ...................................................................................... 5, 9, 13

Fed. R. Civ. P. 23(b)(3) ........................................................................ 9, 10, 11, 12

Fed. R. Civ. P. 23(c)(2) ...................................................................................... 12, 19

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 12, 13

Fed. R. Civ. P. 23(e) ....................................................................................... *passim*

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................... 18

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 14

Fed. R. Civ. P. 23(e)(2)(A) ...................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................... 17

Fed. R. Civ. P. 23(e)(D) ........................................................................................... 18

**Other Authorities**

Rubenstein, 4 Newberg on Class Actions § 8:15, 5th ...................................... 19

Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.) ............................ 14

Sacramento Bee ............................................................................................. 4, 13

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# I.    **INTRODUCTION**

The Plaintiffs are Ronald Evans, Joan Evans, and Dennis Treadaway (the "Plaintiffs"). The Defendant is Zions Bancorporation, N.A., doing business as California Bank & Trust (formerly known and named herein as ZB, N.A., and referred to herein as the "Bank").   The Plaintiffs represent a class of approximately 60 lenders and/or investors who claim to have lost approximately $55 million in a fraudulent medical supply-related business run by Deepal Wannakuwatte ("Deepal") in Sacramento.  In May, 2014, Deepal admitted to defrauding lenders and pleaded guilty to a single count of wire fraud.  He is presently serving a lengthy prison sentence.  Deepal ran his massive fraud scheme through his company, International Manufacturing Group, Inc., and other affiliated entities.  International Manufacturing Group, Inc. and Deepal's other affiliated entities, which solicited investors to lend to or invest money in a medical supply-related business, are collectively referred to herein as "IMG".  The Plaintiffs sued the Bank for, generally, knowingly aiding and abetting the IMG fraud scheme. The Bank's alleged motive for aiding and abetting the fraud was to recover $21 million it had loaned to IMG before discovering IMG's fraud. The Bank adamantly denies it had any knowledge of the scheme until Deepal was arrested in February, 2014.

The Plaintiffs' Complaint was filed in May of 2017, after IMG's bankruptcy trustee (Beverly McFarland) filed fraudulent conveyance causes of action against the Bank (in May of 2016).  On December 20, 2017, the Plaintiffs' complaint was dismissed as being implausible (Dkt. 28). The Plaintiffs appealed the dismissal to the Ninth Circuit which, on June 25, 2019, reversed the trial court and concluded the facts alleged did establish a plausible case against the Bank for aiding and abetting IMG's fraud scheme (Dkt. 37).

An amended complaint was filed in October of 2019 (Dkt. 42), and the trial court ruled that certain causes of action were defective while others could proceed (Dkt. 50). The case was thereafter at issue for the following four causes of action: Aiding and Abetting Fraud; Misrepresentation in the Sale of Certain Securities; Conspiracy to Commit Fraud; and Violation of California Penal Code Section 496. Ibid. All alleged causes of action required the Plaintiffs to prove that the Bank had knowledge that IMG was running a fraud scheme through the Bank using IMG's accounts at the Bank to receive and disburse the stolen money.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Through late 2019 and the first half of 2020, counsel for both sides diligently pursued settlement discussions after thoughtfully considering the strength of their arguments and potential defenses. Having no success at informal settlement discussions, in August of 2020, the parties participated in a formal, arms-length mediation before the Hon. Richard L. Gilbert (Ret.).  Briefs were exchanged before the meeting. The Bank had approximately a dozen interested persons attending the remote mediation by Zoom. The case did not settle at the first mediation, so the parties requested a 2-week continuance to continue talking, but no settlement was reached. As a result, the parties continued litigating and conducted extensive discovery and trial preparation. Over 50 depositions have been taken with thousands of exhibits produced and discussed during the depositions. (Brace Decl. ¶ 7.)

In March of this year, the parties attempted a second mediation, this time in person and with a different mediator with expertise in Ponzi scheme litigation – retired Judge Ronald Sabraw from JAMS. Again, briefs were exchanged before the parties met in Sacramento. The case did not settle on the first day of the mediation with Judge Sabraw, which was on March 17, 2022.  However, the parties continued to engage with Judge Sabraw, and ultimately agreed to consider a mediator's proposal as a method that might move the discussions forward.  On March 25, 2022, Judge Sabraw recommended that the Bank pay the class $14 million to settle approximately $55 million in unpaid claims owed by IMG. On April 1, 2022, the parties were informed by Judge Sabraw that both sides had accepted the mediator's proposal. (Brace Decl. ¶ 7.) The parties then negotiated and executed a formal, long-form settlement agreement. (Ex. 1 to Brace Decl., hereinafter "Settlement Agreement".)

As proposed, the Settlement Agreement between the Plaintiffs and the Bank contemplates a release of all claims asserted in the action by the participating members of the Settlement Class. The Settlement Class is defined as:

"All Net Losers, including assignees, but excluding Net Losers who have already released the Bank from IMG-related claims, and also excluding any governmental entities, any judge, justice or judicial officer presiding over this matter, and the members of his or her immediate family, the Bank, along with its corporate parents, subsidiaries and/or affiliates, successors, and attorneys of

2

1  any excluded Person or entity referenced above, and any Person acting on behalf of any excluded

2  Person or entity referenced above."

3          "Net Loser" is defined as any Settlement Class Member who suffered a Net Loss from

4  lending to or investing money in IMG's medical supply-related business(es), and "Net Loss" is

5  defined as: "[T]he total amount transferred by a Settlement Class Member to IMG minus the total

6  amount received back from IMG, including, but not limited to any return on investment, return of

7  principal, fees, and other payments by IMG to the Settlement Class Member. For purposes of this

8  settlement, for each Participating Class Member, the Net Loss shall be the amount of the allowed

9  claim as reflected in the Claims Approval Order, provided that such allowed claim only includes

10  monies provided to IMG for the purpose of lending to or investing in IMG's medical supply-related

11  business(es)." (See Brace Decl., Ex. 1). Based on the IMG bankruptcy records, the proposed

12  settlement class consists of approximately 60 lenders to and/or investors in IMG who collectively

13  lost approximately $55 million.

14          The Bank has agreed to pay $14 million to create a common fund, from which payments

15  will be made for: (1) attorney's fees not to exceed 30% of the net settlement fund remaining after

16  the payment of litigation costs and settlement administration costs; (2) litigation costs incurred by

17  class counsel not to exceed $200,000; (3) settlement administration costs of approximately

18  $150,000, payable to the Beverly Group, Inc.; and (4) an incentive award for plaintiffs Ronald

19  Evans, Joan Evans, and Dennis Treadaway, of $5,000.00 each. The remaining funds (the "Net

20  Settlement Amount"), estimated at over $9 million out of the $14 million, will be distributed to

21  class members who do not opt out of the settlement. Based on the IMG bankruptcy records, we

22  believe the prorated distributions should be approximately 17% of the net loss amount. If any class

23  member opts out, the Bank has the option to proceed with the settlement or terminate the settlement

24  as void from its inception.

25          Each participating settlement class member is eligible to receive a proportional share of the

26  Net Settlement Amount, depending on how much the class member lost by lending to, or investing

27  money in IMG. If all potential settlement class members participate, Plaintiffs' counsel estimates

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

1  that each class member will receive approximately 17% of their net loss amount (See Brace Decl.

2  ¶10.)

3      The Notice of Class Action Settlement will be mailed to all known class members via first

4  class mail, posted on Plaintiffs' counsel's web site at www.Rusty.Lawyer, and a short form Notice

5  will be published in the Sacramento Bee newspaper. The Notice informs class members that they

6  have the right to dispute the net loss amount number attributed to them. Class members shall have

7  30 days to either opt out or to submit an objection to the proposed settlement agreement.

8  **II.**    **DISCUSSION**

9      Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

10  certified class may be settled . . . only with the court's approval." Fed. R. Civ. P.23(e). "To vindicate

11  the settlement of such serious claims, however, judges have the responsibility of ensuring fairness

12  to all members of the class presented for certification." Staton v. 12 Boeing Co., 327 F.3d 938, 952

13  (9th Cir. 2003). Where the parties negotiate a settlement agreement before the class has been

14  certified, settlement approval requires a higher standard of fairness and a more probing inquiry into

15  the relations between the settling parties than may normally be required under Rule 23(e). Roes, 1-

16  2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,1048 (9th Cir. 2019).

17      The approval of a class action settlement takes place in two stages. In the first stage, "the

18  court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a

19  settlement class, and authorizes notice to the class." Ontiveros v. Zamora, No. 2:08-567 WBS DAD,

20  2014 WL3057506, at *2 (E.D. Cal. July 7, 2014).  In the second stage, the court will entertain class

21  members' objections to (1) treating the litigation as a class action and/or (2) the terms of the

22  settlement agreement at the fairness hearing. Ibid.

23      The court will then reach a final determination as to whether the parties should be allowed

24  to settle the case on the terms voluntarily reached following the fairness hearing. The order sought

25  by the parties in this motion will only determine whether the proposed class action settlement

26  deserves preliminary approval because **it has no glaring deficiencies**.  If it does pass the "no

27  glaring deficiencies test," the settling parties and the Court then need to lay the procedural

28  groundwork for the future final fairness hearing which includes class member participation in an

4

1  open public forum protected with the constitutional right to attack class certification and the merits

2  of the agreement.

3  **III.    CLASS CERTIFICATION**

4      To be certified, the putative class must satisfy both the requirements of Federal Rule of

5  Civil Procedure 23(a) and (b). Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

6  The settling parties will address each subpart.

7      **A.    Rule 23(a)**

8      To certify a class, Rule 23(a)'s four threshold requirements must be met: numerosity,

9  commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). "Class certification

10  is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been

11  satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting Wal-

12  Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

13      **1.    Numerosity**

14      While Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

15  impracticable," Fed. R. Civ. P. 23(a)(1), it does not require "a strict numerical cut- off." McCurley

16  v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 167 (S.D. Cal. 2019). Generally, "the numerosity

17  factor is satisfied if the class compromises 40 or more members." Id. Here, the parties estimate that

18  there are 60 class members satisfying the numerosity requirement (Brace Decl. ¶21.)

19      **2.    Commonality**

20      Next, Rule 23(a) requires that there be "questions of law or fact common to the class." Fed.

21  R. Civ. P. 23(a)(2). Rule 23(a)(2) is satisfied when there is a common contention of such a nature

22  that it is capable of class wide resolution -- which means that determination of its truth or falsity

23  will resolve an issue that is central to the validity of each one of the claims in one stroke. Wal-Mart

24  Stores, 564 U.S. at 350. "Plaintiffs need not show that every question in the case, or even a

25  preponderance of questions, is capable of class wide resolution. So long as there is 'even a single

26  common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."

27  Wang, 737 F.3d at 544. Here, all the claims implicate common questions of law and fact because

28  they are all premised on whether the Bank had knowledge that Wannakuwatte was using IMG to

5

1   perpetuate a Ponzi scheme. The Bank adamantly denies it had the knowledge alleged. Its employees

2   have denied knowing about the scheme before Deepal was arrested in early 2014.

3       The Plaintiffs concede that proof of the Bank's knowledge is derived from circumstantial

4   evidence whereby the inference of knowledge must be drawn by the finder of fact. The Bank's

5   knowledge of IMG's fraud scheme is a question common to the class as a whole and it creates a

6   common question whose answer is apt to drive the resolution of the entire litigation. Even if

7   individual members of the class will be entitled to different amounts of damages "the presence of

8   individual damages cannot, by itself, defeat class certification." Leyva, 716 F.3d at 514 (quoting

9   Wal-Mart Stores, 564 U.S. at 362). The settling parties contend that for the purpose of approving

10  this settlement the common questions of law and fact satisfy Rule 23(a)'s commonality

11  requirement.

12          **3.      Typicality**

13      Rule 23(a) further requires that the "claims or defenses of the representative parties [be]

14  typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is

15  "whether other members have the same or similar injury, whether the action is based on conduct,

16  which is not unique to the named plaintiffs, and whether other class members have been injured by

17  the same course of conduct." Sali v. Corona 24 Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018)

18  (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). For this case, typicality

19  requires that each class member have a claim against the Bank for aiding and abetting the IMG

20  fraud scheme.

21      The named plaintiffs and the class members all must prove two cases with the same

22  evidence.  The first case is the fraud by Deepal. In his criminal plea agreement, Deepal admitted

23  that he intentionally "defrauded over 100 victims, including individuals, corporate entities, a tribal

24  entity, and financial institutions, by making materially false representations to his victims

25  [regarding his medical supply-related business] in order to obtain money under their control."

26  (Brace Decl. ¶ 21.)  As to the element of reasonable reliance to the false statements, the named

27  plaintiffs can prove they relied on Deepal's promises. The class members may get a presumption

28  of reliance from the Court based on Vasquez v. Superior Court, 4 Cal.3d 800 (1971) and Occidental

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

Land, Inc. v. Superior Court, 18 Cal.3d 355 (1976), which hold that, in the class context, the presumption of justifiable reliance arises from the payment of money caused by uniform misrepresentations of fact.

The justifiable reliance presumption endorsed by the California State Supreme Court applies to fraud cases filed in Federal court based on diversity jurisdiction. Jenson v. Fiserv Trust Co, 256 Fed Appx 924, 926 (9th Cir. 2007) (citing Vasquez in support of a class-wide presumption of reliance where "the 'center of gravity' of the investment company's fraud predominated over details of individual communications. Thus, the investment company's underlying Ponzi scheme fraud could be proved on a class basis.)

As to the case of aiding and abetting the fraud, each plaintiff must prove that the Bank knew about the IMG fraud and substantially assisted it by allowing the stolen money to flow into and out of the Bank in the IMG accounts. The typicality requirement is satisfied for each member if knowledge by the bank is proven.

### 4.    Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as the "competency and conflicts of class counsel." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 626 n.20 (1997). The court must consider two factors: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler 19 Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

### 5.    No Conflicts of Interest

The first portion of the adequacy inquiry considers whether the plaintiffs' interests are aligned with those of the class. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem, 521 U.S. at 625-26. Here, the named plaintiffs' interests are completely aligned with those of the class. The plaintiffs lost

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   their money in 2014 and have been diligently prosecuting the case since 2017 – for 5 years without

2   any recovery while their lawyers worked without pay while fronting the litigation costs.

3       The named plaintiffs agreed in their retainer agreements to act for the benefit of the class,

4   as fiduciaries, and to place the interests of the unnamed class members ahead of their own personal

5   interests. (Brace Decl. ¶28.) The class representatives agreed up-front that they were working for

6   the class members even though their representative role might cause them to recover less than they

7   would recoup prosecuting their case as individuals for their exclusive benefit. (Brace Decl. ¶28.)

8   The plaintiffs have been exemplary. There is no conflict. They have sought to recover the maximum

9   amount to pay all class claims on a pro-rated basis. As described in the Evans plaintiffs' declaration,

10  they were defrauded by Deepal into investing money in IMG. As with most or all members of the

11  class, they received promissory notes signed by Deepal on behalf of IMG in exchange for money

12  transferred to IMG to finance IMG's medical supply-related business. Id.

13      Despite the similarities, Plaintiffs alone stand to benefit for their participation in this

14  litigation by potentially receiving an incentive award of $5,000 each if approved by the Court. The

15  possibility of an incentive award raises the potential that the plaintiffs' interest in receiving that

16  award will cause their interests to diverge from the classes in a fair settlement. Staton, 327 F.3d at

17  977-78. Consequently, the court must "scrutinize carefully the awards so that they do not undermine

18  the adequacy of the class representatives." Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157,

19  1163 (9th Cir. 2013).  A $14 million gross settlement is close to 25% of the investors' net losses of

20  $55 million as set out in the IMG bankruptcy records. Counsel estimates that after paying fees and

21  expenses each class member will receive approximately 17% of their Net Loss.

22      The Evans' proposed incentive award of $10,000 ($5,000 each) will be combined with their

23  percentage settlement payment based on their claimed collective net loss. Dennis Treadaway's

24  proposed incentive award of $5,000 will be combined with his percentage settlement payment

25  based on his claimed net loss.  Incentive awards "are intended to compensate class representatives

26  for work done on behalf of the class, to make up for financial or reputational risk undertaken in

27  bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

28  general." Rodriguez v. 23 West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). Indeed, the

financial risk to pay statutory costs can be significant in large complex cases. The Ninth Circuit has consistently recognized incentive awards are a "fairly typical" way to "compensate class representatives for work done on behalf of the class." Id.

A $5,000 incentive payment is appropriate at this late stage of the case. Plaintiffs' counsel represent that the Plaintiffs have spent significant amounts of time to bring this case, providing counsel with important documents, information, and insight regarding their investment in IMG. (Brace Decl., ¶ 30.)  Courts award higher incentive awards in other class cases, see, e.g., Villalpando v. Exel Direct Inc., No. 3:12-cv- 1 4137-JCS, 2016 WL 7785852, at *2 (N.D. Cal. Dec. 9, 2016) (awarding each named plaintiff $15,000 following misclassification suit). The Evans' incentive award is more than fair and does not create any conflict.

### 6.    Vigorous Prosecution

The second portion of the adequacy inquiry examines the vigor with which the named plaintiffs and their counsel have pursued the class members' claims. "Although there are no fixed standards by which 'vigor' can be assessed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021. Here, class counsel are experienced Ponzi scheme litigators fully qualified to pursue the interests of the class. (Brace Decl. ¶¶15-20, 31; Denver Decl. ¶¶ 3-5.) Class counsel represent that they have each litigated numerous Ponzi class action cases against banks and law firms for aiding and abetting in state and federal courts. They have carefully vetted their clients' plausible claims and defendant's arguments through rigorous legal analysis. (Brace Decl. ¶¶ 6, 19-20; Denver Decl. ¶¶ 9-10.)  This experience, coupled with the diligent work expended on the case for over 5 years (dedicating thousands of hours), should suggest to the Court that class counsel is well-equipped to handle the matter. The Court should find that plaintiffs and plaintiffs' counsel have proffered a plausible case against the Bank, are adequate representatives of the class, and qualified to decide how, when, and for how much to settle the case.

### B.    Rule 23(b)

After fulfilling the threshold requirements of Rule 23(a), the proposed class must satisfy the requirements of one of the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512. Plaintiffs seek

provisional certification under Rule 23(b)(3), which provides that a class action may be maintained only if "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Wang, 737 F.3d at 545 (quoting Hanlon, 150 F.3d at 1022). However, a plaintiff is not required to prove that the predominating question (the Bank's knowledge) will be answered in his or her favor at the class certification stage. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 468 (2013). Here, the claims brought by the proposed settlement class all arise from the Bank's same alleged conduct of knowingly aiding IMG's fraud scheme to get repaid the money it had loaned to IMG. The Bank disputes it had any knowledge about the scheme.

All class members claim to have been defrauded in a similar fashion by Deepal, the primary tortfeasor. All class members transferred money to IMG based upon IMG's misrepresentations to them. Class members claim to have been paid lulling payments by IMG, some or all of which came from the accounts at the Bank. Plaintiffs claim the Bank was repaid its loans to IMG from investors' funds deposited at the Bank. These common facts unite plaintiffs' individual claims and the class claims. The common questions of law, if knowledge by the Bank is established, support aiding and abetting liability. The class claims thus demonstrate a "common nucleus of facts and potential legal remedies" that can properly be resolved in a single adjudication. See Hanlon, 150 F.3d at 1022. The Court should find that common questions of law and fact predominate over questions affecting only individual class members.

### 2.    Superiority

Based on the IMG bankruptcy records, there are approximately 60 investors with tentative Net Losses approaching $55 million, but, aside from the Evans class action, only one other non-bankruptcy litigation has been filed against the Bank -- the JTS State Court Action (Sacramento

10

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Superior Court, Case No. 34-2017-00213368) filed by plaintiffs Larry Carter, Jack Sweigert, and their two companies, Bristol Insurance and JTS Communities, Inc. (collectively the "JTS Parties"). The JTS Parties were the single largest lenders/investors to IMG and claimed to have lost approximately $25 million to IMG. The JTS Parties were also named as third-party defendants in this case by the Bank, and were sued by IMG's bankruptcy trustee, Beverly McFarland, in a fraudulent conveyance adversary proceeding. The JTS State Court Action has been settled and dismissed with prejudice in its entirety; and, the Bank has dismissed the third-party complaint against the JTS Parties in this action.

No other actions are pending, notwithstanding the fact that IMG's fraud scheme collapsed in early 2014 – more than 8 years ago. Class members have demonstrated through their inaction that the Evans class action litigation was considered by them to be the superior means of resolving their losses caused by Deepal. It is doubtful that the class members may be interested in individually controlling the prosecution of separate actions. Notice of the $14 million settlement to the class will trigger the answer to whether the class litigation is and has been superior.

Rule 23(b)(3) sets forth four non-exhaustive factors that courts should consider when examining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). They are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. Factors (C) and (D) are inapplicable because the parties settled this action before class certification. Syed v. M-I LLC, No.1:14-cv-00742 WBS BAM, 2019 WL 1130469, at *6 (E.D. Cal. Mar. 12, 2019) (citation omitted). Therefore, the Court and the settling parties focus should be on factors (A) and (B).

Rule 23(b)(3) is concerned with the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Amchem, 521 U.S. at 617. Here, plaintiffs' counsel estimate based on the IMG bankruptcy records that class members will receive approximately 17% of their net loss amount. (Brace Decl. ¶ 10.)

11

The anticipated payout is modest for some members and significant to other investors. If the payouts are judged by the class members to be insufficient, the unsatisfied investors may opt out and file their own litigation. The notice to the class will include the warning that one "opt out" gives the Bank the right to terminate the settlement, thereby resetting the litigation to the status that existed right before resolution.

Factor (A) weighs in favor of preliminarily approving this settlement. Historically, there has been minimal interest by class members in individually controlling the prosecution of separate actions against the Bank. Therefore, it may be reasonably inferred that today there is minimal interest by class members in individually controlling the prosecution of separate actions.

Factor (B), concerning the "extent and nature of the litigation," is "intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1191 (9th Cir., June 15, 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 568-70 ("Wright & Miller") (2d ed. 1986)). There is no clear threat of multiplicity of litigation or the risk of inconsistent adjudications. A class action with a reasonable class action settlement is appropriate to assuring judicial economy and reducing the possibility of multiple lawsuits. Moreover, the lack of the existence of other litigation indicates that interested parties have decided that the Evans class action with their counsel skilled in Ponzi schemes is the acceptable way to proceed. There are no substantially similar putative class actions against the Bank pending in United States District Courts, or in any state court.

### C.    Rule 23(c)(2)  Notice Requirements

When the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice is not required, but the notice provided must be "reasonably certain to inform the absent members of the plaintiff class." Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

The parties have jointly agreed to use The Beverly Group, Inc. to serve as the Settlement Administrator. (Brace Decl., ¶36.) The Beverly Group already has extensive experience in

12

providing claims administration services involving the debts owed by IMG arising out of the IMG fraud scheme. Beverly McFarland ("McFarland") formed The Beverly Group. McFarland also acted as the Chapter 11 Trustee of IMG and as the principal of the Beverly Group which still serves as the plan administrator for IMG as a liquidating debtor in a chapter 11 bankruptcy. The Beverly Group processed and sought bankruptcy court adjudication of the net losses suffered by those class members who filed creditor claims in the IMG bankruptcy.

Pursuant to the notice plan, The Beverly Group will mail the proposed notice to the known class members within ten calendar days of the Court's order granting preliminary approval. The known class members are the same investors who filed creditor claims in the IMG bankruptcy that Beverly McFarland delt with as the Chapter 11 bankruptcy trustee of IMG. About the unlikely class member(s) who did not file a creditor's claim, we will publish a notice of the settlement in the Sacramento paper of the greatest circulation. Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

The notice here will provide, among other things, a description of the case; the total settlement amount and how it will be allocated (including information about plaintiffs' motion for attorney's fees and costs); the procedures for opting out or objecting to the settlement; and the procedures for disputing the class member's net loss number to be used to calculate the class member's pro rata share of the settlement. All known class members will be sent individual notice by first class mail. The long form notice will also be posted on plaintiffs' counsels' website and a short form notice will be published in the Sacramento Bee.

The notice system set forth in the Settlement Agreement is reasonably calculated to provide notice to class members and inform class members of their options under the agreement. The manner of notice and the content of notice should be sufficient for the Court to satisfy its oversight obligations under Rule 23(c)(2)(B).

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**D.**   **Rule 23(e): Fairness, Adequacy, and Reasonableness of the Proposed Settlement**

The proposed class preliminarily satisfies the requirements of Rule 23(a) and (b), so the Court must then consider whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires the court to consider four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other." Id. The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap with Rule 23(e)'s four factors: (1) The strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Staton, 327 F.3d at 959.

Many of the factors identified above cannot be considered until the final fairness hearing after notice and with class member participation. Accordingly, the Court's review may be confined to resolving any glaring deficiencies in the settlement, of which there are none – the plaintiffs wanted to receive more, and the defendant wanted to pay less which is the definition of a settlement.

**1.**   **Adequate Representation**

The court must first consider whether over the last 5 years "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is redundant of the requirements of Rule 23(a)(4). Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.), see also In re GSE Bonds 10 Antitrust Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)). Because the Court should find that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) will also be met.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### 2.     Negotiations of the Settlement Agreement

Counsel for both sides diligently pursued settlement after thoughtfully considering the strength of their arguments and potential defenses. In August of 2020, the parties participated in an arms-length Zoom mediation before retired Judge Richard L. Gilbert. Briefs were exchanged before the meeting. The Bank had approximately twelve people attending by Zoom. The case did not settle at the first settlement conference, so the parties requested a 2-week continuance of all dates to continue talking. With no resolution from the efforts expended after the first mediation, the parties continued with additional discovery and trial preparation. Over 50 depositions have been taken with thousands of exhibits discussed during the depositions.

This year, the parties attempted a second in-person mediation with a different mediator with expertise in Ponzi scheme litigation – retired Judge Ronald Sabraw from JAMS. Again, briefs were exchanged before the parties met in Sacramento. The case did not settle on the first day of the second mediation, which was on March 17, 2022. After a deadlock in movement, the parties agreed to consider a mediator's proposal as a possible method that might move the discussions forward. On March 25, 2022, Judge Sabraw recommended that the Bank pay the class $14 million to settle approximately $55 million in unpaid investment claims owed by IMG. On April 1, 2022, the parties were informed by Judge Sabraw that both sides had accepted the mediator's proposal. The parties then drafted and executed a long-form settlement agreement in June 2022. (Brace Decl, ¶7.)

The experience of plaintiffs' counsel is set out in their declarations. Counsel and the representative plaintiffs have represented to the Court that the settlement reached was the product of arms-length bargaining. The Court has no reason to question the adversarial relationship between the Plaintiffs and the Defendant after 5 years of litigation, or to question their conclusion that the proposed settlement is in the best interest of the class. Given the sophistication and experience of plaintiffs' counsel, and the parties' representation to the Court that the settlement reached was the product of arms-length bargaining, the there is no basis to question that the proposed settlement is in the best interest of the class. See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### 3.    Adequate Relief

In determining whether a settlement agreement provides adequate relief for the class, the Court must "consider (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv- 02129-MMA; 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The Court should find that paying a prorated payment of approximately 17% settling class members net claimed loss is an effective method of distributing relief to the class for an economic loss that occurred in 2014 – over 8 years ago. Investments in real companies may be lost due to legitimate business risks outside the control of the investor. The current state of the stock market reveals the risks inherent in investing in real companies. Expecting a full recovery from a third-party bank after investing in a Ponzi scheme would fail to take into consideration any business or litigation risk. Jurors are often hard-pressed to feel sympathy for seasoned investors placing their money with a risky, fraudulent business to earn a high rate of return. It is unrealistic to expect any jury to shift 100% of the investors' financial risk to a bank doing business with the fraudster without exceptional proof of actual knowledge and substantial assistance. Jurors know that banks make money providing services to legitimate customers and legitimate banks generally have no motive to assume financial liability for a Ponzi or other fraud scheme in exchange for simple service fees. Again, the burden of proof is on the investors and the burden of persuasion is very high.

While Plaintiffs' counsel estimates that based on the IMG bankruptcy records the total claims could be worth up to $55 million, counsel recognizes that the Bank has legitimate defenses to the claims that risked reducing or even eliminating Plaintiffs' recovery at trial. In addition, class certification in a contested motion is far from certain. Denial of certification would result in additional delays on an already older case with aging class members needing some money now. Plaintiffs' counsel represents that, given the strength of Plaintiffs' claims and the Bank's potential exposure, the settlement and resulting distribution provides a strong result for the class. Based on

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

their experience, Plaintiffs' counsel asserts that settlement was in the best interest of the class given the real possibility of receiving nothing if the jury were to conclude that the Bank did not have knowledge of Deepal Wannakuwatte' s fraud scheme until the collapse of IMG and the arrest of Deepal.

There is no "glaring deficiency" in the amount of the settlement - $14 million dollars is a lot of money. Thus, while the settlement amount represents "more than the defendants feel those individuals are entitled to" and will potentially be "less than what some class members feel they deserve," the settlement offers class members the prospect of some recovery, instead of none. Officers for Justice 24 v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982).

**4.      Attorney's Fees of 30%**

With Court consent, the Plaintiffs will give notice to the class members that they will seek a 30% award for fees which may not be awarded and may be opposed by any class member at the Final Fairness Hearing. "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton, 327 F.3d at 969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). The Ninth Circuit has recognized two different methods for calculating reasonable attorney's fees in common fund cases: the lodestar method or the percentage-of- recovery method. Id. at 941-42. In the lodestar method, courts multiply the number of hours the prevailing party expended on the litigation by a reasonable hourly rate and grant a multiplier for the risks of receiving nothing for the time expended. Id. Under the percentage-of-recovery method, courts typically delineate 25% of the total settlement as the fee but may award 30% if the fee is justified because of special circumstances, such as the extra work needed after a successful appeal. The fee awarded will be dealt with at the time of the final fairness hearing but Plaintiffs request permission from the Court to inform the class that they will seek a 30% fee, which may be opposed and is not granted at this time.

Finally, the Court must consider whether the Settlement Agreement "treats class members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1    segments of the class." <u>Hudson v. Libre Tech, Inc.</u>, 2020 U.S Dist. LEXIS 84576, at *26 (S.D Cal.,

2    2020) (quoting <u>Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1079 (N.D. Cal., 2007). Here, the

3    Settlement Agreement does not improperly discriminate between any segments of the class, as all

4    class members are entitled to monetary relief based on their respective net loss. While the

5    Settlement Agreement allows Plaintiffs to seek an incentive award of $5,000 each, the Plaintiffs

6    will have to submit additional evidence documenting their time and effort spent on the case to

7    ensure that additional compensation above other class members is justified. The Court should retain

8    the discretion to award less than the requested $5,000 each if it finds that such an award is not

9    warranted. The Court should find that the Settlement Agreement treats class members equitably.

10   Fed. R. Civ. P. 23(e)(D).

### 5.        Remaining Staton Factors

12       The Court should also consider "the extent of the discovery completed . . . the presence of

13   government participation, and the reaction of class members to the proposed settlement." <u>Staton</u>,

14   327 F.3d at 959. The parties exchanged documents and engaged in more than 50 depositions taken

15   for use in both the JTS State Court Action and also in the Evans class action.  The depositions taken

16   and attended by Plaintiffs' counsel were sufficient to prepare the case for trial and to quantify the

17   risks of continued litigation sufficient to settle the case at the price selected by Judge Sabraw, the

18   mediator.

19       The seventh <u>Staton</u> factor, pertaining to government participation, also weighs in favor of

20   approval. <u>Staton</u>, 327 F.3d at 959. The Bank is complying with the Class Action Fairness Act

21   ("CAFA") by submitting the proposed settlement to the Office of the Comptroller of the Currency

22   ("OCC") within 10 days of this filing.  There is no reason to expect the OCC to intervene or

23   otherwise object to the settlement. The Bank will continue to monitor the OCC's involvement until

24   the final fairness hearing.

25       The eighth Staton factor, the reaction of the class members to the proposed settlement, is

26   not relevant currently because class members have not yet received notice of the settlement. <u>See</u>

27   <u>Staton</u>, 327 F.3d at 959. The Court therefore should find that the remaining <u>Staton</u> factors weigh in

28   favor of preliminary approval of the Settlement Agreement. In sum, the four factors that the Court

18

1  must evaluate under Rule 23(e) and the eight <u>Staton</u> factors, taken as a whole, weigh in favor of the

2  settlement. The Court should grant preliminary approval to start the process to end this drawn-out

3  litigation.

4      **E.      Rule 23(e) Notice Requirements**

5      Under Rule 23(e)(1)(B), "the court must direct notice in a reasonable manner to all class

6  members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). While there

7  are "no rigid rules to determine whether a settlement notice to class members satisfies constitutional

8  and Rule 23(e) requirements," <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 114 (2d Cir.

9  2005), notice of settlement--like any form of notice--must comply with due process requirements

10 under the Constitution. <u>See</u> Rubenstein, <u>4 Newberg on Class Actions</u> § 8:15, 5th ed.).

11     The notice must be "reasonably calculated, under all the circumstances, to apprise interested

12 parties of the pendency of the action and afford them an opportunity to present their objections."

13 <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314 (1950). While actual notice is not

14 required, the notice provided must be "reasonably certain to inform the absent members of the

15 plaintiff class." <u>Silber</u>, 18 F.3d at 1454 (citation omitted). For the reasons provided above in the

16 discussion of notice under Rule 23(c)(2), the Court should find that the Agreement's system for

17 providing notice of the settlement is reasonably calculated to provide notice to class members and

18 inform class members of their options under the agreement. Accordingly, the manner of notice and

19 the content of notice is sufficient to satisfy Rule 23(e).

20 **IV.    CONCLUSION**

21     The Plaintiffs' motion for preliminary certification of a conditional settlement class and

22 preliminary approval of the class action settlement should be granted. The class should be

23 provisionally certified for the purpose of settlement as:

24     "All Net Losers, including assignees, but excluding Net Losers who have already released

25 the Bank from IMG-related claims, and also excluding any governmental entities, any judge, justice

26 or judicial officer presiding over this matter, and the members of his or her immediate family, the

27 Bank, along with its corporate parents, subsidiaries and/or affiliates, successors, and attorneys of

28 any excluded Person or entity referenced above, and any Person acting on behalf of any excluded

1  Person or entity referenced above."

2  "Net Loser" is defined as any Settlement Class Member who suffered a Net Loss from

3  lending to or investing money in IMG's medical supply-related business(es), and "Net Loss" is

4  defined as: "[T]he total amount transferred by a Settlement Class Member to IMG minus the total

5  amount received back from IMG, including, but not limited to any return on investment, return of

6  principal, fees, and other payments by IMG to the Settlement Class Member.  For purposes of this

7  settlement, for each Participating Class Member, the Net Loss shall be the amount of the allowed

8  claim as reflected in the Claims Approval Order, provided that such allowed claim only includes

9  monies provided to IMG for the purpose of lending to or investing money in IMG's medical supply-

10  related business(es)."

11  The proposed settlement should be preliminarily approved as fair, just, reasonable, and

12  adequate to the members of the settlement class, subject to further consideration at the final fairness

13  hearing after distribution of notice to members of the settlement class.

14  For purposes of carrying out the terms of the settlement only: Ronald Evans, Joni Evans

15  and Dennis Treadaway should be appointed as the representatives of the settlement class and

16  provisionally found to be adequate representatives within the meaning of Federal Rule of Civil

17  Procedure 23.  Attorneys Robert L. Brace and Michael P. Denver should be provisionally found to

18  be fair and adequate representatives of the settlement class and appointed as class counsel for the

19  purpose of representing the settlement class conditionally certified in the Order.  The Beverly

20  Group should be appointed as the settlement administrator.

21  The form and content of the proposed Notice of Class Action Settlement should be

22  approved, except to the extent that it must be updated to reflect dates and deadlines specified in the

23  preliminary approval Order.

24  The Plaintiffs request that a final fairness hearing shall be set for hearing before this court

25  on Monday, November 7, 2022, at 1:30 p.m. in Courtroom 5 of the Robert T. Matsui United States

26  Courthouse, 501 I Street, Sacramento, California, to determine: whether the proposed settlement is

27  fair, reasonable, and adequate and should be approved by this court; whether the settlement class's

28  claims should be dismissed with prejudice and judgment entered upon final approval of the

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

settlement; whether final class certification is appropriate; and to consider class counsel's applications for attorney's fees, costs, and an incentive award to each Plaintiff.

No later than thirty-five days before the final fairness hearing, class counsel will file with this Court a petition for an award of attorney's fees and costs. Any objections or responses to the petition should be filed no later than twenty-one days before the final fairness hearing. Class counsel requests permission to file a reply to any objections no later than eleven days before the final fairness hearing.

Dated: June 24, 2022                                      Respectfully submitted,


By    _/s/ Robert L. Brace_____                By    _/s/ Michael P. Denver_____
        Robert L. Brace                                            Michael P. Denver
        Attorneys for Plaintiff                                    Attorneys for Plaintiff

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**