UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RONALD C. EVANS, JOAN M. EVANS, DENNIS TREADAWAY, and all other similarly situated,

            Plaintiffs,

     v.

ZIONS BANCORPORATION, N.A., dba California Bank and Trust,

            Defendant.

ZIONS BANCORPORATION, N.A.,

            Third-Party Plaintiff,

     v.

JTS, LARRY CARTER, JACK SWEIGART AND BRISTOL INSURANCE,

            Third-Party Defendants.

No. 2:17-cv-01123 WBS DB

MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

----oo0oo----

          Plaintiffs Ronald Evans, Joan Evans, and Dennis

1

Treadaway brought this putative class action against defendant
Zions Bancorporation, d/b/a California Bank and Trust ("CB&T"),
asserting claims based on CB&T's alleged acquiescence in and
provision of support for a fraud scheme perpetrated by one of its
clients against putative class members.  Presently before the
court is plaintiffs' motion for preliminary approval of a class
action settlement.  (Mot. (Docket No. 98).)  CB&T has filed a
statement of non-opposition to the preliminary approval.  (Docket
No. 99.)

I.    Factual and Procedural Background[1]

       In 2014, Deepal Wannakuwatte admitted to defrauding
lenders to a fraudulent medical supply business he had operated,
International Manufacturing Group, Inc. ("IMG"), via a Ponzi
scheme he had operated since 2002, and pled guilty to wire fraud.
(Mot. at 7; First Amended Complaint ("FAC") at ¶ 2.)  During the
scheme, Wannakuwatte and IMG banked primarily at CB&T, which
issued several loans to the scheme and to Wannakuwatte.  (Id. at
¶ 3.)  Plaintiffs allege that CB&T discovered the fraud by 2009
and stopped lending to Wannakuwatte and IMG but retained IMG as a
banking client.  (Id. at ¶ 7.)  They further allege that even
after that point, CB&T officials continued to help facilitate the
scheme by offering extensions on IMG's loan payments and
overlooking defaults.  (See id. at ¶¶ 11-15.)

       Plaintiffs brought this lawsuit on behalf of a putative
class of investors and lenders who were defrauded by Wannakuwatte
and IMG, based on CB&T's alleged complicity in the Ponzi scheme.

---

[1]    All facts recited herein are as alleged by plaintiffs.

1  (See FAC.)  Plaintiffs now seek preliminary approval of the

2  parties' stipulated class-wide settlement, pursuant to Federal

3  Rule of Civil Procedure 23(e).  (Mot.)

4  II.  Discussion

5          Rule 23(e) provides that "[t]he claims, issues, or

6  defenses of a certified class may be settled . . . only with the

7  court's approval."  Fed. R. Civ. P. 23(e).  This Order is the

8  first step in that process and analyzes only whether the proposed

9  class action settlement deserves preliminary approval.  See

10  Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal.

11  2010) (Shubb, J.).  Preliminary approval authorizes the parties

12  to give notice to putative class members of the settlement

13  agreement and lays the groundwork for a future fairness hearing,

14  at which the court will hear objections to (1) the treatment of

15  this litigation as a class action and (2) the terms of the

16  settlement.  See id.; Diaz v. Tr. Territory of Pac. Islands, 876

17  F.2d 1401, 1408 (9th Cir. 1989).  The court will reach a final

18  determination as to whether the parties should be allowed to

19  settle the class action on their proposed terms after that

20  hearing.

21          Where the parties reach a settlement agreement prior to

22  class certification, the court must first assess whether a class

23  exists.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

24  "Such attention is of vital importance, for a court asked to

25  certify a settlement class will lack the opportunity, present

26  when a case is litigated, to adjust the class, informed by the

27  proceedings as they unfold."  Id. (quoting Amchem Prods. Inc. v.

28  Windsor, 521 U.S. 591, 620 (1997)).  The parties cannot "agree to

3

1   certify a class that clearly leaves any one requirement

2   unfulfilled," and consequently the court cannot blindly rely on

3   the fact that the parties have stipulated that a class exists for

4   purposes of settlement.  See Amchem, 521 U.S. at 621-22.

5        "Second, the district court must carefully consider

6   'whether a proposed settlement is fundamentally fair, adequate,

7   and reasonable,' recognizing that '[i]t is the settlement taken

8   as a whole, rather than the individual component parts, that must

9   be examined for overall fairness . . . .'"  Staton, 327 F.3d at

10  952 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

11  Cir. 1998), overruled on other grounds by Wal-Mart Stores, Inc.

12  v. Dukes, 564 U.S. 338 (2011)).

13       A.   Class Certification

14            The proposed class is defined as follows:

15       All Net Losers, including assignees, but excluding Net
         Losers who have already released the Bank from IMG-
16       related claims, and also excluding any governmental
         entities, any judge, justice or judicial officer
17       presiding over this matter, and the members of his or
         her immediate family, the Bank, along with its
18       corporate parents, subsidiaries and/or affiliates,
         successors, and attorneys of any excluded Person or
19       entity referenced above, and any Person acting on
         behalf of any excluded Person or entity referenced
20       above. . . .

21       "Net Loser" means any Settlement Class Member who
         suffered a Net Loss from lending to or investing money
22       in IMG's medical supply-related business(es). . . .

23       "Net Loss" means the total amount transferred by a
         Settlement Class Member to IMG minus the total amount
24       received back from IMG, including, but not limited to
         any return on investment, return of principal, fees,
25       and other payments by IMG to the Settlement Class
         Member.  For purposes of this settlement, for each
26       Participating Class Member, the Net Loss shall be the
         amount of the allowed claim as reflected in the Claims
27       Approval Order, provided that such allowed claim only
         includes monies provided to IMG for the purpose of
28       lending to or investing money in IMG's medical supply-

4

1   related business(es).

2   (Settlement Agreement ("Agreement") at §§ 1.11, 1.12, 1.26

3   (Docket No. 98-1 at 23, 29); see Mot. at 25-26.)

4        To be certified, the putative class must satisfy both

5   the requirements of Federal rule of Civil Procedure 23(a) and

6   (b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir.

7   2013).

8        1.   Rule 23(a)

9        Rule 23(a) restricts class actions to cases where:

10       (1) the class is so numerous that joinder of all
11       members is impracticable; (2) there are questions of
         law or fact common to the class; (3) the claims or
         defenses of the representative parties are typical of
12       the claims or defenses of the class; and (4) the
         representative parties will fairly and adequately
13       protect the interests of the class.

14  Fed. R. Civ. P. 23(a).

15            a.   Numerosity

16       "A proposed class of at least forty members

17  presumptively satisfies the numerosity requirement."  Avilez v.

18  Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012),

19  vacated on other grounds, 596 F. App'x 579 (9th Cir. 2015); see

20  also, e.g., Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294,

21  300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found

22  the numerosity requirement satisfied when the class comprises 40

23  or more members.").  Here, plaintiffs estimate that the proposed

24  class will contain sixty members, based on the number of

25  investors and lenders who are believed to have been victims of

26  the Ponzi scheme.  (See Mot. at 11; Decl. of Robert L. Brace

27  ("Brace Decl.") at ¶ 25 (Docket No. 98-1); Agreement at § 3.2.)

28  This satisfies the numerosity requirement.

1

                b.    <u>Commonality</u>

2

        Commonality requires that the class members' claims

3 "depend upon a common contention" that is "capable of classwide

4 resolution -- which means that determination of its truth or

5 falsity will resolve an issue that is central to the validity of

6 each one of the claims in one stroke." <u>Wal-Mart Stores</u>, 564 U.S.

7 at 350.  "[A]ll questions of fact and law need not be common to

8 satisfy the rule," and the "existence of shared legal issues with

9 divergent factual predicates is sufficient, as is a common core

10 of salient facts coupled with disparate legal remedies within the

11 class." <u>Hanlon</u>, 150 F.3d at 1019.

12

        The proposed class includes, with the exception of

13 certain conflicted parties such as judges overseeing the action,

14 all individuals who suffered financial loss as a result of

15 lending to or investing in IMG's medical supply business. (<u>See</u>

16 Mot. at 25-26.)  Plaintiffs contend the claims asserted on behalf

17 of this class all depend on common questions of law and fact

18 because all claims are premised on the issue of whether CB&T knew

19 Wannakuwatte was using IMG to operate a Ponzi scheme. (<u>Id.</u> at

20 11-12.)  The named plaintiffs share the characteristics of this

21 proposed class and the issues to presented by the suit.  Due to

22 the common core of salient facts and legal contentions, the

23 proposed class meets the commonality requirement.

24

                c.   <u>Typicality</u>

25

        Typicality requires that named plaintiffs have claims

26 "reasonably coextensive with those of absent class members," but

27 their claims do not have to be "substantially identical."

28 <u>Hanlon</u>, 150 F.3d at 1020.  The test for typicality "is whether

1    other members have the same or similar injury, whether the action

2    is based on conduct which is not unique to the named plaintiffs,

3    and whether other class members have been injured by the same

4    course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497,

5    508 (9th Cir. 1992) (citation omitted).

6         The named plaintiffs allege they were defrauded via a

7    Ponzi scheme run by Wannakuwatte and IMG and consequently lost

8    money they had lent to or invested in IMG's medical supply

9    business.  These alleged injuries also define the putative class.

10   Although the amount lost by each class member varies, the basis

11   for their injuries and the parties responsible for those injuries

12   are alleged to be identical for the named plaintiffs and all

13   putative class members.  The proposed class therefore meets the

14   typicality requirement.

15              d.   Adequacy of Representation

16        To resolve the question of adequacy, the court must

17   make two inquiries: "(1) [D]o the named plaintiffs and their

18   counsel have any conflicts of interest with other class members

19   and (2) will the named plaintiffs and their counsel prosecute the

20   action vigorously on behalf of the class?" Hanlon, 150 F.3d at

21   1020.  These questions involve consideration of several factors,

22   including "the qualifications of counsel for the representatives,

23   an absence of antagonism, a sharing of interests between

24   representatives and absentees, and the unlikelihood that the suit

25   is collusive." Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th

26   Cir. 1992).

27              i.   Conflicts of Interest

28        First, there do not appear to be any conflicts of

1    interest.  The named plaintiffs' interests are generally aligned

2    with the putative class members'.  The putative class members

3    suffered injuries similar or identical to those suffered by the

4    named plaintiffs, and the definition of the class is narrowly

5    tailored and aligns with the class members' interests.  See

6    Amchem, 521 U.S. at 625-26 ("[A] class representative must be

7    part of the class and possess the same interest and suffer the

8    same injury as the class members."); Murillo, 266 F.R.D. at 476

9    (finding that an appropriate class definition ensured that "the

10   potential for conflicting interests will remain low while the

11   likelihood of shared interests remains high").

12            In this case, plaintiffs represent that the settlement

13   would provide an incentive award of $5,000 to each named

14   plaintiff.  (Brace Decl. at ¶ 30.)  While the provision of an

15   incentive award raises the possibility that the named plaintiffs'

16   interest in receiving that award will cause their interests to

17   diverge from the class's interest in a fair settlement, the Ninth

18   Circuit has specifically approved the award of "reasonable

19   incentive payments."  Staton, 327 F.3d at 977-78.  The court,

20   however, must "scrutinize carefully the awards so that they do

21   not undermine the adequacy of the class representatives."

22   Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th

23   Cir. 2013).

24            Courts have generally found that $5,000 incentive

25   payments are reasonable.  Hopson v. Hanesbrands Inc., 08-cv-0844

26   EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (citing In

27   re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir.

28   2000)); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp.

525, 535 (E.D. Pa. 1990); <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal. 2008) (Shubb, J.).  Here, the incentive awards are $5,000 to each named plaintiff and are to be paid separate and apart from the settlement fund.  (See Mot. at 14-15; Brace Decl. at ¶ 30.)

Plaintiffs estimate that, after deduction of costs, attorneys' fees, and the incentive awards, the remaining settlement funds will be $9 million.  (Mot. at 9.)  If none of the 60 class members opt out, each member would receive an average of $150,000 from the settlement fund, which far exceeds the value of the incentive payments.  That the incentive payments are likely to represent a small fraction of the named plaintiffs' overall recovery indicates that the payments are unlikely to cause their interests to diverge from those of the class.  Accordingly, the court preliminarily finds that the proposed incentive awards do not render the named plaintiffs inadequate representatives of the class.

ii.  <u>Vigorous Prosecution</u>

The second prong of the adequacy inquiry examines the vigor with which the named plaintiffs and their counsel have pursued the common claims.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation."  <u>Hanlon</u>, 150 F.3d at 1021.

Plaintiffs' counsel have significant experience litigating class action suits involving Ponzi schemes and have litigated numerous such cases against banks for aiding and

abetting. (See Brace Decl. at ¶¶ 15-20; Decl. of Michael P. Denver ("Denver Decl.") at ¶¶ 3-5 (Docket No. 98-2).) Plaintiffs' attorney Robert Brace has previously served as class counsel in class actions involving Ponzi schemes and has recovered hundreds of millions of dollars for class members in previous class actions. (Brace Decl. at ¶¶ 16-17.)  The court finds no reason to doubt that plaintiffs' attorneys are qualified to conduct the proposed litigation and assess the value of the settlement.

In addition, plaintiffs' counsel seem to have seriously considered the risks of continued litigation in deciding to settle this action.  They have aggressively litigated the case, dedicating thousands of hours, filing and briefing numerous motions, engaging in extensive discovery, and participating in two mediations. (See id. at ¶¶ 1-7; Denver Decl. at ¶ 9; Mot. at 7-8.)  Plaintiffs' counsel were therefore informed about the strengths and weaknesses of this case when they decided to accept the terms of the mediator's proposed settlement agreement. (See Brace Decl. at ¶ 7; Mot. at 8.)

Accordingly, the court concludes that the absence of conflicts of interest and the vigor of counsel's representation satisfy Rule 23(a)'s adequacy assessment for the purpose of preliminary approval.

2.   Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). Leyva, 716 F.3d at 512.  Plaintiffs seek

10

certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

a.   <u>Predominance</u>

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues."  <u>Murillo</u>, 266 F.R.D. at 476 (citing <u>Hanlon</u>, 150 F.3d at 1022); <u>see also</u> <u>Amchem</u>, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

The class members' contentions appear to be similar, if not identical.  Although there are differences in the amount of funds lent to or invested in IMG by class members, there is no indication that those variations are "sufficiently substantive to predominate over the shared claims."  <u>See</u> <u>Murillo</u>, 266 F.R.D. at 476 (quoting <u>Hanlon</u>, 150 F.3d at 1022).  Accordingly, the court finds that common questions of law and fact predominate over the class members' claims.

b.   <u>Superiority</u>

Rule 23(b)(3) also sets forth four non-exhaustive factors to consider in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

11

1         (A) the class members' interests in individually
2   controlling the prosecution or defense of separate
    actions; (B) the extent and nature of any litigation
3   concerning the controversy already begun by or against
    class members; (C) the desirability or undesirability
4   of concentrating the litigation of the claims in the
    particular forum; and (D) the likely difficulties in
    managing a class action.
5

6   Fed. R. Civ. P. 23(b)(3).  The parties settled this action prior

7   to certification, making factors (C) and (D) inapplicable.  See

8   Murillo, 266 F.R.D. at 477 (citing Amchem, 521 U.S. at 620).

9         Here, although class members' individual claims may be

10  valuable, it is unclear that they would outweigh the costs of

11  litigation given the complexity of the case.  Moreover, even

12  though class members' claims arise from events that concluded in

13  2014, only one other non-bankruptcy litigation has been filed

14  against CB&T (which has already settled), (see Mot. at 16-17),

15  indicating that class members do not intend to pursue individual

16  litigation, though objectors at the final fairness hearing may

17  reveal otherwise.  See Alberto, 252 F.R.D. at 664.

18        At this stage, the class action device appears to be

19  the superior method for adjudicating this controversy.

20       3.  Rule 23(c)(2)

21        If the court certifies a class under Rule 23(b)(3), it

22  "must direct to class members the best notice that is practicable

23  under the circumstances, including individual notice to all

24  members who can be identified through reasonable effort."  Fed.

25  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

26  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

27  651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

28  417 U.S. 156, 172-77 (1974)).  Although that notice must be

1  "reasonably certain to inform the absent members of the plaintiff

2  class," actual notice is not required.  Silber v. Mabon, 18 F.3d

3  1449, 1454 (9th Cir. 1994) (citation omitted).

4        The settlement agreement provides that the Beverly

5  Group will serve as claims administrator and will provide notice

6  to the class.  (Agreement at §§ 3.2, 4.2.)  The administrator

7  already possesses what is believed to be the last known address

8  for each class member and will utilize that list to provide

9  notice.  (Id. at § 3.2.)  The administrator will also receive and

10  catalogue any opt-outs.  (Id. at § 4.2.)  In addition to mailing

11  the notice to known class members within ten days of this Order,

12  the notice will be posted on plaintiffs' counsel's website and

13  published in the Sacramento Bee.  (Brace Decl. at ¶ 38.)

14        Plaintiffs have provided the court with a proposed

15  notice to class members.  (Docket No. 98-1 at 87-100.)  It

16  explains the proceedings; defines the scope of the class; informs

17  class members who did not receive the notice by mail that they

18  are required to submit a claim; informs class members of the

19  binding effect of the class action; describes the procedure for

20  opting out and objecting; provides the time and date of the

21  fairness hearing; and directs interested parties to more detailed

22  information on the settlement website.  (Id.)  The notice

23  explains what the settlement provides and how much each class

24  member can expect to receive in compensation.  (Id. at 94-95.)

25  The content of the notice therefore satisfies Rule 23(c)(2)(B).

26  See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C.

27  v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is

28  satisfactory if it 'generally describes the terms of the

1  settlement in sufficient detail to alert those with adverse

2  viewpoints to investigate and to come forward and be heard.'")

3  (quoting <u>Mendoza v. Tucson Sch. Dist. No. 1</u>, 623 F.2d 1338, 1352

4  (9th Cir. 1980)).

5       Under the circumstances of this case, the court is

6  satisfied that this system is reasonably calculated to provide

7  notice to class members and is the best form of notice available

8  under the circumstances as required under Rule 23(c)(2).

9       B.   <u>Preliminary Settlement Approval</u>

10      After determining that the proposed class satisfies the

11  requirements of Rule 23(a) and (b), the court must determine

12  whether the terms of the parties' settlement appear fair,

13  adequate, and reasonable.  <u>See</u> Fed. R. Civ. P. 23(e)(2); <u>Hanlon</u>,

14  150 F.3d at 1026.  This process requires the court to "balance a

15  number of factors," including:

16          the strength of the plaintiff[s'] case; the risk,
            expense, complexity, and likely duration of further
17          litigation; the risk of maintaining class action
            status throughout the trial; the amount offered in
18          settlement; the extent of discovery completed and the
            stage of the proceedings; the experience and views of
19          counsel; the presence of a governmental participant;
            and the reaction of the class members to the proposed
20          settlement.

21  <u>Hanlon</u>, 150 F.3d at 1026.

22      Many of these factors cannot be considered until the

23  final fairness hearing, so the court need only conduct a

24  preliminary review at this time to resolve any "glaring

25  deficiencies" in the settlement agreement before authorizing

26  notice to class members.  <u>Ontiveros v. Zamora</u>, 2:08-cv-00567 WBS

27  DAD, 2014 WL 3057506, at *12 (E.D. Cal. July 7, 2014) (citing

28  <u>Murillo</u>, 266 F.R.D. at 478).  This requires the court only to

1  "determine whether the proposed settlement is within the range of

2  possible approval," which in turn requires consideration of

3  "whether the proposed settlement discloses grounds to doubt its

4  fairness or other obvious deficiencies, such as unduly

5  preferential treatment of class representatives or segments of

6  the class, or excessive compensation of attorneys."  Murillo, 266

7  F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621 n.3

8  (7th Cir. 1982); West v. Circle K Stores, Inc., 04-cv-00438 WBS

9  GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)).

10           1.   Negotiation of the Settlement Agreement

11           Courts often begin by examining the process that led to

12  the settlement's terms to ensure that those terms are "the result

13  of vigorous, arms-length bargaining" and then turn to the

14  substantive terms of the agreement.  See, e.g., id.; In re

15  Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

16  2007) ("[P]reliminary approval of a settlement has both a

17  procedural and a substantive component.").  Plaintiffs' counsel

18  represent that the parties reached the settlement after 5 years

19  of litigation, two arms-length mediations, and thorough motions

20  practice, including an appeal to the Ninth Circuit.  (Mot. at 7-

21  8, 21; Brace Decl. ¶¶ 3-7, 19); see La Fleur v. Med. Mgmt. Int'l,

22  Inc., 5:13-cv-00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25,

23  2014) ("Settlements reached with the help of a mediator are

24  likely non-collusive.").

25           The extent of this process indicates that plaintiffs'

26  counsel's decision to accept the settlement agreement takes into

27  account the risks and delays associated with continuing

28  litigating.  In light of these considerations, the court finds no

1  reason to doubt the parties' representations that the settlement

2  was the result of vigorous, arms-length bargaining.

3          2.  <u>Amount Recovered and Distribution</u>

4        In determining whether a settlement agreement is

5  substantively fair to the class, the court must balance the value

6  of expected recovery against the value of the settlement offer.

7  <u>See Tableware</u>, 484 F. Supp. 2d at 1080.  This inquiry may involve

8  consideration of the uncertainty class members would face if the

9  case were litigated to trial.  <u>See Ontiveros</u>, 2014 WL 3057506, at

10  *14.

11        Although counsel for plaintiffs estimates that the

12  class's total claims could be worth approximately $55 million, he

13  states that CB&T "has legitimate defenses to those claims" which

14  "could reduce or even eliminate Plaintiffs' recovery at trial."

15  (Brace Decl. at ¶ 41.)  The proposed $14 million settlement is

16  more than 25% of that best-case recovery.

17        The court notes that the settlement agreement requires

18  class members who are not directly notified of the settlement --

19  i.e., those not already known to plaintiffs and the settlement

20  administrator -- by mail to take the affirmative step of opting

21  in to receive payment, and requires all class members to out if

22  they do not wish to be part of the settlement class.  (Docket No.

23  98-1 at 89.)  Class members who are directly notified and do not

24  request to be excluded will release defendant from any underlying

25  claims.  (<u>Id.</u>)

26        Nevertheless, there are many uncertainties associated

27  with pursuing litigation that justify this recovery.  Plaintiffs'

28  counsel contend that plaintiffs would have been required to prove

1  CB&T was aware IMG was using the bank to operate a Ponzi scheme

2  to defraud investors.  (Mot. at 7.)  They also contend that class

3  certification on a contested motion would have been "far from

4  certain" and suggests denial would have led to one or more

5  additional appeals.  (See Brace Decl. at ¶ 41.)

6         In light of the uncertainties associated with pursuing

7  litigation, the court will grant preliminary approval to the

8  settlement because it is "within the range of possible approval."

9  Murillo, 266 F.R.D. at 479 (quoting Gautreaux, 690 F.2d at 621

10  n.3).

11             3.   Attorney's Fees

12         If a negotiated class action settlement includes an

13  award of attorney's fees, that fee award must be evaluated in the

14  overall context of the settlement.  Knisley v. Network Assocs.,

15  312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy

16  Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).

17  The court "ha[s] an independent obligation to ensure that the

18  award, like the settlement itself, is reasonable, even if the

19  parties have already agreed to an amount."  In re Bluetooth

20  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

21         The settlement agreement provides that plaintiffs'

22  counsel will seek a fee award of up to 30% of the net settlement

23  payment remaining after approved litigation costs, costs for the

24  claims administrator, and incentive payments to the named

25  plaintiffs have been deducted.  (Agreement at § 3.6.)  Although

26  plaintiffs have not provided an estimate of how much those fees

27  would be, based on estimated cost figures provided by plaintiffs,

28  the court estimates that a fee award of 30% would equal roughly

1   $4 million.[2]  Attorney's fees are to be paid from the settlement

2   fund.  (Id.; Brace Decl. ¶ 10.)  If the court does not approve

3   the fee award in whole or in part, that will not prevent the

4   settlement agreement from becoming effective or be grounds for

5   termination.  (Agreement at § 3.6.)

6         In deciding the attorney's fees motion, the court will

7   have the opportunity to assess whether the requested fee award is

8   reasonable by multiplying a reasonable hourly rate by the number

9   of hours counsel reasonably expended.  See Van Gerwen v. Gurantee

10  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of

11  this lodestar calculation, the court may take into account

12  factors such as the "degree of success" or "results obtained" by

13  plaintiffs' counsel.  See Cunningham v. Cnty. of Los Angeles, 879

14  F.2d 481, 488 (9th Cir. 1988).  If the court, in ruling on the

15  fees motion, finds that the amount of the settlement warrants a

16  fee award at a rate lower than what plaintiffs' counsel requests,

17  then it will reduce the award accordingly.  The court will

18  therefore not evaluate the fee award at length here in

19  considering whether the settlement is adequate.

20        IT IS THEREFORE ORDERED that plaintiffs' motion for

21  preliminary certification of a conditional settlement class and

22  preliminary approval of the class action settlement be, and the

23  same hereby is, GRANTED.

24  _____

25       [2]  Plaintiffs estimate that litigation costs will not
    exceed $200,000, that settlement administration costs will be
26  approximately $150,000, and that the three named plaintiffs will
    each receive $5,000.  (Mot. at 9; Brace Decl. at ¶ 10.)  After
27  deducting these estimated payments from the proposed $14 million
    settlement, (see id.), the settlement fund would contain $13.635
28  million, 30% of which equals $4.09 million.

1          IT IS FURTHER ORDERED that:

2     (1)  The class is provisionally certified for the purpose of

3          settlement as:

4               "All Net Losers, including assignees, but

5          excluding Net Losers who have already released the Bank

6          from IMG-related claims, and also excluding any

7          governmental entities, any judge, justice or judicial

8          officer presiding over this matter, and the members of

9          his or her immediate family, the Bank, along with its

10         corporate parents, subsidiaries and/or affiliates,

11         successors, and attorneys of any excluded Person or

12         entity referenced above, and any Person acting on

13         behalf of any excluded Person or entity referenced

14         above.

15              'Net Loser' is defined as any Settlement Class

16         Member who suffered a Net Loss from lending to or

17         investing money in IMG's medical supply-related

18         business(es), and 'Net Loss' is defined as: '[T]he

19         total amount transferred by a Settlement Class Member

20         to IMG minus the total amount received back from IMG,

21         including, but not limited to any return on investment,

22         return of principal, fees, and other payments by IMG to

23         the Settlement Class Member.  For purposes of this

24         settlement, for each Participating Class Member, the

25         Net Loss shall be the amount of the allowed claim as

26         reflected in the Claims Approval Order, provided that

27         such allowed claim only includes monies provided to IMG

28         for the purpose of lending to or investing money in

1   IMG's medical supply-related business(es).'";

2   (2)   The proposed settlement is preliminarily approved as
3   fair, just, reasonable, and adequate to the members of
4   the settlement class, subject to further consideration
5   at the final fairness hearing after distribution of
6   notice to members of the settlement class;

7   (3)   For purposes of carrying out the terms of the
8   settlement only:

9   (a)   Ronald Evans, Joan Evans, and Dennis Treadaway are
10   appointed as the representatives of the settlement
11   class and are provisionally found to be adequate
12   representatives within the meaning of Federal Rule
13   of Civil Procedure 23;

14   (b)   Attorneys Robert L. Brace and Michael P. Denver
15   are provisionally found to be fair and adequate
16   representatives of the settlement class and are
17   appointed as class counsel for the purpose of
18   representing the settlement class conditionally
19   certified in this Order;

20   (4)   The Beverly Group is appointed as the settlement
21   administrator;

22   (5)   The form and content of the proposed Notice of Class
23   Action Settlement is approved, except to the extent
24   that it must be updated to reflect dates and deadlines
25   specified in this preliminary approval Order.  The
26   Notice shall also inform recipients that it is possible
27   that the Final Fairness Hearing on November 7, 2022
28   will be held remotely, so, in the weeks prior to the

1    Hearing, Notice recipients should check Plaintiffs'

2    Counsel's website, www.Rusty.Lawyer, for updates and

3    instructions on how to attend remotely, if applicable;

4    (6)  No later than ten (10) calendar days from the date of

5         this Order, the Beverly Group shall mail the Notice of

6         Class Action Settlement to all known members of the

7         class, the Notice shall be posted on counsel's website

8         at www.Rusty.Lawyer, and a short form notice shall be

9         published one time in the <u>Sacramento Bee</u>;

10   (7)  No later than thirty (30) days from the date the Notice

11        is mailed, any member of the settlement class who

12        intends to object to, comment upon, or opt out of the

13        settlement shall mail written notice of that intent to

14        the Beverly Group pursuant to the instructions in the

15        Notice of Class Action Settlement;

16   (8)  A final fairness hearing shall be set to occur before

17        this Court on Monday, November 7, 2022, at 1:30 p.m. in

18        Courtroom 5 of the Robert T. Matsui United States

19        Courthouse, 501 I Street, Sacramento, California, to

20        determine whether the proposed settlement is fair,

21        reasonable, and adequate and should be approved by this

22        court; whether the settlement class's claims should be

23        dismissed with prejudice and judgment entered upon

24        final approval of the settlement; whether final class

25        certification is appropriate; and to consider class

26        counsel's applications for attorney's fees, costs, and

27        an incentive award to each class representative;

28   (9)  No later than thirty-five (35) days before the final

1                 fairness hearing, class counsel shall file with this

2                 court a petition for an award of attorney's fees and

3                 costs.  Any objections or responses to the petition

4                 should be filed no later than twenty-one (21) days

5                 before the final fairness hearing.  Class counsel may

6                 file a reply to any objections no later than eleven

7                 (11) days before the final fairness hearing;

8     (10) No later than thirty-five (35) days before the final

9                 fairness hearing, class counsel shall file and serve

10                 upon the court and defendant's counsel all papers in

11                 support of final approval of the settlement and the

12                 incentive award requested for the class

13                 representatives.  Any objections or responses to the

14                 motion should be filed no later than twenty-one (21)

15                 days before the final fairness hearing.  Class counsel

16                 may file a reply to any objections no later than eleven

17                 (11) days before the final fairness hearing;

18     (11) No later than thirty-five (35) days before the final

19                 fairness hearing, the Beverly Group shall prepare, and

20                 class counsel shall file and serve upon the court and

21                 defendant's counsel, a declaration setting forth the

22                 services rendered, proof of mailing, a list of all

23                 class members who have opted out of the settlement, or

24                 the amount of the class member's adjudicated claim;

25     (12) Any person who has standing to object to the terms of

26                 the proposed settlement may themselves appear at the

27                 final fairness hearing or appear through counsel and be

28                 heard to the extent allowed by the court in support of,

1          or in opposition to, (a) the fairness, reasonableness,

2          and adequacy of the proposed settlement; (b) the

3          requested award of attorney's fees, reimbursement of

4          costs, and incentive award to the class

5          representatives; and/or (c) the propriety of class

6          certification.  To be heard in opposition at the final

7          fairness hearing, a person must, no later than sixty

8          (60) days from the date this Order is signed, (a) serve

9          by hand or through the mails written notice of his or

10          her intention to appear, stating the name and case

11          number of this action and each objection and the basis

12          therefor, together with copies of any papers and

13          briefs, upon class counsel and counsel for defendant;

14          and (b) file said appearance, objections, papers, and

15          briefs with the court, together with proof of service

16          of all such documents upon counsel for the parties.

17          Responses to any such objections shall be

18          served by hand or through the mails on the objectors,

19          or on the objector's counsel if there is any, and filed

20          with the court no later than fourteen (14) calendar

21          days before the final fairness hearing.  Objectors may

22          file optional replies no later than seven (7) calendar

23          days before the final fairness hearing in the same

24          manner described above.  Any settlement class member

25          who does not make his or her objection in the manner

26          provided herein shall be deemed to have waived such

27          objection and shall forever be foreclosed from

28          objecting to the fairness or adequacy of the proposed

23

settlement, the judgment entered, and the award of attorney's fees, costs, and an incentive award to the class representative unless otherwise ordered by this court;

(13) Pending final determination of whether the settlement should be ultimately approved, the court preliminary enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

IT IS SO ORDERED.

Dated: July 29,2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE