1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   RONALD C. EVANS, JOAN M. EVANS,      No. 2:17-cv-01123 WBS DB
     DENNIS TREADAWAY, and all other
13   similarly situated,

14              Plaintiffs,

15        v.                             MEMORANDUM AND ORDER RE:
                                         MOTION FOR FINAL APPROVAL OF
16   ZIONS BANCORPORATION, N.A., dba     CLASS ACTION SETTLEMENT AND
     California Bank and Trust,          MOTION FOR ATTORNEYS' FEES,
17                                       COSTS, AND REPRESENTATIVE
                Defendant.               SERVICE PAYMENT
18

19   ZIONS BANCORPORATION, N.A.,

20              Third-Party
                Plaintiff,
21
          v.
22
     JTS, LARRY CARTER, JACK SWEIGART
23   AND BRISTOL INSURANCE,

24              Third-Party
                Defendants.
25

26                        ----oo0oo----

27        Plaintiffs Ronald Evans, Joan Evans, and Dennis

28   Treadaway brought this putative class action against

                               1

1    defendant Zions Bancorporation, d/b/a California Bank and

2    Trust ("CB&T"), asserting claims based on CB&T's alleged

3    acquiescence in and provision of support for a fraud scheme

4    perpetrated by one of its clients against putative class

5    members.  On August 1, 2022, the court granted plaintiffs'

6    unopposed motion for preliminary approval of class action

7    settlement.  (See Order Granting Preliminary Approval

8    (Docket No. 101).)  Plaintiffs now move unopposed for final

9    approval of the parties' class action settlement and

10   attorneys' fees, costs, and a class representative service

11   payment.  (See Docket No. 102.)  The court held a hearing on

12   November 7, 2022.  No class members appeared at the hearing

13   to object to or to opt out of the settlement

14   I.   Discussion[1]

15        The Ninth Circuit has declared a strong judicial policy

16   favoring settlement of class actions.  Class Plaintiffs v. City

17   of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

18   Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

19   ("We put a good deal of stock in the product of an arms-length,

20   non-collusive, negotiated resolution[.]") (citation omitted).

21   Rule 23(e) provides that "[t]he claims, issues, or defenses of a

22   certified class may be settled . . . only with the court's

23   approval."  Fed. R. Civ. P. 23(e).

24        "Approval under 23(e) involves a two-step process in

25

26        [1]   The court previously recited the factual and procedural
     background in its order granting plaintiff's unopposed motion for
27   preliminary approval of the class action settlement.  (See Order
     Granting Preliminary Approval at 2-3.)  Accordingly, the court
28   will refrain from doing so again.

2

1  which the Court first determines whether a proposed class action

2  settlement deserves preliminary approval and then, after notice

3  is given to class members, whether final approval is warranted."

4  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

5  525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

6  § 30.41 (1995)).  This court satisfied step one by granting

7  plaintiff's unopposed motion for preliminary approval of class

8  action settlement on July 29, 2022.  (Docket No. 101.)  Now,

9  following notice to the class members, the court will consider

10  whether final approval is merited by evaluating: (1) the

11  treatment of this litigation as a class action and (2) the terms

12  of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

13  876 F.2d 1401, 1408 (9th Cir. 1989).

14      A.   Class Certification

15      A class action will be certified only if it meets Rule

16  23(a)'s four prerequisites and fits within one of Rule 23(b)'s

17  three subdivisions.  Fed. R. Civ. P. 23(a)-(b).  Although a

18  district court has discretion in determining whether the moving

19  party has satisfied each Rule 23 requirement, the court must

20  conduct a rigorous inquiry before certifying a class.  See

21  Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen. Tel. Co. of

22  Sw. v. Falcon, 457 U.S. 147, 161 (1982).

23          1.   Rule 23(a)

24      Rule 23(a) restricts class actions to cases where:
    (1) the class is so numerous that joinder of all
25      members is impracticable; (2) there are questions
    of law or fact common to the class; (3) the claims
26      or defenses of the representative parties are
    typical of the claims or defenses of the class;
27      and (4) the representative parties will fairly and

28

1  |  adequately protect the interests of the class.

2  |  Fed. R. Civ. P. 23(a).  These requirements are commonly referred

3  |  to as numerosity, commonality, typicality, and adequacy of

4  |  representation.  In the court's order granting preliminary

5  |  approval of the settlement, the court found that the putative

6  |  class satisfied the Rule 23(a) requirements.  (See Order Granting

7  |  Preliminary Approval at 5-10.)  The court is unaware of any

8  |  changes that would affect its conclusion that the putative class

9  |  satisfies the Rule 23(a) requirements, and the parties have not

10 |  indicated that they are aware of any such developments.  (See

11 |  Mot. for Final Approval at 9.)  The court therefore finds that

12 |  the class definition proposed by plaintiffs meets the

13 |  requirements of Rule 23(a).

14 |  2.   Rule 23(b)

15 |  An action that meets all the prerequisites of Rule

16 |  23(a) may be certified as a class action only if it also

17 |  satisfies the requirements of one of the three subdivisions of

18 |  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

19 |  Cir. 2013).  In its order granting preliminary approval of the

20 |  settlement, the court found that both the predominance and

21 |  superiority prerequisites of Rule 23(b)(3) were satisfied.  (See

22 |  Order Granting Preliminary Approval at 10-12.)  The court is

23 |  unaware of any changes that would affect its conclusion that Rule

24 |  23(b)(3) is satisfied.  Because the settlement class satisfies

25 |  both Rule 23(a) and 23(b)(3), the court will grant final class

26 |  certification of this action.

27 |  3.   Rule 23(c)(2) Notice Requirements

28 |  If the court certifies a class under Rule 23(b)(3), it

4

"must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172–77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

        The parties selected The Beverly Group, Inc. ("TBG") to serve as the Settlement Administrator.  (Denver Decl. ¶ 3 (Docket No. 102-1).)  The potential class members in this matter were also the overwhelming majority of unsecured creditors in the related IMG bankruptcy matter in which TBG's founder was serving at the Chapter 11 Trustee.  (Id.)  Defendants timely provided TBG with the class list, utilizing the bankruptcy proceeding database of claimants, derived from the Court-approved claims of the Trustee, and addresses.  (Id.)  From the combined settlement class member information from the estate's own records of court approved distribution and claims, list of potential class action members from class action counsel, and TBG's efforts to locate additional claimants, 56 settlement class members and 34 potential net-losers were identified.  (Id.)  When TBG sent out the Court-approved notice packets, the notice form was personalized for each recipient and set forth the recipient's net loss amount as reviewed by TBG.  (Id. ¶¶ 4-5.)  In total, TBG sent out 90 notice packets.  (Id. ¶ 6.)  TBG also ran the Court-

approved publication notice in the Sacramento Bee.  (<u>Id.</u> ¶ 7.)

Ten notices were returned to TBG by the U.S. Post Office as undeliverable.  (<u>Id.</u> ¶ 9.)  TBG was able to email 4 class notices.  (<u>Id.</u>)  TBG has received zero responses from class members presenting written or oral requests for exclusion.  (<u>Id.</u> ¶ 10.)  TBG has received zero responses from class members presenting written or oral objections to the settlement.  (<u>Id.</u> ¶ 11.)  TBG received 5 responses from notice recipients questioning their respective net loss amounts.  (<u>Id.</u> ¶ 12.)  TBG has resolved 4 of the 5 claim disputes.  (<u>Id.</u>)  The remaining notice recipient did not provide documents to support a different calculation and has not provided any information to support a different calculation of a net loss other than $0.  (<u>Id.</u>)

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004) (quoting <u>Mendoza v. Tucson Sch. Dist. No. 1</u>, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class.  (<u>Id.</u> ¶ 8.)  The notice also explains how class members' individual settlement awards will be calculated and the amount that class members can expect to receive.  (<u>Id.</u>)  Accordingly, the notice complies with Rule 23(c)(2)(B)'s requirements.

B.   <u>Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement</u>

1    Having determined that class treatment is warranted,

2    the court must now address whether the terms of the parties'

3    settlement appear fair, adequate, and reasonable.  See Fed. R.

4    Civ. P. 23(e)(2).  To determine the fairness, adequacy, and

5    reasonableness of the agreement, Rule 23(e) requires the court to

6    consider four factors: "(1) the class representatives and class

7    counsel have adequately represented the class; (2) the proposal

8    was negotiated at arm's length; (3) the relief provided for the

9    class is adequate; and (4) the proposal treats class members

10   equitably relative to each other."  Id.  The Ninth Circuit has

11   also identified eight additional factors the court may consider,

12   many of which overlap substantially with Rule 23(e)'s four

13   factors:

14              The strength of the plaintiff's case; the risk,
              expense, complexity, and likely duration of
15              further litigation; the risk of maintaining class
              action status throughout the trial; the amount
              offered in settlement; the extent of discovery
16              completed and the stage of the proceedings; the
              experience and views of counsel; the presence of
17              a governmental participant; and the reaction of
              the class members to the proposed settlement.
18

19   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

20   Because this settlement was reached prior to class

21   certification, it will be subject to heightened scrutiny for

22   purposes of final approval.  See In re Apple Inc. Device

23   Performance Litig., 50 F.4th 769, 2022 WL 4492078, at *8 (9th

24   Cir. 2022).  The recommendations of plaintiff's counsel will not

25   be given a presumption of reasonableness, but rather will be

26   subject to close review.  See id. at *9.  The court will

27   particularly scrutinize "any subtle signs that class counsel have

28   allowed pursuit of their own self-interests to infect the

7

1 | negotiations." <u>See</u> <u>id.</u> (quoting <u>Roes, 1-2 v. SFBSC Mgmt., LLC</u>,

2 | 944 F.3d 1035, 1043 (9th Cir. 2019)).

3 | 　　　　　　1.　<u>Adequate Representation</u>

4 | 　　　　The court must first consider whether "the class

5 | representatives and class counsel have adequately represented the

6 | class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

7 | "redundant of the requirements of Rule 23(a)(4) . . . " <u>Hudson</u>

8 | <u>v. Libre Tech., Inc.</u>, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

9 | at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 <u>Newberg on</u>

10 | <u>Class Actions</u> § 13:48 (5th ed.)) <u>See also</u> <u>In re GSE Bonds Antitr.</u>

11 | <u>Litig.</u>, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting

12 | similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

13 | 　　　　Because the Court has found that the proposed class

14 | satisfies Rule 23(a)(4) for purposes of class certification, the

15 | adequacy factor under Rule 23(e)(2)(A) is also met.  <u>See</u> <u>Hudson</u>,

16 | 2020 WL 2467060, at *5.

17 | 　　　　　　2.　<u>Negotiation of the Settlement Agreement</u>

18 | 　　　　Counsel for both sides appear to have diligently

19 | pursued settlement after thoughtfully considering the strength of

20 | their arguments and potential defenses.  The parties participated

21 | in an arms-length mediation before two experienced litigation

22 | mediators.  In August of 2020, the parties participated in a

23 | mediation before retired Judge Richard L. Gilbert, but the case

24 | did not settle.  (Denver Decl. ¶ 16.)  The parties continued with

25 | additional discovery and trial preparation, including taking over

26 | 50 depositions with thousands of exhibits.  (<u>Id.</u>)  In March of

27 | 2022, the parties participated in a mediation before retired

28 | Judge Ronald Sabraw from JAMS, who has expertise in Ponzi scheme

litigation.  (<u>Id.</u>)  After the first day of this second mediation, March 17, 2022, the case did not settle.  (<u>Id.</u>)  The parties agreed to consider a mediator's proposal as a possible method that might move the discussions forward.  (<u>Id.</u>)  On March 25, 2022, Judge Sabraw recommended that the Bank pay the class $14,000,000 to settle approximately $55,000,000 in unpaid loans.  (<u>Id.</u>)  On April 1, 2022, the parties were informed by the Judge that both sides had accepted the mediator's proposal.  (<u>Id.</u>)  On June 17, 2022, the parties drafted and executed a long-form settlement agreement.  (<u>Id.</u>)

Given the sophistication and experience of plaintiff's counsel, the parties' representation that the settlement reached was the product of arms-length bargaining over two mediations, and the five-year litigation history, the court finds the proposed settlement is non-collusive and is in the best interest of the class.

### 3.   <u>Adequate Relief</u>

In determining whether a settlement agreement provides adequate relief for the class, the court must "take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal.  <u>See</u> Fed. R. Civ. P. 23(e)(2)(C); <u>Baker v. SeaWorld Entm't, Inc.</u>, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The court notes that, in evaluating whether the

1   settlement provides adequate relief, it must consider several of

2   the same factors as outlined in Hanlon, including the strength of

3   the plaintiff's case, the risk, expense, complexity, and likely

4   duration of further litigation, the risk of maintaining class

5   action status throughout the trial, and the amount offered in

6   settlement.  See Hanlon, 150 F.3d at 1026.

7        In determining whether a settlement agreement is

8   substantively fair to class members, the court must balance the

9   value of expected recovery against the value of the settlement

10  offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d

11  1078, 1080 (N.D. Cal. 2007).  Here, plaintiffs' counsel estimates

12  that defendant's potential exposure could be approximately

13  $55,000,000 (Denver Decl. ¶ 19.)  The case settled for

14  $14,000,000--approximately 25% of the potential damages.  (Id.)

15  Given that 100% success in litigation is uncommon, and based on

16  defendants' contentions that (1) there is no definitive proof of

17  actual knowledge; (2) the circumstantial evidence offered by

18  plaintiffs to support an inference of actual knowledge is

19  inconclusive and subject to alternate interpretation; (3) it is

20  unrealistic for class members to expect they are due a full

21  return of their funds considering that investments in legitimate

22  companies often result in losses; and (4) the class members

23  themselves were arguably reckless in passing money to IMG without

24  first doing anything to confirm the company was legitimate, which

25  it was not.  (Id. ¶ 20.)  The Settlement Agreement will result in

26  an average payment of approximately 17% of each class member's

27  net loss after the proposed deductions for attorneys' fees, costs

28  of litigation, notice expenses, and an enhancement aware for the

10

1  plaintiffs.  (Id. ¶ 22.)

2       Plaintiffs' counsel represents that, absent settlement,

3  further litigation would be costly, time consuming, and uncertain

4  in outcome.  (See id. at ¶ 71.)  Defendants would likely appeal

5  any favorable judgment for plaintiff, resulting in further

6  expense and jeopardy for class members.  (Id.)  Given the

7  strength of plaintiff's claims and defendants' potential

8  exposure, as well as the risk, expense, and complexity involved

9  in further litigation, the court is satisfied that the settlement

10 and resulting distribution provides a strong result for the class

11 and is fair to class members.

12       The Settlement Agreement further provides for

13 plaintiffs' counsel to seek attorney's fees totaling 30% of the

14 net amount remaining on the $14,000,000 after deductions incurred

15 for litigation costs not to exceed $200,000, claims

16 administration expenses not to exceed $150,000, and an

17 enhancement award of $5,000 for both plaintiff Ronald Evans and

18 plaintiff Joan Evans, for a total of $10,000.  (Id. ¶ 23.)

19       If a negotiated class action settlement includes an

20 award of attorney's fees, then the court "ha[s] an independent

21 obligation to ensure that the award, like the settlement itself,

22 is reasonable, even if the parties have already agreed to an

23 amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d

24 935, 941 (9th Cir. 2011).  As discussed in greater detail below,

25 the attorneys' fees requested are reasonable.  In light of all of

26 these considerations, the court finds that Rule 23(e)'s third

27 factor is satisfied.  See Fed. R. Civ. P. 23(e)(C).

28       4.   Equitable Treatment of Class Members

1    Finally, the court must consider whether the Settlement

2    Agreement "treats class members equitably relative to each

3    other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

4    determines whether the settlement "improperly grant[s]

5    preferential treatment to class representatives or segments of

6    the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

7    484 F. Supp. at 1079).

8    Here, the Settlement Agreement does not improperly

9    discriminate between any segments of the class--all class members

10   are entitled to pro rata monetary relief based on their

11   respective net loss.  (See Mot. for Final Approval at 21.)  While

12   the Settlement Agreement allowed plaintiffs to seek an incentive

13   enhancement award of $5,000 for both plaintiff Ronald Evans and

14   plaintiff Joan Evans, for a total of $10,000,[2]  (Denver Decl. ¶

15   23), plaintiff has submitted additional evidence documenting

16   their time and effort spent on this case, which, as discussed

17   further below, in Section E, has satisfied the court that their

18   additional compensation above other class members is justified.

19   See Hudson, 2020 WL 2467060, at *9.  The court therefore finds

20   that the Settlement Agreement treats class members equitably.

21   See Fed. R. Civ. P. 23(e)(D).

22        5.   Remaining Hanlon Factors

23        In addition to the Hanlon factors already considered as

24   part of the court's analysis under Rule 23(e)(A)-(D), the court

25   must also take into account "the extent of the discovery

26

27   [2]   Plaintiff Treadway has elected to forego the request
     for the enhancement award so that the $5,000 is added to the
28   general distribution amount.  (Denver Decl. ¶ 23, fn. 3.)

1  completed . . . the presence of government participation, and the
2  reaction of class members to the proposed settlement." Hanlon,
3  150 F.3d at 1026.

4        Through formal and informal discovery, defendants
5  provided a substantial amount of information that appears to have
6  allowed the parties to adequately assess the value of plaintiff's
7  and the class's claims. (Denver Decl. ¶ 29.) For example, over
8  50 depositions were taken with thousands of exhibits discussed
9  during the depositions. (Id.) This factor weighs in favor of
10 final approval of the settlement.

11       The seventh Hanlon factor, pertaining to government
12 participation, also weighs in favor of approval. Hanlon, 150
13 F.3d at 1026. Under the Class Action Fairness Act ("CAFA"), the
14 proposed settlement must be submitted to the Office of the
15 Comptroller of the Currency ("OCC") within 10 days of filing the
16 Settlement Agreement with the court. Here, Bank has confirmed
17 that the Bank provided a copy of the proposed Settlement
18 Agreement to the OCC before June 27, 2022. Bank has also
19 confirmed that the OCC has not sought to intervene or otherwise
20 objected to the settlement. This factor therefore weighs in
21 favor of final approval of the settlement.

22       The eighth Hanlon factor, the reaction of the class
23 members to the proposed settlement, also weighs in favor of final
24 approval. See Hanlon, 150 F.3d at 1026. No class members have
25 objected to or sought to opt out of the settlement. See id.

26       The court therefore finds that the remaining Hanlon
27 factors weigh in favor of preliminary approval of the Settlement
28 Agreement. See Ramirez, 2017 WL 3670794, at *3.

13

In sum, the four factors that the court must evaluate under Rule 23(e) and the eight Hanlon factors, taken as a whole, appear to weigh in favor of the settlement.  The court will therefore grant final approval of the Settlement Agreement.

      C.   Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth Headset, 654 F.3d at 941.

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable [attorneys'] fee from the fund as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the district court has discretion to determine the amount of attorneys' fees to be drawn from the fund by employing either the percentage method or the lodestar method.  Id.  The court may also use one method as a "cross-check[ ]" upon the other method.

1  See Bluetooth Headset, 654 F.3d at 944.

2          As part of the settlement, the parties agreed that

3  plaintiffs' counsel would seek attorney's fees totaling 30% of

4  the net amount remaining from the $14,000,000 payment after the

5  reduction of the following: (1) litigation expenses not to exceed

6  $200,000; (2) settlement administration expenses not to exceed

7  $150,000; (3) a combined $15,000 enhancement award for the Evans

8  plaintiffs ($5,000 each).  (Id. ¶ 36.)  As such, the requested

9  attorney's fees will amount to $4,105,905.  (Id.) The remaining

10  $9,580,445 will be available to be distributed to members of the

11  settlement class, which is approximately 17% of each class

12  member's respective net loss.  (Id.)

13          Like other class actions, this case presented both

14  counsel and the class with a risk of no recovery at all.  (Id. ¶

15  37.)  Plaintiffs' counsel represents that, because the firm works

16  on contingency, it sometimes recovers very little to nothing at

17  all, even for cases that may be meritorious, and that the

18  potential costs that must be expended in such cases are often

19  substantial.  (See id.)  Where counsel do succeed in vindicating

20  rights on behalf of a class, they depend on recovering a

21  reasonable percentage-of-the-fund fee award to enable them to

22  take on similar risks in future cases.  (See id.)  Plaintiffs'

23  counsel argues that, in light of the strong result and

24  substantial risk taken in this case, a 30% fee, as requested

25  here, is reasonable.

26          A "lodestar-multiplier" cross-check confirms the

27  reasonableness of the requested award.  Plaintiffs' counsel has

28

1   calculated a lodestar figure in this case of $5,579,002.[3]  (See

2   Denver Decl. ¶ 44.)  According to contemporaneous billing logs

3   kept by plaintiffs' counsel, attorneys at the two firms have,

4   over the span of five years, dedicated 6,724 hours of work to

5   this case.  (Id. at ¶¶ 41-43.)

6         Based on plaintiffs' counsel's calculated lodestar

7   figure, plaintiff seeks a lodestar multiplier of approximately

8   0.74--in other words, plaintiffs' counsel seeks less than the

9   lodestar cross-check would indicate she and her firm are entitled

10  to.  In class actions, "[m]ultipliers can range from 2 to 4 or

11  even higher."  Wershba v. Apple Computer, Inc., 91 Cal. App. 4th

12  224, 255 (2001).[4]  "Indeed, 'courts have routinely enhanced the

13  lodestar to reflect the risk of non-payment in common fund

14  cases.'"  Vizcaino, 290 F.3d at 1051 (approving fee award where

15  lodestar cross-check resulted in multiplier of 3.65); see also

16  id. at 1052 n.6, appx. (collecting cases and finding that risk

17  multiplier fell between 1.0 and 4.0 in 83% of cases); In re

18  NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489

19  (S.D.N.Y. 1998) (awarding 3.97 multiplier and observing that

20  "[i]n recent years multipliers of between 3 and 4.5 have become

21  more common").

22        Factors considered in determining the appropriate

23  lodestar multiplier generally include: (1) the risks presented by

24  _____

25        [3]    The court expresses no opinion as to the proper
    lodestar amount in this case.

26
        [4]    Federal courts incorporate California state law on
27  deciding an appropriate multiplier when the claims are brought
    under California state law.  Vizcaino v. Microsoft Corp., 290
28  F.3d 1043, 1047 (9th Cir. 2002).

1  the contingent nature of the case; (2) the difficulty of the

2  questions involved and the skill requisite to perform the legal

3  service properly; (3) the nature of the opposition; (4) the

4  preclusion of other employment by the attorney from accepting the

5  case; and (5) the result obtained.  Ketchum v. Moses, 24 Cal. 4th

6  1122, 1132 (Cal. 2001); Graham v. DaimlerChrysler Corp., 34 Cal.

7  4th 553, 582 (Cal. 2004); Serrano v. Priest, 20 Cal.3d 25, 48-49

8  (Cal. 1977).  Given the risks undertaken by plaintiffs' counsel,

9  the defenses likely to be raised by defendant, the strong result

10  for the class, and the fact that courts routinely approve fee

11  awards corresponding with a lodestar of well over 1.0, the court

12  finds that a multiplier of 0.74 is justified this case.  See

13  Johnson v. Fujitsu Tech. & Bus. of Am., Inc., No. 16-cv-03698-NC,

14  2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018)

15  (finding multiplier of 4.37 to be reasonable); In re NCAA Ath.

16  Grant-In-Aid Cap Antitrust Litig., 2017 U.S. Dist. LEXIS 201108,

17  at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be

18  "well within the range of awards in other cases.").

19      Accordingly, the court finds the requested fees to be

20  reasonable and will approve counsel's motion for attorneys' fees.

21      D.   Costs

22      "There is no doubt that an attorney who has created a

23  common fund for the benefit of the class is entitled to

24  reimbursement of reasonable litigation expenses from that fund."

25  In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at

26  *23 (C.D. Cal. June 10, 2005).  The appropriate analysis is

27  whether the particular costs are of the type billed by attorneys

28  to paying clients in the marketplace.  Harris v. Marhoefer, 24

F.3d 16, 19 (9th Cir. 1994).  "Thus, [reimbursement of] reasonable expenses, though greater than taxable costs, may be proper."  Id. at 20.

Here, the parties agreed that plaintiffs' counsel shall be entitled to recover reasonable litigation costs, not to exceed $200,000.  (Denver Decl. ¶ 47.)  Counsel states that his firm has incurred expenses and costs to date in the amount of $69,538.33. (Denver Decl. ¶ 47.)  Robert Brace expended $64,111.67.  (Id. ¶ 47.)  These expenses include filing fees, court fees, deposition fees, travel expenses, document and electronic file fees, mediation fees, legal research fees, and data analysis fees. (Id.)  The court finds that these are reasonable litigation expenses, see Heritage, 2005 WL 1594403, at *23, and will therefore grant class counsel's request for costs up to the amount authorized by the Settlement Agreement, $200,000.

E.    Representative Service Award

"Incentive awards are fairly typical in class action cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Id. at 958-59.

Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ."  Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In

1   assessing the reasonableness of incentive payments, the court

2   should consider "the actions the plaintiff has taken to protect

3   the interests of the class, the degree to which the class has

4   benefitted from those actions" and "the amount of time and effort

5   the plaintiff expended in pursuing the litigation." Staton, 327

6   F.3d at 977 (citation omitted).  The court must balance "the

7   number of named plaintiffs receiving incentive payments, the

8   proportion of the payments relative to the settlement amount, and

9   the size of each payment."  Id.

10          In the Ninth Circuit, an incentive award of $5,000 is

11  presumptively reasonable.  Davis v. Brown Shoe Co., Inc., No.

12  1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

13  2015) (citing Harris v. Vector Marketing Corp., No. C-08-5198

14  EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)) (collecting

15  cases).  Two of the three named plaintiffs, Ronald Evans and Joan

16  Evans, seek an incentive payment of $5,000 each.  (Denver Decl. ¶

17  48.)  The Evans plaintiffs represent that they have devoted

18  significant time and resources to the case over the past five

19  years, including involvement in the appeal to the Ninth Circuit.

20  (Decl. of Ronald and Joan Evans ("Evans Decl.") ¶ 5 (Docket No.

21  98-3); Denver Decl. ¶ 48.)  The Evans plaintiffs chose to

22  participate in this litigation as class representatives even

23  though could potentially receive a smaller recovery than if they

24  had acted solely on themselves and despite the professional and

25  reputational risk.  (Denver Decl. ¶ 50.)  The court finds that

26  these risks were real and substantial, and further warrant

27  awarding an incentive payment to Ronald and Joan Evans for their

28  participation as class representatives.  See Staton, 327 F.3d at

1   977.  The court will therefore authorize payment of a $5,000

2   service award.

3   II.  Conclusion

4           Based on the foregoing, the court will grant final

5   certification of the settlement class and will approve the

6   settlement set forth in the settlement agreement as fair,

7   reasonable, and adequate.  The settlement agreement shall be

8   binding upon all participating class members who did not exclude

9   themselves.

10          IT IS THEREFORE ORDERED that plaintiffs' unopposed

11  motion for final approval of the parties' class action settlement

12  and attorneys' fees, costs, and a class representative service

13  payment (Docket No. 102) be, and the same hereby are, GRANTED.

14          IT IS FURTHER ORDERED THAT:

15          (1) Solely for the purpose of this settlement, and

16  pursuant to Federal Rule of Civil Procedure 23, the court hereby

17  certifies the following class:

18      All Net Losers, including assignees, but excluding Net
        Losers who have already released the Bank from IMG-
19      related claims, and also excluding any governmental
        entities, any judge, justice or judicial officer
20      presiding over this matter, and the members of his or
        her immediate family, the Bank, along with its
21      corporate parents, subsidiaries and/or affiliates,
        successors, and attorneys of any excluded Person or
22      entity referenced above, and any Person acting on
        behalf of any excluded Person or entity referenced
23      above. . . .

24      "Net Loser" means any Settlement Class Member who
        suffered a Net Loss from lending to or investing money
25      in IMG's medical supply-related business(es). . . .

26      "Net Loss" means the total amount transferred by a
        Settlement Class Member to IMG minus the total amount
27      received back from IMG, including, but not limited to
        any return on investment, return of principal, fees,
28      and other payments by IMG to the Settlement Class

                                    20

Member.  For purposes of this settlement, for each
Participating Class Member, the Net Loss shall be the
amount of the allowed claim as reflected in the Claims
Approval Order, provided that such allowed claim only
includes monies provided to IMG for the purpose of
lending to or investing money in IMG's medical supply-
related business(es).

(Settlement Agreement ("Agreement") at §§ 1.11, 1.12,
1.26 (Docket No. 98-1 at 23, 29)

(2) The court appoints the named plaintiffs Ronald
Evans, Joan Evans, and Dennis Treadway as class representative
and finds that they meet the requirements of Rule 23;

(3) The court appoints Robert L. Brace and Michael P.
Denver as class counsel and finds that they meet the requirements
of Rule 23;

(4) The Settlement Agreement's plan for class notice is
the best notice practicable under the circumstances and satisfies
the requirements of due process and Rule 23.  The plan is
approved and adopted. The notice to the class complies with Rule
23(c)(2) and Rule 23(e) and is approved and adopted;

(5) The court finds that the parties and their counsel
took appropriate efforts to locate and inform all class members
of the settlement.  Given that no class member filed an objection
to the settlement, the court finds that no additional notice to
the class is necessary;

(6) As of the date of the entry of this order,
plaintiffs and all class members who have not timely opted out of
this settlement herby do and shall be deemed to have fully,
finally, and forever released, settled, compromised,
relinquished, and discharged defendants of and from any and all
settled claims, pursuant to the release provisions stated in the

21

parties' settlement agreement;

(7) Plaintiffs' counsel is entitled to fees in the amount of $4,105,905, and litigation costs of $153,650;

(8) The Beverly Group, Inc. is entitled to administration costs in the amount up to $150,000;

(9)  Plaintiffs Ronald Evans and Joan Evans are entitled to an incentive award in the amount of $5,000;

(10) The remaining settlement funds shall be paid to participating class members in accordance with the terms of the Settlement Agreement; and

(11) This action is dismissed with prejudice.  However, without affecting the finality of this Order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement with respect to all parties to this action and their counsel of record.

Dated:  November 8, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE